UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRET A. BIELEMA                                                                                           PLAINTIFF

v.                                              No. 5:20-CV-05104

THE RAZORBACK FOUNDATION, INC.                                               DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant The Razorback Foundation, Inc.'s ("the Foundation") motion (Doc. 21) to dismiss the complaint and brief (Doc. 22) in support. Plaintiff Bret A. Bielema filed a response (Doc. 27) and brief (Doc. 28) in opposition. The Foundation filed a reply (Doc. 33) with leave of Court. The motion will be denied.

This is a contract dispute. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Bielema resides in and is a citizen of New Jersey. The Foundation is a domestic nonprofit corporation organized under Arkansas law and maintaining its principal place of business in this state, and is a citizen of Arkansas. The Foundation moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the basis of Eleventh Amendment sovereign immunity, or pursuant to Rule 12(b)(6) on the basis of the doctrine of *forum non conveniens*. Neither argument has merit and the Court will address each in turn.

The Foundation's motion characterizes at length the factual background of this contract dispute. Whether ruling on a motion to dismiss under Rule 12(b)(1) raising a facial challenge to subject matter jurisdiction or a motion to dismiss under Rule 12(b)(6) arguing that a plaintiff has failed to state a claim on which relief can be granted, the Court looks only to facts alleged in the challenged complaint, materials that do not contradict it, and material necessarily embraced by the

1

pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (citing *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014)); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). The Court must look to Bielema's amended complaint, and not the Foundation's motion briefing, for the facts applicable to this motion. Although the Foundation rails against Bielema's sixty-five-page amended complaint, describing it as "chock full of distorted facts, mischaracterizations and baseless claims" (Doc. 22, p. 2), on this motion the Court must accept as true allegations of fact in the amended complaint and reasonable factual inferences drawn therefrom, though the Court does not treat legal conclusions as true, even when they are alleged as facts. *Ashcroft*, 556 U.S. at 678.

In arguing for a Rule 12(b)(1) dismissal based on sovereign immunity, the Foundation asks the Court to ignore certain allegations in the amended complaint and instead accept allegations in the original complaint—particularly the allegation that the Foundation is "so intertwined with every aspect of the University[ of Arkansas]'s Athletics Department that it functions as an arm of the Athletics Department." (Doc. 2, p. 4, ¶ 11). The Foundation believes accepting this allegation requires the Court to conclude the Foundation is an arm of the State entitled to the protection of the Eleventh Amendment.[1] "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint *without legal effect*." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (emphasis added). In asking

---

[1] The Foundation asks the Court to accept this allegation even though it specifically denies that it is an arm of the State. (Doc. 22, p. 8, n.5). The Foundation's footnote factual denial clarifies that it is not raising a factual challenge to subject matter jurisdiction on this motion, and the denial will have no preclusive effect when the Foundation files its responsive pleading. If the Foundation wants to reverse course and can make a good-faith argument that legally it *is* an arm of the State, then following the filing of an answer and an entry of appearance by the Attorney General for the State of Arkansas, the Foundation can attempt to assert sovereign immunity as part of a factual challenge in an appropriate motion without being estopped from doing so.

the Court to ignore the amended complaint and instead consider the allegations in the superseded original complaint, the Foundation relies upon precedent allowing courts to disregard amendments to complaints that are inconsistent with prior pleadings. *See, e.g.*, *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325–26 (Fed. Cir. 1998) ("We discern no abuse of the court's discretion in striking the changed and inconsistent factual allegations as false and sham."). The Foundation's suggestion that Bielema is offering a sham amendment when he clarifies the Foundation is not an arm of the State cannot be reconciled with the Foundation's own statement that it is not an arm of the state, and this precedent is not persuasive.

The Foundation also relies upon the "futility doctrine" in asking the Court to ignore the amended complaint and instead consider the allegations in the superseded original complaint. Federal Rule of Civil Procedure 15(a)(2) directs the Court to "freely give leave [to amend a complaint] when justice so requires." The futility doctrine allows the Court to deny leave to amend when it concludes amendment would be futile because "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *J-McDaniel Constr. Co., Inc. v. Mid-Continent Cas. Co.*, 761 F.3d 916, 919 (8th Cir. 2014). Not only does Bielema's amended complaint clearly meet the requirement that it "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), but Rule 15(a)(2) does not apply in this case, so the Court has no basis to consider the futility doctrine. Within 21 days after service of a Rule 12(b) motion to dismiss his original complaint, Bielema filed his amended complaint as a matter of right under Rule 15(a)(1)(B).

Because the Foundation is not making a factual challenge to subject matter jurisdiction in its sovereign immunity argument, the motion to dismiss under Rule 12(b)(1) may be denied.

The Court now turns to the Foundation's motion to dismiss on the basis of *forum non conveniens*.  Out of caution, the Foundation's motion to dismiss on the basis of the parties' forum-selection clause and *forum non conveniens* identifies Rule 12(b)(6) as the procedural mechanism for raising the motion.  (Doc. 22, pp. 9–10).  After substantial research on this issue, the Court sympathizes with the Foundation's uncertainty and has concluded that the law in this Circuit is that while forum-selection clauses may provide a basis for dismissal under either Rule 12(b)(6) or the doctrine of *forum non conveniens*, Rule 12(b)(6) motions and *forum non conveniens* motions are distinct procedural vehicles.

By separately identifying Rule 12(b)(6) and the common law doctrine of *forum non conveniens* as grounds for dismissal, the Supreme Court has implied that *forum non conveniens* should be raised separately from Rule 12(b)(6).  *Atl. Marine Constr. Co., Inc.*, 571 U.S. 49, 61 n.4 (2013) ("We observe, moreover, that a motion under Rule 12(b)(6), unlike a motion under § 1404(a) or the *forum non conveniens* doctrine, may lead to a jury trial on venue if issues of material fact relating to the validity of the forum-selection clause arise.  Even if Professor Sachs is ultimately correct, therefore, defendants would have sensible reasons to invoke § 1404(a) or the *forum non conveniens* doctrine in addition to Rule 12(b)(6)."); *accord Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) ("The Court held that generally 'the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*,' rather than Rule 12(b).").  The Eighth Circuit appears to agree.  *See City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 n.6 (8th Cir. 2017) (explaining the appropriate way to enforce a forum-selection clause in an arbitration agreement independently of enforcing the arbitration agreement is to invoke the doctrine of *forum non conveniens*, rather than

4

making a Rule 12(b)(6) or Rule 56 motion).[2]  A *forum non conveniens* dismissal is not a judgment on the merits.  *Sinochem Int'l Co. Ltd. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 432–33 (2007).  A Rule 12(b)(6) dismissal is.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).  For this reason, the Court understands the Supreme Court's *Atlantic Marine* footnote to imply that dismissal on the basis of *forum non conveniens* is akin to dismissing on the basis of a prudential matter of justiciability.  Although the Foundation cites Rule 12(b)(6), because the substance of its motion reveals it to be a *forum non conveniens* motion, that is how the Court will construe it.

The Foundation argues that *forum non conveniens* dismissal is required because the parties' disputed contract includes a forum-selection clause requiring this case to be heard in the Circuit Court of Washington County, Arkansas.  The clause at issue reads in its entirety:

> **Governing Law.**  This Agreement shall be governed by the laws of the State of Arkansas without regard to its choice of law principles.  Washington County, Arkansas, shall be the exclusive venue for any action arising under or relating to this Agreement.  Nothing contained in this Agreement shall be deemed, construed or operate as a waiver of any immunities to suit available to the Board of Trustees of the University of Arkansas or its trustees, officers, representatives and employees.

(Doc. 19-5, p. 6).

While many states also apply the doctrine of *forum non conveniens*, in federal courts it is a procedural matter analyzed under federal common law.  *Sinochem Int'l Co. Ltd.*, 549 U.S. at 430; *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–50, 453 (1994) (describing common law origins of federal doctrine of *forum non conveniens*, and treating it as a procedural, rather than substantive).  In applying that doctrine, whether under the federal common law or under the § 1404

---

[2] The Eighth Circuit has also implied that even where a forum-selection clause is raised under Rule 12(b)(6), the *forum non conveniens* analysis is the appropriate one to apply.  *In re Union Elec. Co.*, 787 F.3d 903, 907 n.3 ("*Atlantic Marine* does not consider whether our previous reliance on *Bremen* [a *forum non conveniens* case] survives for the purpose of enforcing a forum-selection clause under Rule 12(b)(6).").

codification of the doctrine that governs transfer of venue cases, "forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 64.

Neither party argues that this is an unusual case, so the forum-selection clause controls. The question on this motion, then, is what that clause requires. If the clause requires this case to be heard in another venue, the case must be dismissed without prejudice. If the clause allows the case to be heard in this Court, there is no other identified reason for dismissal on the basis of *forum non conveniens*, and the case should be heard here, where it has been filed.

Because "a federal court sitting in diversity jurisdiction . . . applie[s] the law that the forum state would apply," *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001), Arkansas law controls the meaning of the contract's terms. *Accord Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986) (recognizing that while venue determinations are procedural, forum-selection clauses arise out of contract and due regard should be given to state law when interpreting those clauses) (abrogated on other grounds by *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989)). "It is well-settled that the polestar of contractual construction is to determine and enforce the intent of the parties." *Taylor v. Hinkle*, 200 S.W.3d 387, 395 (Ark. 2004). The best evidence of the parties' intent is their written agreement. *First Nat'l Bank of Crossett v. Griffin*, 832 S.W.2d 816, 818 (Ark. 1992). The Arkansas Supreme Court has consistently adhered to a set of rules for the construction of contracts which requires courts to "look to the contract as a whole and the circumstances surrounding its execution to determine the intention of the parties." *Id.* at 819–20 (quoting extensively from *Fowler v. Unionaid Life Ins. Co.*, 20 S.W.2d 611, 613 (Ark. 1929)); *see Arlington Hotel Co. v. Rector*, 186 S.W. 622, 625 (Ark. 1916) (reiterating that courts interpret contracts in light of the circumstances facing the parties at the time the contract was entered). The Court must "give to the language employed the meaning

which the parties intended," according the terms "their plain, ordinary meaning" and reading and construing the contract as a whole so that its parts operate together, rather than against one another. *First Nat'l Bank of Crossett*, 832 S.W.2d at 819. "[T]he intention of the parties is to be gathered not from particular words and phrases but from the whole context of the agreement." *Fowler*, 20 S.W.2d at 613; *see also Coleman v. Regions Bank*, 216 S.W.3d 569, 574 (Ark. 2005). If after considering the contract terms in light of the circumstances surrounding execution of the contract the meaning of a term appears ambiguous, "parol evidence is admissible and the meaning of the ambiguous term becomes a question of fact for the factfinder." *First Nat'l Bank of Crossett*, 832 S.W.2d at 819.

Forum-selection clauses limiting the venue of an action may impose both geographic and jurisdictional limits, and may be permissive or mandatory. Because the forum-selection clause here states that "Washington County, Arkansas, *shall be* the *exclusive* venue for any action arising under or relating to this Agreement," it is clear that the clause is mandatory. (Doc. 19-5, p. 6) (emphases added); *accord Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (reasoning terms like "shall" and "exclusive" in a forum-selection clause suggest its mandatory nature). Legal action is limited to the identified venue, and no other. The parties' disagreement is whether the mandatory venue limitation intended to be imposed by this clause are both geographical and jurisdictional, or only geographical.[3] Bielema has the better argument—this language, considered in light of the circumstances facing the parties when they entered into the contract, reflects an unambiguous intent to impose only a geographical limitation.

The contract in dispute was executed following Bielema's removal as head coach for the

---

[3] The plain language of the contract is amenable to no other reasonable interpretation than that any legal action concerning the contract must proceed in the geographical venue of Washington County, Arkansas, and the parties are in agreement on this issue.

7

University of Arkansas's football team. The contract memorialized the Foundation's agreement to pay Bielema periodic amounts for a release of claims in return for Bielema's agreement to seek other employment and maximize his earning potential to offset the amount the Foundation paid to him. Though the Foundation's right to offset the greater of either Bielema's "Other Income" or "Average Annual Compensation" would apply no matter the employment Bielema obtained, it is clear from the paragraph defining "Average Annual Compensation" (Doc. 19-5, pp. 5–6) that the parties contemplated Bielema's future employment would be as a coach, and from the requirements that Bielema report his efforts to find employment and share his financial information with the Foundation (Doc. 19-5, p. 4) that the contemplated coaching position likely would be outside of Arkansas. The parties jointly negotiated the terms of the contract and agreed that it should not be construed against one party or the other as the drafting party. (Doc. 19-5, p. 8). The parties were represented during negotiations and execution by counsel who were aware of forum-selection clause language that would impose both jurisdictional and geographical venue limitations (*i.e.*, "[V]enue for this Agreement shall lie solely *with the Circuit Court of Washington County, Arkansas*." (Doc. 19-3, p. 5; Doc. 19-4, pp. 5–6) (emphasis added)). Finally, the parties were aware that the general purpose of a federal court's diversity jurisdiction is to provide foreign citizens with a forum where they are "least likely to suffer out-of-state prejudice when . . . sued in a local court." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010) (citing *Pease v. Peck*, 59 U.S. 595, 599 (1855)).

Operating in this context, the parties executed a contract with a forum-selection clause limiting venue to Washington County, Arkansas. The Arkansas Supreme Court has explained that "venue and jurisdiction, though sometimes used interchangeably, are two distinct legal concepts. Venue is the geographic area, like a county, where an action is brought to trial. . . . Jurisdiction is

the power of a court to decide cases and presupposes control over the subject matter and parties." *Davis v. Reed*, 873 S.W.2d 524, 525 (Ark. 1994) (citing *Black's Law Dictionary* 853, 1557 (6th ed. 1990)).  The parties were aware of forum-selection clause language from their prior contracts that communicated an intent to use venue and jurisdiction interchangeably, and chose not to use that language or other language generally accepted to limit jurisdiction only to one sovereign's courts (e.g., "courts of the State of Arkansas, courts of Washington County, Arkansas"). *See, e.g.*, *FindWhere Holdings, Inc. v. Syst. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010) (citing cases in support of the "widely-accepted rule that forum selection clauses that use the term 'in [a state]' express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term 'of [a state]' connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state.").  Instead of using language expressly limiting jurisdiction, the parties identified their intended venue only by geography.

The Foundation cites a number of federal cases from courts in the Tenth Circuit for the proposition that defining venue by county, rather than federal district, implies a jurisdictional limitation to state courts, but that Circuit appears to take the minority view.  Where no clearly jurisdictional language is used, the majority of federal courts tend to interpret venue limitations in forum-selection clauses only as geographical when described by county. *See, e.g.*, *Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 674 (4th Cir. 2018) (reasoning that a forum-selection clause mandating that a county shall be the sole and exclusive venue for dispute resolution precludes removal "[b]ecause there is no federal courthouse in the designated county."); *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011) (finding a forum-selection clause was not jurisdictional when a federal courthouse was located in the county identified as the

9

exclusive venue); *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 400 (5th Cir. 2008)[4] (same); *Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (same); *see also Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) (finding a forum-selection clause identifying exclusive venue by county was not jurisdictional, but affirming remand because the federal courthouse previously located in that county was closed before the litigation). Having reviewed these authorities, the Court is not persuaded by the Tenth Circuit's reasoning, which at any rate has no controlling effect on the meaning of terms in a contract that must be construed in accordance with Arkansas law.

The Foundation also cites this Court's decision in *Northport v. Ellis*, No. 2:20-CV-02021, 2020 WL 1846531 (W.D. Ark. Apr. 10, 2020) in support of its argument that the parties intended both jurisdictional and geographical limitations (or, at least, that the forum-selection clause in this case is ambiguous about whether the limitation is also jurisdictional). The Court appreciates this opportunity to clarify any ambiguity in *Northport*, which was decided as it was only because the circumstances in which the agreement was executed rendered the parties' forum-selection clause ambiguous. In *Northport*, the plaintiff operated a number of general nursing care facilities throughout Arkansas. Residents at those facilities executed a form contract with the plaintiff, and that contract was virtually uniform across facilities in different counties. The contract the plaintiff required residents at each of its facilities to sign included an identical forum-selection clause

---

[4] The Fifth Circuit speculates in dicta that an ambiguity might have arisen had the clause before it not included language placing venue "in" a county (as is the case with the clause before this Court). *All. Health Grp., LLC*, 553 F.3d at 401 ("The clause at issue does not state that venue shall *be* some county, which might have suggested an intent to limit venue to a single tribunal.") (emphasis in original). The Court sees no need for detailed analysis to distinguish this dicta, however. As stated above, Arkansas law treats "venue" as a distinct concept identifying a geographical area, and the circumstances surrounding execution and the other terms of the contract in this case suggest no intent of the parties to use "venue" interchangeably with "jurisdiction." Accordingly, no ambiguity arises.

10

reading "_____ County, Arkansas shall be the sole and exclusive venue for any Dispute, special proceeding, or any other proceeding between the parties that may arise out of, in connection with, or by reason of this Agreement." *Northport*, 2020 WL 1846531 at *2, *3. The blank was filled-in by hand in each contract with the name of the county for the appropriate facility. In *Northport*, that was Sebastian County, which is home to a federal courthouse in this district. This Court took judicial notice of its own docket and found another pending case initiated by the same plaintiff where the contract selected as the venue a county where a general nursing care facility was located but in which there was no federal courthouse. Because of the uniform nature of the contract, circumstances indicated that the plaintiff intended its identical contractual language to have an identical meaning, which resulted in a forum-selection clause that was ambiguous with respect to whether it was intended at the time of execution to be jurisdictional. Acting as fact-finder, the Court acknowledged the presumption that the clause should be construed against its drafter, considered parol evidence that did not rebut the presumption, and found the parties intended that clause to be jurisdictional.

    The circumstances that gave rise to an ambiguity in Northport are absent here. The forum-selection clause is not a form agreement repeatedly executed by the Foundation and multiple other parties than Bielema under circumstances that indicate the geographic limitation should also imply a jurisdictional one. There is no need for the factfinder in this case to consider parol evidence to determine intent.

    The forum-selection clause in this case clearly communicates an intent to geographically limit venue to Washington County, Arkansas, and the circumstances of its execution do not leave ambiguous whether it implicitly intended to impose a jurisdictional limitation. A divisional courthouse of this Court is located in Washington County, Arkansas, and that is where this case

proceeds.[5] Accordingly, the forum-selection clause does not prohibit Bielema from pursuing his action here. No other reason than the forum-selection clause is given for applying the doctrine of *forum non conveniens* to disturb Bielema's choice of forum, and no other reason is given for the Court to refuse its virtually unflagging obligation to exercise the jurisdiction conferred upon it.

       IT IS THEREFORE ORDERED that Defendant's motion to dismiss (Doc. 21) is DENIED.

       IT IS SO ORDERED this 20th day of August, 2020.

                                           /s/ P. K. Holmes, III
                                           P.K. HOLMES, III
                                           U.S. DISTRICT JUDGE

---

[5] Though the undersigned has his chambers in Fort Smith, which is located in Sebastian County, Arkansas, this case is proceeding in the Fayetteville Division and the courthouse for this Division is located in Washington County, Arkansas. The Court is aware of no case in which venue was defined by the presiding judicial officer's chambers rather than the location of the trial. Counsel for the Foundation is aware that the undersigned is assigned civil cases in the Fayetteville Division, and is aware of the Court's standard scheduling orders that set cases filed in the Fayetteville Division for trial at the federal courthouse in Fayetteville, Washington County, Arkansas, as reflected in the Initial Scheduling Order (Doc. 14, p. 1) in this case.