# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

**BRET A. BIELEMA**                                                        **PLAINTIFF**

**v.**                                    **5:20-cv-05104-PKH**

**THE RAZORBACK FOUNDATION, INC.**                                  **DEFENDANT**

---

**THE RAZORBACK FOUNDATION, INC.**                          **COUNTER-PLAINTIFF**

**V.**

**BRET A. BIELEMA and**
**NEIL CORNRICH**                                          **COUNTER-DEFENDANTS**

## DEFENDANT'S ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIM

Defendant, The Razorback Foundation, Inc. (the "**Foundation**"), through its attorneys, for its Answer to Plaintiff's Amended Complaint, states as follows:

### JURISDICTION

1.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 1 of the Amended Complaint ("**Complaint**") and therefore denies the same.

2.     The Foundation admits that it is an Arkansas non-profit corporation and its principal place of business is in Fayetteville, Arkansas.

3.     The Foundation admits that this Court has subject-matter jurisdiction over this dispute.

### VENUE

4.     The Foundation admits only that this action is based on the Foundation's alleged breach of the Release and Waiver Agreement ("Release Agreement") and affirmatively states that the Release Agreement speaks for itself.   To the extent the allegations in paragraph 4 are

FEC\44844\0001\7884684.v1-9/3/20

inconsistent with the Release Agreement, they are denied. The Foundation affirmatively denies any wrongdoing.

5. The Foundation states that Exhibits 1-5 speak for themselves. To the extent the allegations in paragraph 5 are inconsistent with Exhibits 1-5, they are denied. The allegations in paragraph 5 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 5 of the Complaint and therefore denies the same.

6. The Foundation states that Exhibits 3-5 speak for themselves. To the extent the allegations in paragraph 6 are inconsistent with Exhibits 3-5, they are denied. The Foundation denies all remaining allegations in paragraph 6 of the Complaint and denies that venue is proper as set forth more fully in its Motion to Dismiss. The allegations in paragraph 6, Footnote 1, do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 6, Footnote 1, of the Complaint and therefore denies the same.

**PARTIES**

7. The Foundation admits that Coach Bielema currently is the Outside Linebackers Coach and Senior Assistant for the New York Giants and previously worked for the New England Patriots under a series of agreements. The Foundation states that the published media reports speak for themselves. To the extent the allegations in paragraph 7 are inconsistent with the published media reports, they are denied. The Foundation denies any remaining allegations in paragraph 7

FEC\44844\0001\7884684.v1-9/3/20

of the Complaint, including the allegation that Coach Bielema "was never a 'volunteer' for the Patriots".

8.      The Foundation admits the allegations in paragraph 8 of the Complaint.

9.      The Foundation admits that at all times relevant to the allegations in the Complaint, Bielema was represented by Neil Cornrich. The Foundations lacks information sufficient to admit or to deny the remaining allegations in paragraph 9 of the Complaint related to Mr. Cornrich and therefore denies the same.

10.     The Foundation admits that it was formed as a domestic non-profit corporation in October 1980 and states that its public filings and the content of its website speak for themselves.

11.     The Foundation states that the April 22, 2018 article in the *Arkansas Democrat-Gazette* speaks for itself. The Foundation further states that its pleadings in *Nolan Richardson v. Sugg*, 325 F. Supp. 2d 919 (E.D. Ark. 2004) speak for themselves. The Foundation admits that it has consistently maintained that it is factually and legally independent from the University of Arkansas ("University") and affirmatively states that it is operationally independent of the University. To the extent the allegations in paragraph 11 are inconsistent with the *Arkansas Democrat-Gazette* article or the pleadings in *Nolan Richardson v. Sugg*, 325 F. Supp. 2d 919 (E.D. Ark. 2004), they are denied. The remaining allegations in paragraph 11 of the Complaint contain legal conclusions to which no response is required. To the extent a response is required, they are denied.

12.     The Foundation admits that Scott Varady is the Executive Director and General Counsel of the Foundation, he has served in this role since December 2015, and he previously worked in the Office of the General Counsel for the University of Arkansas. The Foundation states that its public filings speak for themselves.

FEC\44844\0001\7884684.v1-9/3/20

13.     The allegations in paragraph 13 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 13 of the Complaint and therefore denies the same.

14.     The Foundation denies the allegations in paragraph 14 of the Complaint.

15.     The Foundation admits that its Executive Director at times works with the University's Athletics Director but denies all remaining allegations in paragraph 15 of the Complaint.

16.     The Foundation admits that it works with and/or coordinates with the University's Athletics Department at times.  The Foundation states that the Knight Commission Report speaks for itself.  To the extent the allegations in paragraph 16 are inconsistent with the Knight Commission Report, they are denied.  The Foundation denies all remaining allegations in paragraph 16 of the Complaint.

17.     The Foundations states that the Knight Commission Report, the *Arkansas Democrat-Gazette* article, and the Foundation's publicly available financial reports speak for themselves.  To the extent the allegations in paragraph 17 are inconsistent with the Knight Commission Report, the *Arkansas Democrat-Gazette* article, and the Foundation's publicly available financial reports, they are denied.  The Foundation denies all remaining allegations in paragraph 17 of the Complaint.

**NATURE OF DISPUTE**

18.     The Foundation denies the allegations in paragraph 18 of the Complaint and specifically denies any wrongdoing.  The Foundation denies that Bielema is entitled to the relief he seeks or any relief whatsoever.  The allegations in paragraph 18, Footnote 2, do not appear to

4

be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 18, Footnote 2, of the Complaint and therefore denies the same.

## FACTUAL BACKGROUND

19.     The Foundation admits that the University and Coach Bielema entered into an Employment Agreement on or about August 20, 2013 and states that the Employment Agreement speaks for itself. To the extent the allegations in paragraph 19 are inconsistent with the Employment Agreement, they are denied. The Foundation denies any remaining allegations in paragraph 19 of the Complaint.

20.     The Foundation states that the Employment Agreement speaks for itself. To the extent the allegations in paragraph 20 are inconsistent with the Employment Agreement, they are denied. The Foundation denies any remaining allegations in paragraph 20 of the Complaint. In response to the allegations in Footnote 3 of the Complaint, the Foundation states that the Employment Agreement speaks for itself.

21.     The Foundation admits that it entered into a Personal Services and Guaranty Agreement ("2012 Buyout Agreement") with Bielema on or about October 23, 2013, and states that the terms of the 2012 Buyout Agreement speak for themselves. To the extent the allegations in paragraph 21 are inconsistent with the terms of the 2012 Buyout Agreement, they are denied, including, without limitation, any characterizations of the Employment Agreement and/or the 2012 Buyout Agreement. The Foundation denies any remaining allegations in paragraph 21 of the Complaint.

22.     The Foundation admits that on or about February 6, 2015, the University and Bielema entered into a First Amendment to the Employment Agreement ("Amended Employment

Agreement") and states that the Amended Employment Agreement speaks for itself. To the extent the allegations in paragraph 22 are inconsistent with the Amended Employment Agreement, they are denied. The Foundation denies any remaining allegations in paragraph 22 of the Complaint.

23. The Foundation admits that on or about February 6, 2015, it entered into a second Personal Services and Guaranty Agreement ("2015 Buyout Agreement") with Bielema and states that the terms of the 2015 Buyout Agreement speak for themselves. To the extent the allegations in paragraph 23 are inconsistent with the 2015 Buyout Agreements, they are denied. The Foundation denies any remaining allegations in paragraph 23 of the Complaint.

24. The Foundation states that the terms of the 2012 and 2015 Buyout Agreements speak for themselves. To the extent the allegations in paragraph 24 are inconsistent with the 2012 and 2015 Buyout Agreements, they are denied. The Foundation denies any remaining allegations in paragraph 24 of the Complaint.

25. The Foundation states that the terms of the 2012 and 2015 Buyout Agreements and the initial Employment Agreement speak for themselves. To the extent the allegations in paragraph 25 are inconsistent with the 2012 and 2015 Buyout Agreements and the initial Employment Agreement, they are denied. The Foundation denies all remaining allegations in paragraph 25 of the Complaint.

26. The Foundation denies the allegations in paragraph 26 of the Complaint.

27. The allegations in paragraph 27 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 27 of the Complaint and therefore denies the same.

FEC\44844\0001\7884684.v1-9/3/20

28.     The Foundation admits that the University terminated Athletic Director Jeff Long in November 2017.  The Foundation further states that the *Whole Hog Sports* report speaks for itself.  To the extent the allegations in paragraph 28 are inconsistent with the *Whole Hog Sports* report, they are denied.  The Foundation denies all remaining allegations in paragraph 28 of the Complaint.

29.     The Foundation admits that the University terminated Bielema for convenience on or about November 24, 2017.  The Foundation denies all remaining allegations in paragraph 29 of the Complaint.

30.     The Foundation admits that Jeff Long received a buy-out payment.  The Foundation denies all remaining allegations in paragraph 30 of the Complaint.

31.     The Foundation states that the *Arkansas Democrat-Gazette* and *Associated Press* articles speaks for themselves.  To the extent the allegations in paragraph 31 are inconsistent with the *Arkansas Democrat-Gazette* and *Associated Press* articles, they are denied.  The Foundation denies any remaining allegations in paragraph 31 of the Complaint.

32.     The Foundation admits that the Executive Director had a phone conversation with Mr. Cornrich after Coach Bielema's termination regarding the preparation of the Release Agreement.  The Foundation denies all remaining allegations in paragraph 32 of the Complaint. The Foundation denies the allegations in Footnote 4 of the Complaint.

33.     The Foundation admits that the Release Agreement reflects a potential total buyout amount of $11,935,000.00.  The Foundation denies all remaining allegations in paragraph 33 of the Complaint.

34.     The Foundation states that the *ESPN* article speaks for itself.  To the extent the allegations in paragraph 34 are inconsistent with the *ESPN* article, they are denied.  The

FEC\44844\0001\7884684.v1-9/3/20

Foundation lacks information sufficient to admit or to deny the remaining allegations in paragraph 34 of the Complaint and therefore denies the same.

35.     The Foundation admits that it entered into a Release and Waiver Agreement ("Release Agreement") with Bielema in or about January 30, 2018, and states that the terms of the Release Agreement speak for themselves.   To the extent the allegations in paragraph 35 are inconsistent with the Release Agreement, they are denied.   The Foundation denies all remaining allegations in paragraph 35 of the Complaint.

36.     The Foundation denies the allegations in paragraph 36 of the Complaint and affirmatively states that the terms of the Release Agreement speak for themselves.   To the extent the allegations in paragraph 36 are inconsistent with the Release Agreement, they are denied.

37.     The Foundation denies all allegations in paragraph 37 of the Complaint and states that the terms of the Release Agreement speak for themselves.

38.     The Foundation denies the allegations in paragraph 38 of the Complaint and affirmatively states that the terms of the Release Agreement speak for themselves.   To the extent the allegations in paragraph 38 are inconsistent with the Release Agreement, they are denied.

39.     Paragraph 39 of the Complaint contains legal conclusions to which no response is required.   To the extent a response is required, the Foundation denies the same.

40.     The Foundation admits that Cornrich requested that certain amounts be excluded from the Foundation's right of offset.   The final amounts memorialized in the Release Agreement speak for themselves.   To the extent the allegations in paragraph 40 are inconsistent with the Release Agreement, they are denied.   The Foundation denies all remaining allegations in paragraph 40 of the Complaint.

41.    The Foundation states that Paragraph 5.B(iv) of the Release Agreement sets forth "exclusions" which speak for themselves.  To the extent the allegations in paragraph 41 are inconsistent with the Release Agreement, they are denied.  The Foundation denies all remaining allegations in paragraph 41 of the Complaint, including, without limitation, that the Executive Director of the Foundation negotiated or discussed such exclusions with Bielema.

42.    The allegations in paragraph 42 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 42 of the Complaint and therefore denies the same.  The Foundation affirmatively states that the second sentence in paragraph 42 contains a "7" as an apparent footnote, but none is included in the Complaint and thus the Foundation denies the same.

43.    The allegations in paragraph 43 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 43 of the Complaint and therefore denies the same.

44.    The allegations in paragraph 44 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 44 of the Complaint and therefore denies the same.  The Foundation affirmatively states that the *Bleacherreport.com* article speaks for itself.  To the extent the allegations in paragraph 44 are inconsistent with the *Bleacherreport.com* article, they are denied.

45.    The allegations in paragraph 45 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the

Foundation lacks information sufficient to admit or to deny the allegations in paragraph 45 of the Complaint and therefore denies the same. The Foundation affirmatively states that the *Bleacherreport.com* and *Toledo Blade* articles speak for themselves. To the extent the allegations in paragraph 45 are inconsistent with the *Bleacherreport.com* and *Toledo Blade* articles, they are denied.

46. The allegations in paragraph 46 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 46 of the Complaint and therefore denies the same. The Foundation affirmatively states that the *Bleacherreport.com* article speaks for itself. To the extent the allegations in paragraph 46 are inconsistent with the *Bleacherreport.com* article, they are denied.

47. The allegations in paragraph 47 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 47 of the Complaint and therefore denies the same.

48. The allegations in paragraph 48 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 48 of the Complaint and therefore denies the same. In response to the allegations in Footnote 5 of the Complaint, the Foundation affirmatively states that the Saunders dissertation speaks for itself. To the extent the allegations in paragraph 48 are inconsistent with the Saunders dissertation, they are denied.

FEC\44844\0001\7884684.v1-9/3/20

49. The Foundation affirmatively states that the Saunders dissertation speaks for itself and denies any remaining allegations in paragraph 49 of the Complaint. To the extent the allegations in paragraph 49 are inconsistent with the Saunders dissertation, they are denied.

50. The allegations in paragraph 50 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 50 of the Complaint and therefore denies the same. The Foundation affirmatively states that the *Banner Society* article speaks for itself. To the extent the allegations in paragraph 50 are inconsistent with the *Banner Society* article, they are denied.

51. The allegations in paragraph 51 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 51 of the Complaint and therefore denies the same.

52. The allegations in paragraph 52 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 52 of the Complaint and therefore denies the same. The Foundation denies the allegations in Footnote 6 of the Complaint.

53. The allegations in paragraph 53 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1). To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 53 of the Complaint and therefore denies the same. The Foundation denies the last sentence of paragraph 53 of the Complaint.

FEC\44844\0001\7884684.v1-9/3/20

54.     The allegations in paragraph 54 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 54 of the Complaint and therefore denies the same.

55.     The allegations in paragraph 55 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 55 of the Complaint and therefore denies the same.

56.     The allegations in paragraph 56 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 56 of the Complaint and therefore denies the same.

57.     The allegations in paragraph 57 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 57 of the Complaint and therefore denies the same.  The Foundation affirmatively states that the *USA Today* article speaks for itself.  To the extent the allegations in paragraph 57 are inconsistent with the *USA Today* article, they are denied.

58.     The Foundation admits that Butch Jones was terminated for convenience from the University of Tennessee in November 2017 and that he accepted a job at the University of Alabama in 2018.  The Foundation lacks information sufficient to admit or deny the allegations related to Coach Jones' buyout agreement, his job search efforts, or his salary and therefore denies the same.

FEC\44844\0001\7884684.v1-9/3/20

The Foundation denies that Jones' and Bielema's post-termination experiences bear similarities, and the Foundation denies all remaining allegations in paragraph 58 of the Complaint.

59.     The Foundation lacks information sufficient to admit or deny the allegations related to Coach Jones' buyout agreement, his job search efforts, his salary, or his relationship with the University of Tennessee and therefore denies the same.  The Foundation denies that Jones' and Bielema's post-breach conduct is relevant in any respect, and the Foundation denies all remaining allegations in paragraph 59 of the Complaint.

60.     The Foundation denies the allegations in paragraph 60 of the Complaint.

61.     The allegations in paragraph 61 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 61 of the Complaint and therefore denies the same.

62.     The allegations in paragraph 62 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 62 of the Complaint and therefore denies the same.

63.     The allegations in paragraph 63 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 63 of the Complaint and therefore denies the same.

64.     The Foundation denies the allegations in paragraph 64 of the Complaint.

65.     The Foundation admits that Bielema and the New England Patriots executed an independent contractor agreement on or about March 1, 2018, the terms of which speak for

themselves.  To the extent the allegations in paragraph 65 are inconsistent with the March 1, 2018 New England Patriots independent contractor agreement, they are denied. The Foundation lacks information sufficient to admit or to deny the remaining allegations in paragraph 65 of the Complaint and therefore denies the same.

66.     The Foundation admits that Bielema and the New England Patriots executed another agreement on or about July 15, 2018, the terms of which speak for themselves.  To the extent the allegations in paragraph 66 are inconsistent with the July 15, 2018 New England Patriots agreement, they are denied.  The Foundation affirmatively states that Bielema's July 2018 agreement with the Patriots specifically prohibited him from taking another job during the term of the agreement.  The Foundation lacks information sufficient to admit or to deny the remaining allegations in paragraph 66 of the Complaint and therefore denies the same.

67.     The Foundation denies the allegations in paragraph 67 of the Complaint.

68.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 68 of the Complaint and therefore denies the same.

69.     The Foundation states that the *Work and Money* article speaks for itself and denies the remaining allegations in paragraph 69 of the Complaint.  To the extent the allegations in paragraph 69 are inconsistent with the *Work and Money* article, they are denied.

70.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 70 of the Complaint and therefore denies the same.

71.     The Foundation admits that in or about April 2019, Bielema and the Patriots entered into another agreement, the terms of which speak for themselves.  To the extent the allegations in paragraph 71 are inconsistent with the April 2019 agreement, they are denied.  The Foundation affirmatively states that the first agreement that allowed Bielema to accept other employment came

14

after the Foundation sent Bielema notice of uncurable breach.  The Foundation denies any remaining allegations in paragraph 71 of the Complaint.

72.     The allegations in paragraph 72 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 72 of the Complaint and therefore denies the same.  The Foundation further states that *USA Today Sports* article speaks for itself.  To the extent the allegations in paragraph 72 are inconsistent with the *USA Today Sports* article, they are denied.

73.     The allegations in paragraph 73 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 73 of the Complaint and therefore denies the same.  The Foundation states that the *Sports Illustrated* and *ESPN* articles speak for themselves.   To the extent the allegations in paragraph 73 are inconsistent with the *Sports Illustrated* and *ESPN* articles, they are denied.

74.     The allegations in paragraph 74 do not appear to be directed to the Foundation and therefore do not warrant a response under Rule 8(b)(1).  To the extent a response is required, the Foundation lacks information sufficient to admit or to deny the allegations in paragraph 74 of the Complaint and therefore denies the same.

75.     The Foundation agrees that Bielema and the New York Giants signed an agreement on or about January 22, 2020, the terms of which speak for themselves.  To the extent the allegations in paragraph 75 are inconsistent with the January 22, 2020 New York Giants agreement, they are denied.  The Foundation denies any remaining allegations in paragraph 75 of the Complaint.

FEC\44844\0001\7884684.v1-9/3/20

76.     The Foundation states that the *New York Post* and *Elite Sports NY* articles speak for themselves.  To the extent the allegations in paragraph 76 are inconsistent with the *New York Post* and *Elite Sports NY* articles, they are denied.  The Foundation denies all remaining allegations in paragraph 76 of the Complaint.

77.     The Foundation denies all allegations in paragraph 77 of the Complaint.

78.     The Foundation states that the *Sports Illustrated* article speaks for itself.  To the extent the allegations in paragraph 78 are inconsistent with the *Sports Illustrated* article, they are denied.  The Foundation denies all remaining allegations in paragraph 78 of the Complaint.

79.     The Foundation states that the *Sporting News* and *College Football Talk* articles speak for themselves.  To the extent the allegations in paragraph 79 are inconsistent with the *Sporting News* and *College Football Talk* articles, they are denied.  The Foundation denies all remaining allegations in paragraph 79 of the Complaint.

80.     The Foundation denies all allegations in paragraph 80 of the Complaint.

81.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 81 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

82.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 82 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

83.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 83 of the Complaint and therefore denies the same.  The Foundation affirmatively states

that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

84.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 84 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

85.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 85 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

86.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 86 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

87.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 87 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

88.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 88 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

FEC\44844\0001\7884684.v1-9/3/20

89.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 89 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

90.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 90 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

91.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 91 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.

92.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 92 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.  The Foundation further states that Bielema was contractually obligated to do more than wait for an athletic director or search firm to reach out to him.

93.     The Foundation denies the allegations in paragraph 93 of the Complaint.  The Foundation affirmatively states that in 2018 Coach Bielema contractually bound himself, without any written exception, to a contract with the New England Patriots that prohibited him from seeking or accepting another football coaching position and further granted the unilateral right to the New England Patriots to extend those contractual obligations for an additional year – all of which violated the terms of the Release Agreement on its face.

94.     The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 94 of the Complaint and therefore denies the same.  The Foundation affirmatively states that even if such allegations are true, they are not sufficient to satisfy Bielema's obligations under the Release Agreement.  The Foundation further affirmatively states that Coach Bielema's repeated efforts to rely on his post-breach conduct are irrelevant.

95.     The Foundation denies the allegations in paragraph 95 of the Complaint.

96.     The Foundation admits that Hunter Yurachek became the Athletic Director for the University on or about December 4, 2017.  The Foundation states that the terms of the *Talk Business*, *Best of Arkansas Sports*, *Arkansas Democrat-Gazette*, and *Saturday Down South* articles speak for themselves.  To the extent the allegations in paragraph 96 are inconsistent with the *Talk Business*, *Best of Arkansas Sports*, *Arkansas Democrat-Gazette*, and *Saturday Down South* articles, they are denied.  The Foundation denies all remaining allegations in paragraph 96 of the Complaint.

97.     The Foundation denies the allegations in paragraph 97 of the Complaint.

98.     The Foundation admits that the Foundation, through its outside counsel, sent Bielema notice of uncurable breach on January 31, 2019, and states that the terms of that letter speak for themselves.  To the extent the allegations in paragraph 98 are inconsistent with the January 2019 letter, they are denied.  The Foundation denies all remaining allegations in paragraph 98 of the Complaint.  With respect to Footnote 7 of the Complaint, the Foundation admits that it was relieved of its obligations under the Release Agreement by Bielema's uncurable material breaches. The Foundation further admits that it made its last payment to Bielema under the Release Agreement on January 31, 2019.  To the extent the allegations in Footnote 7 are inconsistent with the January 2019 letter, they are denied.  With respect to Footnote 8 of the Complaint, the

FEC\44844\0001\7884684.v1-9/3/20

Foundation admits that the Board of Trustees of the University of Arkansas filed a Complaint against John Scott on November 8, 2019 alleging breach of his employment contract. The Foundation denies any remaining allegations in Footnotes 7 and 8 of the Complaint.

99.     The Foundation denies the allegations in paragraph 99 of the Complaint.

100.    The Foundation denies the allegations in paragraph 100 of the Complaint.

101.    The Foundation denies the allegations in paragraph 101 of the Complaint.

102.    The Foundations states that the *KATV* and *Arkansas Business* articles speak for themselves. To the extent the allegations in paragraph 102 are inconsistent with the *KATV* and *Arkansas Business* articles, they are denied. The Foundation denies all remaining allegations in paragraph 102 of the Complaint.

103.    The Foundation states that the *Arkansas Democrat-Gazette* article speaks for itself. To the extent the allegations in paragraph 103 are inconsistent with the *Arkansas Democrat-Gazette* article, they are denied. The Foundation denies all remaining allegations in paragraph 103 of the Complaint.

104.    The Foundation denies the allegations in paragraph 104 of the Complaint.

105.    The Foundation admits that Bielema's lawyer sent an email to the Foundation's lawyer on or about March 19, 2019. The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 105 of the Complaint regarding whether Bielema, Cornrich, or anyone acting on their behalf disclosed certain information to anyone else and therefore denies the same. The Foundation denies any claim of privacy or confidentiality and all remaining allegations in paragraph 105 of the Complaint.

106.    The Foundation lacks information sufficient to admit or to deny the allegations in paragraph 106 of the Complaint and therefore denies the same.

FEC\44844\0001\7884684.v1-9/3/20

107.     The Foundation states that the *Arkansas Democrat-Gazette* column speaks for itself.  To the extent the allegations in paragraph 107 are inconsistent with the *Arkansas Democrat-Gazette* column, they are denied.  The Foundation denies any remaining allegations in paragraph 107 of the Complaint.

108.     The Foundation states that the *Arkansas Democrat-Gazette* column speaks for itself.  To the extent the allegations in paragraph 108 are inconsistent with the *Arkansas Democrat-Gazette* column, they are denied.  The Foundation denies any remaining allegations in paragraph 108 of the Complaint.

109.     The Foundation states that the *Arkansas Democrat-Gazette* column speaks for itself.  To the extent the allegations in paragraph 109 are inconsistent with the *Arkansas Democrat-Gazette* column, they are denied.  The Foundation denies all remaining allegations in paragraph 109 of the Complaint.

110.     The Foundation states that the *Arkansas Business* article speaks for itself.  To the extent the allegations in paragraph 110 are inconsistent with the *Arkansas Business* article, they are denied.  The Foundation denies all remaining allegations in paragraph 110 of the Complaint.

111.     The Foundation denies the allegations in paragraph 111 of the Complaint.

112.     The Foundation states that the *Arkansas Democrat-Gazette* columns speak for themselves.  To the extent the allegations in paragraph 112 are inconsistent with the *Arkansas Democrat-Gazette* columns, they are denied.  The Foundation lacks information sufficient to admit or to deny whether the *Arkansas Democrat-Gazette* columns were republished and therefore denies the same.  The Foundation denies all remaining allegations in paragraph 112 of the Complaint.  The Foundation denies the allegations in Footnote 9 of the Complaint.  With respect to Footnote 10 of the Complaint, the Foundation states that the June 9, 2020 *Arkansas Democrat-Gazette*

FEC\44844\0001\7884684.v1-9/3/20

column speaks for itself. To the extent the allegations in Footnote 10 are inconsistent with that *Arkansas Democrat-Gazette* columns, they are denied.

113.     The Foundation denies the allegations in paragraph 113 of the Complaint and states that the terms of the Release Agreement speak for themselves.

114.     The Foundation states that the Release Agreement speaks for itself and denies all remaining allegations in paragraph 114 of the Complaint. To the extent the allegations in paragraph 114 are inconsistent with the Release Agreement, they are denied.

115.     The Foundation denies the allegations in paragraph 115 of the Complaint.

116.     The Foundation denies the allegations in paragraph 116 of the Complaint.

117.     The Foundation affirmatively states that the Release Agreement was not in effect in 2020, and therefore, it was not under any legal obligation to meet with Coach Bielema or his representatives. The Foundation further affirmatively states that the Complaint falsely mischaracterizes or intentionally misconstrues the Release Agreement and that no "annual dispute resolution meeting" requirement existed at any time. Accordingly, the Foundation denies allegations in paragraph 117 of the Complaint.

118.     The Foundation states that the Release Agreement speaks for itself and denies all remaining allegations in paragraph 118 of the Complaint. To the extent the allegations in paragraph 118 are inconsistent with the Release Agreement, they are denied. The Foundation affirmatively states that Cornrich provided no updates to the Foundation in violation of the Release Agreement.

119.     The Foundation states that the Release Agreement speaks for itself and denies all remaining allegations in paragraph 119 of the Complaint. To the extent the allegations in paragraph 119 are inconsistent with the Release Agreement, they are denied.

FEC\44844\0001\7884684.v1-9/3/20

120.     The Foundation states that the Employment Agreement speaks for itself and denies all remaining allegations in paragraph 120 of the Complaint.  To the extent the allegations in paragraph 120 are inconsistent with the Employment Agreement, they are denied.

121.     The Foundation denies the allegations in paragraph 121 of the Complaint.

122.     The Foundation denies the allegations in paragraph 122 of the Complaint.

123.     The Foundation admits that Cornrich emailed a copy of Bielema's independent contractor agreement to the Foundation's Executive Director on May 2, 2018.  The Foundation denies any remaining allegations in paragraph 123 of the Complaint.

124.     The Foundation admits that its Executive Director responded to Cornrich's email on May 2, 2018.  The Foundation denies any remaining allegations in paragraph 124 of the Complaint.

125.     The Foundation admits that its Executive Director responded to Cornrich's email on May 2, 2018.  The Foundation denies any remaining allegations in paragraph 125 of the Complaint.

126.     The Foundation admits that its Executive Director sent an email to Cornrich on or about July 17, 2018, requesting an update regarding Bielema's employment situation.  The Foundation denies any remaining allegations in paragraph 126 of the Complaint.

127.     The Foundation states that the *Arkansas Democrat-Gazette* article speaks for itself and denies any remaining allegations in paragraph 127 of the Complaint.  To the extent the allegations in paragraph 127 are inconsistent with the *Arkansas Democrat-Gazette* article, they are denied.

FEC\44844\0001\7884684.v1-9/3/20

128.    The Foundation admits that Cornrich emailed a copy of Bielema's employment agreement with the Patriots to the Foundation's Executive Director on August 10, 2018.  The Foundation denies any remaining allegations in paragraph 128 of the Complaint.

129.    The Foundation admits that it did not acknowledge receipt of the email, but denies any obligation to do so.  The Foundation affirmatively states that it was Bielema's obligation to communicate to the Foundation, as stated in the email, "I will continue to keep you informed." The Foundation is without sufficient information to admit or to deny the remaining allegations in paragraph 129 of the Complaint, and therefore denies the same.

130.    The Foundation states that its January 31, 2019 letter speaks for itself and denies all remaining allegations in paragraph 130 of the Complaint.  To the extent the allegations in paragraph 130 are inconsistent with the January 31, 2019 letter, they are denied.

131.    The Foundation states that its January 31, 2019 letter speaks for itself and denies all remaining allegations in paragraph 131 of the Complaint.  To the extent the allegations in paragraph 131 are inconsistent with the January 31, 2019 letter, they are denied.

132.    The Foundation states that its January 31, 2019 letter speaks for itself.  The Foundation further states that the *CBS Sports* and *ESPN* articles speak for themselves.  To the extent the allegations in paragraph 132 are inconsistent with the January 31, 2019 letter or the *CBS Sports* and *ESPN* articles, they are denied.  The Foundation denies all remaining allegations in paragraph 132 of the Complaint.

133.    The Foundation states that the *CBS Sports* article speaks for itself and denies all remaining allegations in paragraph 133 of the Complaint.  To the extent the allegations in paragraph 133 are inconsistent with the *CBS Sports* article, they are denied.  Contrary to the allegations in paragraph 133 of the Complaint, the Foundation affirmatively states that the article's

FEC\44844\0001\7884684.v1-9/3/20

author quoted Coach Bielema as stating: "'It's a whole different way to coach [in the NFL],' Bielema said. 'I understand once they go to that level, *coaches don't ever go back*' [to college]." (emphasis added).

134. The Foundation denies the allegations in paragraph 134 of the Complaint.

135. The Foundation denies the allegations in paragraph 135 of the Complaint.

136. The Foundation denies the allegations in paragraph 136 of the Complaint.

137. The Foundation denies the allegations in paragraph 137 of the Complaint.

138. The Foundation states that Bielema's 2018 Patriots Contract speaks for itself. The Foundation denies all remaining allegations in paragraph 138 of the Complaint. To the extent the allegations in paragraph 138 are inconsistent with Bielema's 2018 Patriots Contract, they are denied.

139. The Foundation denies the allegations in paragraph 139 of the Complaint.

## COUNT ONE

140. The Foundation's responses above are incorporated herein by reference.

141. The Foundation denies the allegations in paragraph 141 of the Complaint.

142. The Foundation denies the allegations in paragraph 142 of the Complaint.

143. The Foundation denies the allegations in paragraph 143 of the Complaint.

## COUNT TWO

144. The Foundation's responses above are incorporated herein by reference,

145. The Foundation denies the allegations in paragraph 145 of the Complaint.

146. The Foundation denies the allegations in paragraph 146 of the Complaint.

147. The Foundation denies the allegations in paragraph 147 of the Complaint.

148. The Foundation denies the allegations in paragraph 148 of the Complaint.

FEC\44844\0001\7884684.v1-9/3/20

**COUNT THREE**

149.    The Foundation's responses above are incorporated herein by reference.

150.    The Foundation denies the allegations in paragraph 150 of the Complaint.

151.    The Foundation denies the allegations in paragraph 151 of the Complaint.

152.    The Foundation denies the allegations in paragraph 152 of the Complaint.

153.    The Foundation denies the allegations in paragraph 153 of the Complaint.

154.    The Foundation also requests a trial by jury.

155.    The Foundation denies each and every allegation in the Complaint not specifically admitted herein and further denies that Plaintiff is entitled to any relief whatsoever, including, without limitation, all relief requested in the "WHEREFORE" paragraph of the Complaint.

**AFFIRMATIVE DEFENSES**

Without assuming any burden of proof that it would not otherwise bear, and reserving the right to amend its Answer to assert additional defenses as they may become known during discovery, the Foundation asserts the following defenses and/or affirmative defenses:

156.    The Foundation affirmatively states that Bielema's claims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

157.    The Foundation maintains that venue in this Court is not proper as set forth more fully in its Motion to Dismiss.

158.    The Foundation affirmatively states that Bielema's claims are barred in whole or in part by contractual agreement, as all of the Foundation's actions were specifically authorized by the Release Agreement and the release and waiver provisions of the Employment Agreement (as amended) bar the Complaint against the Foundation.

159. The Foundation affirmatively states that Bielema's claims are barred in whole or in part because Bielema committed one or more material breaches of the Release Agreement and the Foundation therefore was relieved of its obligations under the Release Agreement.

160. The Foundation affirmatively pleads that the Complaint fails to state facts sufficient to justify an award of punitive damages.

161. The Foundation affirmatively states that Bielema's punitive damages claims are unconstitutional and should be dismissed.

162. The Foundation affirmatively states that Bielema's claims are barred in whole or in part by his own breaches.

163. The Foundation affirmatively states that Bielema's claims are barred in whole or in part by release and accord and satisfaction.

164. The Foundation affirmatively states that Bielema's claims are barred in whole or in part by absence of a condition precedent.

165. The Foundation affirmatively states that Bielema's claims are barred in whole or in part by Bielema's failure to mitigate his damages.

166. The Foundation affirmatively states that Bielema's claims are barred in whole or in part by wavier, estoppel, laches, ratification, and unclean hands.

167. The Foundation affirmatively states that Bielema is not entitled to any relief, because he has sustained no injury or damages, or any injury or damages sustained have not been proximately caused by the Foundation.

168. The Foundation affirmatively states that Bielema's Complaint violates Rule 8's requirement of a short and plain statement of the facts.

169.     The Foundation affirmatively states that Bielema's claims are barred because he waived his right to sue the Foundation.

170.     The Foundation affirmatively states that Bielema's claims are barred because he agreed that if the University terminated him for convenience and he sued any of the released parties, including the Foundation, then he would not be entitled to any of guaranty payment amount.

171.     The Foundation respectfully reserves the right to supplement its Answer and Affirmative Defenses to assert other lawful defenses applicable to this action.  The Foundation reserves the right to plead further and reserves objections on the basis of lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, failure to state a claim upon which relief can be granted, and failure to join a party under Rule 19, pendency of another action between the same parties arising out of the same transaction or occurrence, and the affirmative defenses listed in Rule 8, including, but not limited to, accord and satisfaction, arbitration and award, exclusiveness of remedy under workers' compensation law, contributory negligence, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

**COUNTERCLAIM**

Defendant / Counter-Plaintiff, The Razorback Foundation, Inc. (the "**Foundation**"), by and through its attorneys, Friday, Eldredge & Clark, LLP, for its Counterclaim against Plaintiff / Counter-Defendants, Bret A. Bielema ("**Bielema**") and Neil Cornrich ("**Cornrich**"), respectfully states as follows:

**NATURE OF DISPUTE**

1.      After his separation from the University of Arkansas, Bielema had "an affirmative duty of mitigation to diligently seek and to obtain other employment." Release and Waiver Agreement ("Release Agreement"), attached hereto as **Exhibit A**, § 5(B)(i).   Further, Bielema agreed "to use his best efforts to maximize his earning potential with any new employer(s) consistent with compensation rates for similar positions in the given industry at the time such Other Employment is obtained" during the buy-out period (from November 2017- December 2020).  *Id*. § 5(B)(v).  The Foundation's guaranty payments to Bielema were entitled to be offset by amounts Bielema received from such other employment, subject to certain excluded threshold amounts.  *Id*. § 5(B)((iii), (iv).  In sum, Bielema had a contractual duty to mitigate the Foundation's liability to him.

2.      Bielema's affirmative duty to mitigate and to reduce the Foundation's liability to him carried the same weight and force as the Foundation's obligation to pay Bielema under the Release Agreement; the weight of those respective contractual commitments in the Release Agreement are equal and binding.  In exchange for the Foundation's contractual commitment to pay millions of dollars to him, Bielema contractually committed himself to work to diligently seek and to obtain other employment to meet his affirmative duty of mitigating the amount of money to be paid by the Foundation.   That is, Bielema was contractually obligated to reduce or to

29

eliminate the amount of money to be paid by the Foundation.  Bielema, however, failed to do so on a wholesale basis in multiple ways.

3.     Bielema's duty to mitigate the Foundation's payments required more than simply finding another job.  He was required to seek and to obtain employment "of the same or similar character." *See Runkle v. Fuess*, 226 Ark. 447, 449, 290 S.W.2d 433, 434 (1956).  Thus, he had an affirmative duty to seek and to obtain a job that maximized his earning potential during the buyout period, not just to take a job that built his resume while the Foundation footed the bill.  Despite years of college head coaching experience and three Rose Bowls, Bielema failed to use his best efforts to maximize his earning potential and to reduce the Foundation's payments to him, as required under the Release Agreement.  In contrast, and as just one of many examples, former Razorback Coach Chad Morris became the offensive coordinator for Auburn, making more than $700,000 per year following his termination.  Bielema, however, did not diligently seek and obtain other employment to meet the duty of mitigation as required by the Release Agreement.  Bielema likewise had a contractual duty once he had gotten a job to "use his best efforts to maximize his earning potential with [the] new employer[s] consistent with compensation rates for similar positions in the given industry[.]" Ex. A. § 5(B)(v).  Bielema also failed to satisfy this requirement under the Release Agreement.  Bielema's duties to mitigate, as the word requires, must have reduced or eliminated the Foundation's liability to the greatest extent possible.  This requirement was not aspirational; it was a legally binding obligation that Bielema accepted but failed to meet.

4.     Instead, the facts demonstrate that Bielema saw the buyout period (November 2017 – December 2020) as an opportunity for him to move to the NFL while the Foundation subsidized his training with millions of dollars.  To accomplish this goal, Bielema and his agent, Neil Cornrich, conspired to place Bielema with the New England Patriots without regard to Bielema's

legal obligation to diligently seek and to obtain other employment to meet his affirmative duty of mitigation to reduce the amount of money to be paid by the Foundation that was required by the Release Agreement.

5. As part of their scheme, Bielema and Cornrich fraudulently induced the Foundation to enter into the Release Agreement knowing Bielema would not fulfill his legal commitments and then intentionally breached the Release Agreement as soon as it was signed by accepting a position that did not come close to maximizing his earning potential. Bielema violated his promises to mitigate the Foundation's financial obligations by failing to use his best efforts to obtain, or even to look for, other employment. Specifically, he agreed to a position with the New England Patriots that paid far below what Bielema could have earned given his experience and failed to even remotely fulfill his mitigation obligation.

6. Perhaps most egregious and in *direct* breach of the Release Agreement, Bielema signed an employment agreement with the New England Patriots that legally prohibited Bielema from complying with his pre-existing affirmative duty of mitigation for which the Foundation was paying $320,833.33 each month. Specifically, the Patriots Employment Agreement provides: "The Employee [Bielema] shall not render services to another or others, either connected or not connected with football, during the Term of this Agreement, except with the express written permission of the Club[.]" The Term of the Agreement was from July 2018 through January 2019 (or January 2020 if the Patriots elected, in its sole discretion, to exercise the one-year option). Thus, the express terms of the New England Patriots' employment agreement contain *no exceptions* for Bielema to diligently seek and to obtain other employment to comply with his affirmative duty of mitigation under the Release Agreement with the Foundation. At no time did Bielema or Cornrich ever inform the Foundation that the unambiguous legal prohibition against

seeking other employment did not apply to Bielema's contract with the Patriots. Prior to and after signing the Patriots employment agreement, Bielema complied with the Patriots prohibition against seeking other employment because Bielema did nothing to meet his mitigation obligation to the Foundation in 2018 and early 2019 – all the while accepting millions of dollars from the Foundation without performing his contractual obligations.

7.     Equally as egregious and as another distinct breach of the Release Agreement, Bielema legally prohibited himself from complying with his affirmative duty of mitigation by granting the New England Patriots the *unilateral right* to extend his employment agreement for another year.   The Patriots Employment Agreement provided that the Patriots "in its sole discretion, may elect to extend the Term hereof for an additional one (1)-year period commencing February 1, 2019 and ending on January 31, 2020[.]" This provision resulted in Bielema's abandonment of his affirmative duty of mitigation to reduce or to eliminate the millions of dollars being paid by the Foundation – all in violation of the Release Agreement.  Once again, the Patriots employment agreement lacked any exceptions during its second year for Bielema to diligently seek and to obtain other employment to meet his affirmative duty of mitigation in the Release Agreement.  Thus, Bielema took himself off the job market – at a pay rate far below his actual earning potential – for *two* years (*i.e.*, more than half the buyout period) when he signed with the New England Patriots in violation of his legal obligations to the Foundation.  In practical terms, the employment bar through January 2020 would have effectively taken Bielema out of the fall 2019 coaching hiring cycle, significantly restricting his ability to seek and to obtain employment for the final year of the buyout period.

8.     Bielema removed himself from the market for college coaching jobs (or any other position) by signing such a legally restrictive employment agreement with the New England

Patriots.  Bielema made no effort to affirmatively mitigate as required by the Release Agreement until well *after* the termination of the Release Agreement when the Foundation notified Bielema of a series of uncurable breaches of contract that legally excused any further performance by the Foundation.  Consequently, Bielema is not entitled to further payment under the Release Agreement, and he is liable to the Foundation for the payments made to him.

9.      Given that he had contractually committed to the New England Patriots that he would not search for other positions, Bielema likewise failed to report his efforts to find other employment because he was not seeking other employment in 2018 and early 2019.

10.     Bielema's breach was made possible by the efforts of his agent, Neil Cornrich. Cornrich helped negotiate the Release Agreement, so he had full knowledge of Bielema's obligations under the Release Agreement.  Further, Cornrich made representations regarding Bielema's duty to mitigate to induce the Foundation to enter into the Release Agreement, while knowing such representations were false.  Cornrich represents a list of high-profile coaches, including Bill Belichick, among many others.  Upon information and belief, Cornrich worked with his other clients, including Bill Belichick (whether known to him or not), to orchestrate an arrangement under which Bielema could stay in a position where he received compensation just below the offset threshold under the Release Agreement, thereby allowing Bielema to maximize his payments under the Release Agreement and deprive the Foundation of the benefit of its bargain. Cornrich did so while knowing that such terms were contrary to the agreement of the parties and in willful disregard of the Release Agreement's requirements.  Comparing Bielema to Cornrich's other clients who acquired much higher paying jobs around the same time clearly shows that Bielema and Cornrich plotted together to conspire against the Foundation.

FEC\44844\0001\7884684.v1-9/3/20

## PARTIES, JURISDICTION, AND VENUE

1.     The Foundation is an Arkansas non-profit corporation with its principal place of business located in Fayetteville, Washington County, Arkansas.

2.     On information and belief, Bielema is a citizen and resident of Norfolk County, Massachusetts.

3.     On information and belief, Cornrich is a citizen of Cuyahoga County, Ohio.

4.     This Court has subject matter jurisdiction over this case pursuant to Ark. Code Ann. § 16-13-201 and Arkansas Constitution, Amendment 80, § 6.

5.     The Court may exercise personal jurisdiction over Bielema and Cornrich pursuant to Ark. Code Ann. § 16-4-101.

6.     Venue is appropriate pursuant to Ark. Code Ann. §§ 16-60-101(a)(1) and 16-60-101 (a)(3)(A) and pursuant to the forum selection clause in the governing contract, as set forth in the Court's Order dated August 21, 2020.

## FACTUAL ALLEGATIONS

7.     Bielema worked as the University of Arkansas's (the "University") head football coach from 2012 through 2017.

8.     During all relevant times, Bielema was represented by Cornrich as his agent.

9.     On November 24, 2017, the University terminated Bielema's employment for convenience.

*Release and Wavier Agreement*

10.    After his termination, Bielema and the Foundation entered into the Release Agreement on January 30, 2018.  A true and correct copy of such Release Agreement is attached as **Exhibit A** and is incorporated herein by reference.

11.    The Release Agreement included a potential maximum guarantee payment to Bielema of $11,935,000, but the guarantee payment was expressly "subject to Bielema's duty of mitigation and the Foundation's right of offset." Ex. A § 5(A).

12.    The Foundation's payments were expressly conditioned upon, and carried the same weight as, Bielema's duty to mitigate.  *Id.*

13.    Pursuant to the Release Agreement, Bielema had an "affirmative duty of mitigation to diligently seek and to obtain other employment." *Id.* § 5(B)(i). Bielema further agreed to "use his best efforts to maximize his earning potential with any new employer(s) consistent with compensation rates for similar positions in the given industry at the time such Other Employment is obtained." *Id.* § 5(B)(v).

14.    Pursuant to the Release Agreement, Bielema also had a duty to "provide a written summary to the Foundation of his efforts to find other employment" every six months.  *Id.* § 5(i).

15.    Pursuant to the Release Agreement, Bielema had a duty to inform the Foundation when he successfully gained new employment.  *Id.* § 5(ii).

16.    Correspondingly, the Foundation had the right to offset and reduce its monthly payments dollar-for-dollar by the amount of compensation Bielema earned from other employment.  *Id.* § 5(iii), (v).  The Release Agreement allowed the Foundation to offset the greater of either (i) Bielema's "Other Income" (*i.e.*, any amounts Bielema received from other employment) or (ii) Bielema's "Average Annual Compensation" (*i.e.*, the average annual value of

all amounts required to be paid to Bielema over the term of multi-year contracts). *Id.* § 5(v). Thus, the intent of the offset provision was to maximize the amount of offset available to the Foundation and to prevent Bielema from backloading any multi-year contracts in an attempt to evade the mitigation obligation. *Id*.

17.     The Foundation's right to offset had certain exclusions, including that it did not apply to income falling below specified amounts. *Id.* § 5(iv). Specifically, the offset right did not apply to amounts falling below $150,000 before December 31, 2018. *Id.*

18.     Bielema's affirmative duty to mitigate and to reduce the Foundation's liability to him carried the same weight and force as the Foundation's obligation to pay Bielema under the Release Agreement; the weight of those respective contractual commitments in the Release Agreement are equal and binding.

### *Bielema Fraudulently Enters Into the Release Agreement*

19.     During the negotiation of the Release Agreement, Bielema, acting through Cornrich, represented to the Foundation that Bielema would find other employment and maximize his earning potential when in fact Bielema never intended to maximize his earning potential.

20.     At the time of the signing of the Release Agreement, Cornrich advised the Executive Director of the Foundation that "Arkansas had been good to Bret" and sometimes things just "don't work out." Cornrich explained the "Plan" was to position Bielema to get a major head coaching position at the end of the 2018 season, and the Foundation would not owe any of the buyout amount, or at least not most of it.

21.     Upon information and belief, by the time the Release Agreement was executed, Bielema had already brokered a deal with the New England Patriots where he would be making less than the $150,000 threshold amount.

22.     Indeed, Bielema, working through his agent, Cornrich, entered into the Release Agreement knowing that Bielema would not perform his mitigation obligations that were material to the Foundation's willingness to enter into the Release Agreement.

23.     A non-exhaustive list of facts showing that Bielema, through Cornrich, entered into the Release Agreement knowing that Bielema would breach his mitigation obligations is as follows:

> a.  During negotiation of the Release Agreement, Cornrich represented to the Foundation that the Foundation would not have a large buyout payment because Bielema intended to get a high-paying position.
>
> b.  Bielema and Cornrich never objected to the offset provisions allowing the Foundation to offset, dollar-for-dollar, the greater of (i) Bielema's "Other Income" (*i.e.*, any amounts Bielema received from other employment) or (ii) Bielema's "Average Annual Compensation" (*i.e.*, the average annual value of all amounts required to be paid to Bielema over the term of multi-year contracts). Indeed, they had no need to object to this provision, which would have benefited the Foundation, because Bielema and Cornrich knew – prior to execution of the Release Agreement – that they had negotiated a set-up where Bielema could stay with the Patriots throughout the term of the Release Agreement and receive an income below the offset threshold amount.
>
> c.  Only months after signing the Release Agreement, Bielema was quoted in a news article as not wanting to return to a college coaching position. In a CBS Sports article, Bielema stated: "It's a whole different way to coach [in the NFL] . . . I understand once they go to that level, coaches don't ever go back [to college]."

Dennis Dodd, *Bret Bielema Is Enjoying the NFL So Much, He May Never Go Back to College Football* (July 13, 2018), available at https://www.cbssports.com/college-football/news/bret-bielema-is-enjoying-the-nfl-so-much-he-may-never-go-back-to-college-football/. In response to this report, the Executive Director contacted Cornrich to express concern that Bielema's quotes were very damaging to any prospects of obtaining another college head coaching position. Cornrich admitted to the Executive Director that "Bret was too nice" to the reporter and "should not have made those comments." Cornrich further stated that he had "already chewed Bret out," and Bielema would not make similar remarks going forward. Cornrich then reaffirmed that getting Bielema a head coaching job was still the "Plan."

d.  Only months after signing the Release Agreement, Bielema executed agreements with the Patriots under which his compensation was suspiciously below or equal to the offset threshold set under the Release Agreement.

    i.  The offset threshold for 2018 was $150,000. In March 2018, Bielema executed an agreement with the Patriots under which he received $25,000 through July 1, 2018. In July 2018, Bielema executed another agreement with the Patriots under which he received $100,000 through January 2019. As such, Bielema received $125,000 from the Patriots in 2018, just $25,000 shy of the offset threshold.

    ii.  The offset threshold for 2019 was $125,000. The July 2018 agreement with the Patriots provided for a one-year option period commencing on February

1, 2019. Under the option, Bielema would have received $125,000, equaling exactly the offset threshold.

e.  Only months after signing the Release Agreement, Bielema executed an agreement with the Patriots that (i) legally bound himself to a prohibition from fulfilling his affirmative duty of mitigation and (ii) granted the Patriots the unilateral right to extend this scheme for an additional year.

f.  Bielema utterly failed to engage in any activity to find other employment during the 2018 college coaching search period as admitted in the Amended Complaint.

g.  All of the above was compounded by the lack of communication from Neil Cornrich and his dismissive attitude about Bielema's job-search requirements.

h.  In early December 2018, the Foundation's fears were confirmed when a person close to Bret Bielema told a representative of the Foundation that Bielema had represented that Bielema was not interested in, and would not accept, the open head coaching job at Kansas State University, if offered. Moreover, neither Cornrich nor Bielema provided any information that Bielema was actively on the job market seeking any available head coaching positions in 2018.

***Bielema's Efforts To Find Employment Fall Far Below What the Release Agreement Requires***

24.  In 2018, Bielema began working for the New England Patriots to assist the Patriots' coaching staff in assessing NFL draft prospects.

25.  Upon information and belief, Bielema provided services to the Patriots prior to March 2018 without compensation.

26.  Bielema's agreement with the Patriots was then memorialized in an independent contractor agreement dated March 1, 2018. This agreement expired on July 1, 2018.

FEC\44844\0001\7884684.v1-9/3/20

27.     Upon information and belief, the Patriots paid Bielema $25,000 for seven weeks of work under this arrangement.

28.     Having not heard from Bielema as to his plans when the March 1, 2018 agreement expired, the Foundation was forced to inquire with Cornrich instead of Bielema complying with the Release Agreement's requirement that he notify the Foundation.  After waiting two weeks to hear from Cornrich, on July 17, 2018, the Foundation asked: "I know his initial contract was set to expire at the end of June.  Can you please give us an update at this point?"  It was not until nearly one month later, on August 10 that Cornrich sent Bielema's new agreement to the Foundation.

29.     In July 2018, Bielema accepted a job as Special Assistant to the Patriots and accepted an annual salary of $100,000, notably just below the $150,000 offset limit.

30.     The Patriots agreement for the Special Assistant position prohibited Bielema from accepting any other employment during the term of the agreement. Specifically, the Patriots Employment Agreement provides: "The Employee shall not render services to another or others, either connected or not connected with football, during the Term of this Agreement, except with the express written permission of the Club[.]"

31.     By its express terms, Bielema legally forfeited the right to be available for head college coaching positions at the end of the 2018 college football season, and the New England Patriots were continuing to have a successful season in the play-offs and ultimately reached the Super Bowl.

32.     The Patriots agreement for the Special Assistant position gave the Patriots the *unilateral* right to extend the agreement (including the employment bar) for an additional year,

FEC\44844\0001\7884684.v1-9/3/20

including the unilateral right to exercise this extension within 48 hours after the Patriots' final game, which turned out to be the Super Bowl.

33.    Bielema failed to take any action whatsoever to diligently seek and to obtain other employment that would comply with his affirmative duty to mitigate in 2018.

34.    Indeed based on the allegations in Bielema's own Amended Complaint, during the year-long period between the date Bielema signed the Release Agreement in January 2018 and the date the Foundation sent a notice of breach in January 2019, Bielema did not meet with or speak to a search firm, Athletic Director, or anyone else about open positions.

35.    Thus, based on his July 2018 employment agreement with the New England Patriots, Bielema agreed – in violation of his Release Agreement and contrary to Cornrich's prior representations about the "Plan" for Bielema to obtain a high-paying collegiate head coaching position – not to seek employment during the 2018 college coaching cycle.

36.    Moreover, Bielema's July 2018 agreement granted the Patriots the unilateral right to extend Bielema's employment for an additional year at the same rate that was well below Bielema's true earning potential all the while still prohibiting Bielema from diligently seeking and obtaining another position to meet his affirmative duty of mitigation.  By early January 2019, this scheme to violate the Release Agreement was poised to continue within 48 hours following the conclusion of the 2019 Super Bowl.  Additionally, in January 2019, the Foundation was aware of reports that Bielema was telling people that he would be the next defensive coordinator of the Patriots.  The Patriots, however, already had Bielema contractually locked in at a low salary with the unilateral right to extend his employment for another year.  By the end of 2018 and early 2019, no steps were taken to carry out the "Plan" that Cornrich had touted at the time of executing the

Release Agreement and again in July 2018 when Bielema expressed the intent not to return to college coaching.

### *Neil Cornrich Facilitates Bielema's Fraud and Breach*

37.     At all relevant times, Cornrich served as Bielema's agent.

38.     Cornrich represented Bielema as he negotiated the Release Agreement and was personally involved in negotiations with the Foundation about the Release Agreement's buyout and offset provisions.

39.     Cornrich also represented Bielema as he negotiated his agreements with the Patriots.

40.     Cornrich served as agent for the Patriots' Head Coach, Bill Belichick, during the time that Bielema's agreements with the Patriots were being negotiated.

41.     Because Cornrich was intimately involved in the negotiations of the Release Agreement, he had full knowledge of the salary limits that would trigger the Foundation's right to offset.  Indeed, Cornrich initially requested even higher salary exclusions than what the parties ultimately agreed to in the final Release Agreement.

42.     Upon information and belief, Cornrich used his connection with the Patriots to negotiate a salary with the Patriots for Bielema that was far below market price for a former Division I head football coach.  Cornrich purposefully negotiated a salary that was well below what Bielema could have received given his previous position and experience in order for Bielema to receive the maximum amount he could without invoking the Foundation's right of setoff.

43.     Comparing Bielema to Cornrich's other clients who acquired jobs with salaries well above the offset limit around the same timeframe confirms that Bielema and Cornrich intentionally negotiated compensation below the offset threshold.

FEC\44844\0001\7884684.v1-9/3/20

44.     For example, Tom Arth, one of Cornrich's client, left the University of Tennessee – Chattanooga to become head coach at Akron in 2019 where he makes $500,000 per year.

45.     Additionally, comparing Bielema to other head coaches who were terminated for convenience around the same timeframe confirms that Bielema and Cornrich intentionally negotiated compensation below the offset threshold.

46.     For example, Will Muschamp was the head football coach at the University of Florida from 2011-2014.   One month after being terminated, he was hired as the Defensive Coordinator at Auburn, where his salary was more than $1.6 million.   After one year at Auburn, Muschamp was hired as the Head Coach at South Carolina, where he makes more than $4 million per year.

47.     As another example, Kevin Sumlin was the head football coach at Texas A&M from 2012-2017.  Within months of being terminated for convenience, he was hired as the head coach at the University of Arizona with a base salary of $2 million.

***Bielema's Post-Notice-of-Breach Efforts Underscore His Paltry Attempts To Seek Employment***

48.     On January 31, 2019, the Foundation sent written notice to Bielema that he failed to comply with the Release Agreement.  Specifically, the Foundation notified Bielema that he materially breached the Agreement by (i) failing to diligently seek and obtain other employment; (ii) failing to provide a written summary to the Foundation of his efforts to find other employment every six months; (ii) failing to notify the Foundation in writing of other employment he had obtained and the income he received from such employment; and (iv) failing to use his best efforts to maximize his earning potential with any new employer.

49.     Only after the Foundation's written notice of uncurable breach, the Patriots promoted Bielema to Assistant Coach with an annual salary of $250,000 in April 2019.  Notably,

Bielema was first paid an income that was not below the threshold for the Foundation's right of offset after the Foundation's written notice of uncurable breach and the Foundation was legally excused from any further performance under the Release Agreement. However, Bielema's compensation was still well below his earning potential.

50.     Also after the Foundation's written notice of uncurable breach and in direct response to the specific violations of the Release Agreement identified in that notice, Bielema entered into a post-breach Assistant Coach Employment Agreement that—unlike his previous Patriots' contract—permitted him to accept other employment. This occurred only *after* the Foundation notified Coach Bielema of his breach. If Bielema had not been bound by the employment bar in his previous Patriots agreement, then there would have been no need to make such a modification.

51.     In January 2020, Bielema accepted a position with the New York Giants as Outside Linebackers/Senior Assistant with an annual salary of $400,000.

52.     Also in January 2020, Bielema signed a revised agreement with the Giants that allowed Bielema to accept a Division 1 college head coaching position during the term of his agreement with the Giants.

## COUNT I - BREACH OF DUTY TO MITIGATE
### (Defendant Bielema)

53.     The Foundation restates and incorporates the preceding paragraphs of its Counterclaim as if stated herein again word for word.

54.     The Foundation and Bielema entered into the Release Agreement, which is a valid, binding contract.

55.     The Foundation has performed its obligations under the Release Agreement.

56.     Under the Release Agreement, Bielema had an affirmative duty to mitigate consistent with the terms of the Release Agreement and Arkansas law. Ex. A § 5(B)(i).  Further, Bielema agreed to "use his best efforts to maximize his earning potential with any new employer(s) consistent with compensation rates for similar positions in the given industry." *Id*. § 5(B)(v).  As such, Bielema had an affirmative duty of mitigation to reduce the amount of money to be paid by the Foundation that was required by the Release Agreement.

57.     Bielema breached the Release Agreement, by, among other things,

a.  Failing to seek and to obtain other employment;

b.  Failing to look for other employment that would maximize his earning potential;

c.  Failing to obtain employment "of the same or similar character." *See Runkle v. Fuess*, 226 Ark. 447, 449, 290 S.W.2d 433, 434 (1956);

d.  Failing to obtain other employment that would maximize his earning potential and with a compensation rate that was consistent with compensation rates for similar positions;

e.  Accepting a position as a "Special Assistant" with an annual salary of $100,000, which is far below the salary a former Division I head football coach generally makes;

f.  Signing a contract that violated the Release Agreement by contractually prohibiting himself from meeting his affirmative duty of mitigation, including his duty to diligently seek and to obtain other employment;

g.  Accepting a position that allowed the Patriots to unilaterally extend the agreement (including the employment bar) for one year; and

FEC\44844\0001\7884684.v1-9/3/20

h.  Failing to reduce the amount of money to be paid by the Foundation that was required by the Release Agreement.

58.  Bielema's breach of the Release Agreement resulted in damages to the Foundation in an amount exceeding $ 4,555,833.29 (*i.e.*, the full amount of payments made by the Foundation to Bielema under the Release Agreement to date).

## COUNT II - BREACH OF DUTY TO REPORT
### (Defendant Bielema)

59.  The Foundation restates and incorporates the preceding paragraphs of its Counterclaim as if stated herein again word for word.

60.  The Foundation and Bielema entered into the Release Agreement, which is a valid, binding contract.

61.  The Foundation has performed its obligations under the Release Agreement.

62.  Under the Release Agreement, Bielema had an affirmative duty to provide the Foundation with regular reports related to his employment search.  Specifically, Bielema agreed to "provide a written summary to the Foundation of his efforts to find other employment" every six months.  Ex. A § 5(B)(i).

63.  Bielema breached his reporting obligations under the Release Agreement, by, among other things:

a.  Failing to provide written summaries of his job search efforts every six months;

b.  Failing to notify the Foundation of his other employment and other income; and

c.  Requiring the Foundation to inquire as to his other employment and other income.

64.  Bielema's breach of the Release Agreement resulted in damages to the Foundation in an amount to be proven at trial.

FEC\44844\0001\7884684.v1-9/3/20

## COUNT III – FRAUDULENT MISREPRESENTATION
### (Defendants Bielema and Cornrich)

65.     The Foundation restates and incorporates the preceding paragraphs of its Counterclaim as if stated herein again word for word.

66.     To induce the Foundation to execute the Release Agreement, Bielema and Cornrich represented to the Foundation that Bielema would diligently seek and obtain other employment to fulfill his affirmative duty of mitigation and that he would use his best efforts to maximize his earning potential.

67.     To induce the Foundation to execute the Release Agreement, Bielema and Cornrich further represented and agreed that such income (above the offset threshold) would be used to offset the Foundation's payment obligations.

68.     To induce the Foundation to execute the Release Agreement, Cornrich represented that Bielema would obtain a significant coaching job in the next coaching hiring cycle in 2018 as part of the "Plan" that would eliminate or greatly reduce the Foundation's obligations under the Release Agreement.

69.     The parties and their representatives spent weeks negotiating the terms of the mitigation and offset provisions.

70.     As Bielema's agent, Cornrich had knowledge of the Release Agreement.  Cornrich worked with the Foundation to negotiate the Release Agreement and was personally involved in negotiating the mitigation and offset provisions.

71.     Bielema and Cornrich knew at the time of making such representations that such representations were false or that Bielema did not have a sufficient basis of information to make such representation.

72.     Specifically, upon information and belief, Bielema and Cornrich knew at the time

47

of making such representations that Bielema did not intend to carry out such promise, as evidenced by the facts alleged herein, specifically paragraphs 19-23. The Foundation reserves the right to amend its Counterclaim to assert additional facts as they may become known during discovery.

73. Upon information and belief, Cornrich used his connection with Bill Belichick and the Patriots to negotiate a salary for Bielema from the Patriots that was below the level necessary to trigger the Foundation's right to offset so that Bielema could maximize his personal financial gain to the detriment of the Foundation. Additionally, Cornrich's actions benefitted the Patriots, and, by extension, his other client, Bill Belichick, to the detriment of the Foundation.

74. Cornrich had a clear interest in helping the Patriots hire Bielema for a salary that was purposefully less than the trigger amount for the Foundation's right to offset, as a lower compensation amount would benefit both Bielema and the Patriots (and by extension Belichick). As a result, Cornrich had a motive to engage in the fraud because it financially benefited his clients on both ends of the deal and ultimately would benefit Cornrich to groom Bielema for a head coaching position in the NFL. To achieve this objective, however, Cornrich had to create a pathway for Bielema to position himself for an NFL head coaching position. Cornrich's scheme to place Bielema with the Patriots deprived the Foundation of Bielema's commitments in the Release Agreement to comply with his affirmative duty of mitigation to seek and to obtain other employment – all at the expense of the Foundation.

75. Bielema's obligation to mitigate and the Foundation's corresponding right to offset were material terms, and Bielema and Cornrich knew that the Foundation would rely on such representations and intended for the Foundation to rely on these representations.

76. The Foundation justifiably and reasonably relied on the representations set forth herein in executing the Release Agreement.

48

77.     The Foundation suffered damages as a result of such misrepresentations in an amount exceeding $4,555,833.29 (*i.e.*, the full amount of payments made by the Foundation to Bielema under the Release Agreement to date), but which the Foundation reserves the right to prove in greater amounts at trial, in addition to costs, pre-judgment and post-judgment interest, and attorneys' fees.

78.     In addition to the other damages to which the Foundation is entitled to recover from Plaintiff / Counter-Defendants, the Foundation is entitled to recover punitive damages from Bielema and Cornrich.

## COUNT IV - DECLARATORY RELIEF

79.     The Foundation restates and incorporates the preceding paragraphs of its Counterclaim as if stated herein again word for word.

80.     Pursuant to Arkansas Code Annotated § 16-111-102, parties whose rights, status, or legal relations are affected by a statute, contract, or other legal instrument are entitled to petition the court for a determination of any question of the construction or validity of such statute, contract, or other legal instrument and for a determination of their rights, status, or legal relations.

81.     There is a real and substantial judicial controversy between the parties to this action as to the Foundation's obligations under the Release Agreement.

82.     Because Bielema committed a material breach by failing to mitigate and breached the implied covenant of good faith and fair dealing by intentionally breaching the Release Agreement for his personal financial gain, the Foundation was relieved of its obligations under the Release Agreement.

83.     The Foundation therefore seeks a judicial declaration that it is not obligated to pay Bielema any additional amounts under the Release Agreement.

49

84.     As a result, a justiciable controversy exists between the parties, and the issues herein are ripe for determination.

## PUNITIVE DAMAGES & OTHER MATTERS

85.     Due to the egregious, fraudulent, and intentional misconduct of Plaintiff / Counter-Defendants described above, the Foundation is entitled to punitive damages in an amount to be determined by the jury.  In addition to being intentional, Plaintiff / Counter-Defendants knew or ought to have known, in the light of the surrounding circumstances, that their conduct would naturally and probably result in damage to the Foundation, and they nonetheless continued such conduct with malice and/or in reckless disregard of the consequences from which malice may be inferred.

86.     The Foundation requests a trial by jury.

WHEREFORE, Defendant / Counter-Plaintiff, the Razorback Foundation, Inc., prays as follows:

(a)     That the Foundation recover judgment against Plaintiff / Counter-Defendants, jointly and severally, for compensatory damages suffered as a result of their unlawful acts and omissions in an amount to be proven at trial but not less than $4,555,833.29 (*i.e.*, the full amount of payments made by the Foundation to Bielema under the Release Agreement to date), together with reasonable attorneys' fees, pre-judgment and post-judgment interest as allowed by law, costs, and additional costs of collection;

(b)     That the Foundation recover punitive damages from and against Plaintiff / Counter-Defendants sufficient in amount to punish and deter the egregious, intentional, and malicious conduct described in this Counterclaim;

(c)	That this Court judicially determine and declare the Foundation's rights and obligations under the Release Agreement and construe or interpret those rights in accordance with the law, the Release Agreement, and the allegations of this Counterclaim; and

(d)	That the Foundation be awarded such additional relief as may be proper under the allegations hereof.

Respectfully submitted,

Marshall S. Ney, AR91108
Robert W. George, AR98134
Katherine C. Campbell, AR2013241
Blake Z. Brizzolara, AR2017229
FRIDAY, ELDREDGE & CLARK, LLP
3350 S. Pinnacle Hills Parkway, Suite 301
Rogers, AR  72758
Office:	(479) 695-6049
Facsimile:	(501) 244-5389
mney@fridayfirm.com

By:	*/s/ Marshall S. Ney*
	Marshall S. Ney, AR Bar 91108

## <u>CERTIFICATE OF SERVICE</u>

I, Marshall S. Ney, do hereby certify that the foregoing is being electronically filed with the Court and that the below listed persons will receive a copy of the foregoing via the Court's electronic notification system (ECF), on or about this 3rd day of September, 2020:

Thomas A. Mars
tom@mars-law.com

R. Craig Wood
cwood@mcguirewoods.com

Benjamin P. Abel
babel@mcguirewoods.com

John C. Everett
john@everettfirm.com

John E. Tull, III
jtull@qgtlaw.com

Ryan K. Culpepper
ryan@theculpepperfirm.com

*/s/ Marshall S. Ney*
Marshall S. Ney

FEC\44844\0001\7884684.v1-9/3/20