### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

**BRET A. BIELEMA**                                                                                    **PLAINTIFF**

**v.**                                          **5:20-cv-05104-PKH**

**THE RAZORBACK FOUNDATION, INC.**                                                **DEFENDANT**

---

**THE RAZORBACK FOUNDATION, INC.**                                        **COUNTER-PLAINTIFF**

**V.**

**BRET A. BIELEMA and**
**NEIL CORNRICH**                                                                             **COUNTER-DEFENDANTS**

### COACH BIELEMA'S RULE 26(f) REPORT

Through the undersigned attorneys, Plaintiff/Counter-Defendant Bret Bielema ("Coach Bielema"), submits the following as his Rule 26(f) Report:

### PRELIMINARY MATTER

**Rule 26(f) Conference.** Counsel for Coach Bielema and Defendant/Counter-Plaintiff The Razorback Foundation, Inc. ("Foundation") met by phone Thursday, September 10, to discuss the topics listed in Federal Rule of Civil Procedure 26(f) and Local Rule 26.1. Counter-Defendant Neil Cornrich ("Cornrich"), whom the Foundation joined without motion in the Counterclaim included with its Answer, has not appeared and was not represented at the conference. The parties who have appeared (hereinafter just "the parties") attempted to negotiate the form of a joint report, but differences about the appropriate use and scope of a Stipulated Protective Order proposed by Defendant's counsel could not be resolved in the time available. The parties therefore submit separate reports.

1

**Coach Bielema's Statement of the Case.** This case involves a Final Buyout Agreement in which the Foundation agreed to make monthly payments to Bret Bielema, the University of Arkansas' former head football coach. Coach Bielema alleges that: (a) he fully performed his obligations under the Final Buyout Agreement; and (b) the Foundation broke that contract by terminating the monthly payments he was owed without cause and without making a reasonable inquiry to determine the facts. Coach Bielema also alleges that the Foundation deliberately leaked derogatory information to the media and made public statements about Coach Bielema that placed him in a negative light. Coach Bielema seeks damages for breach of contract in the approximate amount of $7,025,000. He also seeks unspecified actual and actual and punitive damages for breach of the non-disparagement clause in the Final Buyout Agreement and for False Light Invasion of Privacy, as well as attorney fees, costs, and other proper relief.

**Foundation's Statement of the Case**. The Foundation will separately submit its Statement of the Case.

## MATTERS REQUIRED BY LOCAL RULE 26.1

1. **Any changes in timing, form, or requirements of mandatory disclosures under Fed. R. Civ. P. 26(a).** Coach Bielema has no objection to and proposes no changes to the form of or requirement for disclosures under Rule 26(a)(1).

2. **Date when mandatory disclosures were or will be made.** Initial disclosures will be made within fourteen (14) days of the filing of this report.

3. **Subjects on which discovery may be needed.** Coach Bielema asserts that discovery may include the following:

    a. The basis for the Foundation's assertions in its January 31, 2019 Demand Letter to Coach Bielema and any unstated factors, including financial

2

motives, that contributed to the Foundation's decision to stop making the monthly buyout payments to Coach Bielema.

b. The involvement of the University of Arkansas Director of Athletics and other University of Arkansas employees in the Foundation's decision to stop making the monthly buyout payments to Coach Bielema.

c. The background and reason for the Foundation's public statements regarding its decision to stop making the monthly buyout payments to Coach Bielema.

d. The identity and motives of any persons who were involved in giving *Arkansas Democrat–Gazette* columnist Wally Hall a copy of the Foundation's Demand Letter.

e. The Foundation's historical practices when entering into and performing buyout agreements with coaches in the University of Arkansas's athletics programs.

f. The role of the Foundation Board in deciding to stop making the monthly buyout payments to Coach Bielema.

g. The industry practices, customs, expectations, and understandings about job opportunities for DI college football coaches or NFL coaches who have recently been terminated for convenience.

h. The Foundation's knowledge of the foregoing industry practices, customs, expectations, and understandings.

i. Compensation terms of employment contracts between the New England Patriots organization and members of its football coaching and administrative staff.

    j.  Any written or oral agreements between Coach Bielema and the New England Patriots organization regarding his ability to leave the Patriots organization without penalty or interference to accept a DI head football coach position.

    k.  Coach Bielema's efforts to secure a DI head football coach position following his termination by the University of Arkansas.

    l.  Neil Cornrich's efforts to secure a DI head football coach position for Coach Bielema following his termination by the University of Arkansas.

    m.  The communications between Coach Bielema and the Foundation following his termination by the University of Arkansas.

    n.  The communications between Neil Cornrich and the Foundation following his termination by the University of Arkansas.

    o.  The factual basis for the tort claims set forth in the Foundation's Counterclaim.

    p.  The amount of money the Foundation has paid Coach Bielema per the terms of the Final Buyout Agreement.

**4.**    **Whether any party will likely be requested to disclose or produce information from electronic or computer-based media. If so:**

    **a.  whether disclosure or production will be limited to data reasonably available to the parties in the ordinary course of business;**

    **b.  the anticipated scope, cost and time required for disclosure or production of data beyond what is reasonably available to the parties in the ordinary course of business;**

    **c.  the format and media agreed to by the parties for the production of**

      **such data as well as agreed procedures for such production;**

    d. **whether reasonable measures have been taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise;**

    e. **other problems which the parties anticipate may arise in connection with electronic or computer-based discovery.**

With respect to Topic 4 and its subparts, the parties agree some electronically stored information ("ESI") in the form of e-mails and text messages will need to be searched and produced in native form. The parties have not yet exchanged discovery requests, and Cornrich has not participated in these discussions. However, the parties believe that these will not be complex searches, and they will confer if any issues arise.

5. **Date by which discovery should be completed.** The parties disagree about the timing of the discovery cut-off deadlines. Coach Bielema proposes the following:

    a. Depositions and written discovery: 80 days before trial

    b. Expert reports: 120 days before trial

    c. Rebuttal expert reports: 100 days before trial

6. **Any needed changes in limitations imposed by the Federal Rules of Civil Procedure.** The parties do not seek to alter (increase or decrease) the maximum number of written discovery requests allowed by the Rules. However, Coach Bielema contends that more than 10 depositions will be needed. Upon information and belief, a number of persons affiliated with the Foundation were involved in the decision to stop making buyout payments to Coach Bielema. The identity of the person or persons involved in publishing the Demand Letter to Wally Hall may not

be ascertainable from Hall himself if he asserts the journalist's privilege. Further, Coach Bielema's efforts to find other employment in the elite football coaching industry, and the options and salaries available, effectively concern a small but finite number of institutions and positions across the country. Although the Foundation's litigation theories have not been fully revealed, and pretrial rulings may simplify the proof issues, numerous depositions of persons in the industry may be needed to fairly and noncumulatively illustrate the reasonableness of Coach Bielema's mitigation efforts.

7. **Any orders, e.g. protective orders, which should be entered.** The parties have conferred extensively about the Foundation's desire to limit the scope of discovery by a Stipulated Protective Order and have not reached an agreement. Counsel for the parties are continuing to confer about this matter.

8. **Any objections to initial disclosures on the ground that mandatory disclosures are not appropriate in the circumstances of the action.** No.

9. **Any objections to the proposed trial date.** The proposed trial date and standard deadlines set forth in the Initial Scheduling Order are acceptable to Coach Bielema's counsel. The parties estimate that 3-5 days will be necessary for the trial of this matter.

10. **Proposed deadline for joining other parties and amending the pleadings.** The standard deadlines set forth in the Initial Scheduling Order are acceptable to Coach Bielema and his counsel.

11. **Proposed deadline for completing discovery. (Note: In the typical case, the deadline for completing discovery should be no later than sixty (60) days before trial.)** The standard deadlines set forth in the Initial Scheduling Order are acceptable

to the parties and their counsel.

12. **Proposed deadline for filing motions other than motions for class certification. (Note: In the typical case, the deadline for filing motions should be no later than sixty (60) days before trial.)** The standard deadlines set forth in the Initial Scheduling Order are acceptable to the parties and their counsel.

Respectfully submitted,

By: /s/ Thomas A. Mars
Thomas A. Mars, AR Bar 86115
MARS LAW FIRM
5500 Pinnacle Point Drive, Suite 202
Rogers, AR 72758
Office: (479) 381-5535
tom@mars-law.com

John C. Everett, AR Bar 70022
EVERETT LAW FIRM
P.O. Box 1460 12217 W. Hwy. 62
Farmington, AR 72730-1460 Phone:
(479) 267-0292
john@everettfirm.com

John E. Tull III, AR Bar 84150
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center St., Suite 1900
Little Rock, AR 72201
Phone: (501) 379-1705
jtull@qgtlaw.com

Ryan K. Culpepper, AR Bar 2012093
CULPEPPER LAW FIRM, PLLC
P.O. Box 70
Hot Springs, AR 71902
Phone: (501) 760-0500
ryan@theculpepperfirm.com

R. Craig Wood
Benjamin P. Abel
(admitted *pro hac vice*)
McGUIRE WOODS LLP
Court Square Building
652 Peter Jefferson Parkway, Suite 350
Charlottesville, VA 22911
Phone: (434) 977-2558
cwood@mcguirewoods.com
babel@mcguirewoods.com

*Counsel for Plaintiff*