IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**BRET A. BIELEMA**                                                                   **PLAINTIFF**

vs.

**THE RAZORBACK FOUNDATION, INC.**                                  **DEFENDANT**

Case No. 5:20-cv-05104-PKH

**THE RAZORBACK FOUNDATION, INC.**                         **COUNTER-PLAINTIFF**

vs.

**BRET A. BIELEMA and NEIL CORNRICH**                  **COUNTER-DEFENDANTS**

**BRET A. BIELEMA'S ANSWER TO COUNTERCLAIM**

For his Answer to the Counterclaim filed by the Defendant, The Razorback Foundation, Inc. ("the Foundation"), Plaintiff Bret A. Bielema ("Coach Bielema") states:

1. The first Paragraph 1 of the Counterclaim appears to be a statement not requiring an admission or denial by Coach Bielema. To the extent that paragraph alleges or attempts to allege any claim or cause of action against Coach Bielema, those assertions in that paragraph are denied. Pleading further, and with regard to the reference(s) to the Release Agreement ("Final Buyout Agreement") contained in the first Paragraph 1, Coach Bielema states that duties imposed by the Final Buyout Agreement are determined by the unambiguous terms of the Agreement, the facts and circumstances surrounding its execution and, to the extent any term is ambiguous, extrinsic evidence of industry custom and the parties' intent. Coach Bielema denies breaking a duty to mitigate. Further, to the extent the Foundation contends

1

that breach of the "affirmative duty of mitigation" in the Final Buyout Agreement would excuse all future performance, the Foundation is mistaken. That provision merely echoes wrongful-termination mitigation principles in a setting where Coach Bielema and the University had agreed that a termination without cause would not be wrongful. Coach Bielema denies breaking that duty. However, even if he had broken it, the Foundation would be entitled only to offset the income Coach Bielema would have earned if he had complied with the duty, which it would bear the burden of proving.

2. The first Paragraph 2 of the Counterclaim appears to be a summary of what Defendant/Counter-Plaintiff believes the Final Buyout Agreement says and what the parties intended the language in the contract to mean. To that extent, Coach Bielema states that the Final Buyout Agreement speaks for itself, subject to the caveat expressed in the first paragraph of this Answer. Coach Bielema further denies that he failed to comply with the terms of the Final Buyout Agreement.

3. The first Paragraphs 3, 4, 5, 6, 7, 8, 9 and 10 of the Counterclaim set forth a gratuitous, fictional narrative of the Foundation's position for which there is no evidentiary basis in fact. Paragraphs 4, 5, and 10 violate the requirements of Rule 11 in that the Foundation failed to make a reasonable inquiry prior to filing its Counterclaim to determine whether there was any evidentiary basis for the assertions set forth in those paragraphs. Had the Foundation made the inquiry required by Rule 11, it would have known that no such evidence exists. Coach Bielema denies the first Paragraphs 3, 4, 5, 6, 7, 8, 9 and 10 of the Counterclaim to the extent they allege or attempt to allege any improper act or omission by him and further denies the allegations of improper acts or conduct by Neil Cornrich. Coach Bielema specifically denies the allegations of fraud, fraudulent inducement, conspiracy, and

breach of contract alleged in those paragraphs and elsewhere.

4. Coach Bielema admits the second Paragraphs 1, 2, 3, 4, 5, and 6 of the Counterclaim set forth in the section entitled, "PARTIES, JURISDICTION, AND VENUE."

5. Coach Bielema admits Paragraph 7 of the Counterclaim set forth in the section entitled, "FACTUAL ALLEGATIONS."

6. With regard to paragraph 8 in the section entitled, "FACTUAL ALLEGATIONS," Coach Bielema admits retaining Neil Cornrich as his "agent."

7. Coach Bielema admits Paragraph 9 in the section entitled, "FACTUAL ALLEGATIONS."

8. Coach Bielema admits the existence of the Final Buyout Agreement attached to the Counterclaim as Exhibit A, as alleged in paragraph 10. Coach Bielema again states the content of that document speaks for itself, subject to the caveat expressed in the first paragraph of this Answer.

9. Paragraphs 11, 12, 13, 14, 15, 16, 17, and 18 of the Counterclaim appear to be a summary of what the Foundation wants to believe the Final Buyout Agreement says and what it means. To that extent, Coach Bielema again states that the document speaks for itself, subject to the caveat expressed in the first paragraph of this Answer. Coach Bielema further denies the claims or allegations of fraud, breach of contract, and other wrongdoing by him or Neil Cornrich and specifically denies all related claims or causes of action that have been asserted against him in those paragraphs.

10. Coach Bielema denies Paragraphs 19, 20, 21, 22, 23, 25, 28, 30, 31, 32, 33, 34, 35, and 36 of the Counterclaim. Coach Bielema admits the allegations of Paragraph 24, 26, 27, and 29 except to the extent they imply any wrongdoing on the part of Coach Bielema.

11. With regard to Paragraph 37 of the Counterclaim, Coach Bielema admits to retaining Neil

Cornrich as his "agent" but is without knowledge or information sufficient to form a belief as to the application of the phrase, "at all relevant times," as used in that paragraph and, therefore, denies the remaining allegations in that paragraph.

12. With regard to Paragraphs 38, 39, and 40 Coach Bielema admits being represented by Neil Cornrich in the negotiation of the Final Buyout Agreement and further admits that, at the time of the negotiations, Neil Cornrich also represented Coach Belichick. Coach Bielema lacks sufficient knowledge or information to admit or deny the remaining allegations in those paragraphs, which are therefore denied. Coach Bielema denies all claims of wrongdoing alleged in those paragraphs.

13. Coach Bielema denies Paragraphs 41, 42, 43, 44, 45, 46, and 47 of the Counterclaim to the extent they allege or attempt to allege any improper acts or omissions by him or Neil Cornrich and specifically denies all allegations of fraud, fraudulent inducement, conspiracy, and breach of contract as are set forth in those paragraphs.

14. With regard to Paragraphs 48, Coach Bielema admits to the issuance of a document by the Foundation claiming to notify him of his alleged failure to comply with the terms of the Final Buyout Agreement.

15. Coach Bielema denies Paragraphs 49, 50, 51, and 52 to the extent such paragraphs allege or attempt to allege any improper acts or omissions by him or Neil Cornrich.

16. To the extent Paragraph 53 of the Counterclaim incorporates claims or allegations denied elsewhere in this Answer, that paragraph is denied.

17. With respect to the Final Buyout Agreement referred to in Paragraphs 54, 55, 56, 57, and 58, Coach Bielema admits the Final Buyout Agreement is valid, with this reservation: Coach Bielema contends the Final Buyout Agreement required reasonable, limited mitigation

efforts under an ascertainable standard in return for a real, non-illusory promise from the Foundation to make payments. If the Final Buyout Agreement is interpreted to give the Foundation complete discretion to make or withhold those payments, the Final Buyout Agreement might fail as a contract for want of new and mutual consideration on the subject matter of the 2015 Buyout Agreement. If so, the release of Coach Bielema's rights under the 2015 Buyout Agreement would fail, and in that event Coach Bielema reserves the right to assert breach of the 2015 Buyout Agreement. Coach Bielema states that the content of the Final Buyout Agreement speaks for itself, subject to the caveat expressed in the first paragraph of this Answer. Coach Bielema denies the remaining allegations in those paragraphs.

18. To the extent Paragraph 59 of the Counterclaim incorporates claims or allegations denied elsewhere in this Answer, the assertions in that paragraph are denied.

19. Coach Bielema again admits the existence of the Final Buyout Agreement as referred to in Paragraphs 60, 61, 62, 63, and 64 and states that the content of that document speaks for itself, subject to the caveat expressed in the first paragraph of this Answer. Coach Bielema denies the remaining allegations in Paragraphs 60, 61, 62, 63, and 64, including the assertion that the Foundation has complied with or otherwise performed all obligations of the Final Buyout Agreement

20. To the extent Paragraph 65 incorporates claims or allegations denied elsewhere in this Answer, the assertions in that paragraph are denied.

21. Coach Bielema again admits the existence of the Final Buyout Agreement (Release Agreement) as referred to in Paragraphs 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, and 78 and states the content of that document speaks for itself, subject to the caveat expressed

in the first paragraph of this Answer. Coach Bielema denies the remaining allegations in those paragraphs. Paragraphs 65 through 78 violate the requirements of Rule 11 in that the Foundation failed to make a reasonable inquiry prior to filing its Counterclaim to determine whether there was any evidentiary basis for the assertions set forth in those paragraphs. Had the Foundation made the inquiry required by Rule 11, it would have known that no such evidence exists.

22. To the extent Paragraph 79 of the Counterclaim incorporates claims or allegations denied elsewhere in this Answer, the assertions in that paragraph are denied.

23. Paragraphs 80 and 81 appear to be statements not requiring an admission or denial, but to the extent they allege or attempt to allege any improper act or omission by Coach Bielema, they are denied.

24. Coach Bielema denies the allegations of Paragraphs 82, 83, and 84.

25. Coach Bielema denies Paragraph 85 of the Counterclaim. Paragraph 85 violates the requirements of Rule 11 in that the Foundation failed to make a reasonable inquiry prior to filing its Counterclaim to determine whether there was any evidentiary basis for the assertions set forth in those paragraphs. Had the Foundation made the inquiry required by Rule 11, it would have known that no such evidence exists.

26. Coach Bielema denies all material allegations regarding any claim, cause of action, or element of damages set forth in the Counterclaim not specifically admitted in this Answer. Pleading further, and in the affirmative, he states that some or all of the claims asserted by Defendant/Counter-Plaintiff are barred by the doctrines of waiver, estoppel, laches, and unclean hands and that the Counterclaim fails to set forth facts sufficient to form a cause of action upon which punitive damages might be granted. Coach Bielema further adopts the

affirmative defenses set forth in the Foundation's Answer to Coach Bielema's Amended Complaint.

27. Coach Bielema states that the Foundation's claims should be dismissed under Rule 12(b)(6), or that judgment on the pleadings should be granted under Rule 12(c), because the contract claims are grounded in an untenable interpretation of the Final Buyout Agreement, and the remaining claims fail to set forth facts that plausibly allege why Coach Bielema, Neil Cornrich, or any similar person would act as described. Examples include:

    a. Apart from alleging that the offset provision was drafted to "prevent Bielema from backloading any multi-year contracts in an attempt to evade the mitigation obligation[,]" *№ 35* at 36 ¶ 16, which is not alleged to have occurred, the Foundation identifies no benefit to Coach Bielema, Neil Cornrich – or even Coach Belichick – from negotiating a salary for Bielema that would fall below the income exemption. The allegation that falling below a dollar-for-dollar offset would "maximize [Coach Bielema's] personal financial gain to the detriment of the Foundation[.]" *№ 35* at 48 ¶¶ 72 & 73, is mathematically impossible.

    b. The Foundation alleges in Count II that Coach Bielema was required to report every six months on his job-search efforts. As Coach Bielema explained in the briefing on the Foundation's Motion to Dismiss Amended Complaint, the duty to report on Coach Bielema's job search efforts terminated when Coach Bielema obtained other employment with the Patriots. Moreover, on the admitted facts, if this were a breach, it was a curable breach that was promptly cured. But there was no breach. Between the execution of the Final Buyout Agreement in January 2018 and the Foundation's breach in January 2019, no six-month period passed without a report on Coach Bielema's efforts to seek

employment.

c. The Foundation alleges in Count III that Coach Bielema and Neil Cornrich misrepresented Coach Bielema's intentions in order to induce the Foundation to enter into the Final Buyout Agreement. Coach Bielema denies those allegations. Notably, the Final Buyout Agreement is the parties' third contract on the subject of Coach Bielema's rights in the event he was terminated for convenience. To the extent the Final Buyout Agreement is valid, it released the Foundation's obligations under the 2015 Buyout Agreement, which required the Foundation to pay $15.4 million, not $11.935 million, and replaced a mitigation provision with one that would have been satisfied even if the Foundation's allegations were true:

> If Bielema is terminated by the University of Arkansas for its convenience and the Foundation is obligated to pay the amounts specified in paragraph 8 herein, Bielema agrees that those payments shall be subject to the following mitigation provisions. Bielema shall be required to do the following: Bielema shall have the duty to mitigate his damages by making reasonable efforts to gain re-employment. The parties understand and agree that if Bielema is successful in gaining such re-employment, or alternative employment of any kind the Foundation's Guaranty Payment obligations shall be reduced by the amount of compensation Coach earns from such employment (so long as such employment coincides with the Guaranty Payments). The Foundation's right to reduce its obligations shall not include amounts Coach may earn from passive investments or interest not associated with new employment.

№ 19 at 5 ¶ 11. In this factual context, the Foundation nonsensically alleges that Coach Bielema fraudulently induced it to enter into a new contract *that would save the Foundation $3.465 million*. What's more, the Foundation's allegation that Coach Bielema never intended to seek or accept a DI head coaching position during the 2017-18 coaching carousel is inconsistent with the realities of college football, the limited number of open positions, the many qualified candidates for those

positions, and – more importantly – the irrefutable evidence that Coach Bielema actively sought such a position.

28.     Coach Bielema requests a trial by jury

Respectfully submitted,

By: /s/ Thomas A. Mars
Thomas A. Mars, AR Bar 86115
MARS LAW FIRM, P.A.
5500 Pinnacle Point Drive, Suite 202
Rogers, AR 72758
Office: (479) 381-5535
tom@mars-law.com

John C. Everett, AR Bar 70022
EVERETT LAW FIRM
P.O. Box 1460
12217 W. Hwy. 62
Farmington, AR
72730-1460
Phone: (479) 267-0292
john@everettfirm.com

John E. Tull III, AR Bar 84150
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center St., Suite 1900
Little Rock, AR 72201
Phone: (501) 379-1705
jtull@qgtlaw.com

Ryan K. Culpepper, AR Bar 2012093
CULPEPPER LAW FIRM, PLLC
P.O. Box 70
Hot Springs, AR 71902
Phone: (501) 760-0500
ryan@theculpepperfirm.com

>R. Craig Wood
>Benjamin P. Abel
>McGUIRE WOODS LLP
>Court Square Building
>652 Peter Jefferson Parkway, Suite 350
>Charlottesville, VA 22911
>Phone: (434) 977-2558
>cwood@mcguirewoods.com
>babel@mcguirewoods.com
>
>*Counsel for Plaintiff Bret Bielema*