IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**BRET BIELEMA.**                                                                     **PLAINTIFF**

vs.

**THE RAZORBACK FOUNDATION, INC.**                              **DEFENDANT**

Case No. 5:20-cv-05104-PKH

**THE RAZORBACK FOUNDATION, INC.**                              **COUNTER- PLAINTIFF**

vs.

**BRET BIELEMA and NEIL CORNRICH**                              **COUNTER- DEFENDANTS**

**REPLY BRIEF IN SUPPORT OF COUNTER-DEFENDANTS'
JOINT MOTION FOR RULE 11 SANCTIONS**

**INTRODUCTION**

In this Reply, we will focus on the Foundation's assertion that it complied with the requirements of Rule 11 by conducting a "reasonable inquiry" before accusing the Counter-Defendants of conspiring to defraud the Foundation. Within the constraints of the applicable page limit, we will also address why the logic-defying "inferences" the Foundation invokes to justify the fraud and conspiracy claims cannot be considered *reasonable* under the circumstances.

Consistent with the Foundation's practice of using pleadings as a platform to rant and disparage Coach Bielema and his counsel, the Response begins and ends with contemptuous mudslinging toward Bielema's counsel.[1] Though it would be tempting to address each of those

---

[1] We adamantly deny that the Rule 11 Motion was part of a "revenge strategy," that we made statements to anyone that any reasonable lawyer would consider to be inappropriate "threats," or

1

baseless and absurd accusations, which succeeded in drawing the national media's attention, we take them as an unwarranted distraction. Considering the limited space available to address the meris of the pending motion, we will focus instead on the falsehoods in the Response and the lack of evidentiary support for the Foundation's position.

As shown below and in the accompanying Exhibits, the Foundation's counsel has not limited the use of falsehoods and half-truths to defaming Bielema's counsel in this docket. False and misleading statements are also the basis for the Foundation's position that it complied with Rule 11. Our own investigation reveals that much of the evidence the Foundation purports to rely on for its Counterclaim *does not exist*. That revelation raises even more troubling questions about the merits of the Foundation's case and its willingness to go far past the boundaries of permissible advocacy.

## ARGUMENT

The Foundation's initial disclosure of witnesses, which includes current employees of the Foundation, the Chairman of the Foundation's Board of Directors, and current and former employees of the University of Arkansas,[2] included a description of the subject matter of each witness's relevant knowledge. Of central relevance to the Rule 11 Motion, the Foundation attributed to former Razorback assistant coach Barry Lunney knowledge of the only direct evidence (however weak) asserted to support its fraud claim: "*Bielema's statement that he would

---

that we have said or done anything that justifies the criticism in the Foundation's Response. If the Court wishes to delve into the facts behind opposing counsel's accusations, we would welcome an evidentiary hearing.

[2] **Exhibit 1**. Notably, the Foundation's list of witnesses does not include Coach Belichick or any representative of the Patriots, whose testimony would seem necessary to prove the Foundation's fraud and conspiracy claims.

2

*not pursue the head football coach position at Kansas State University.*" **Exhibit 1**. The knowledge attributed to four other former employees of the University and the Foundation covered a broad range of topics. Notably, the knowledge attributed to former Razorback AD Jeff Long included: "*[C]onversations regarding Bielema's efforts to seek head football coaching positions at Kansas and other institutions.*"

Against that background, the Foundation's Response includes the following representations about its "*thorough* pre-complaint investigation":

- "[The Foundation investigated the facts, *interviewed witnesses*, and collected and reviewed documents." № 46 at 8 (emphasis added).

- "Specifically, *the Foundation's investigation revealed the following evidence. . .*

   **Witness statements** – At this early stage, *the Foundation has already <u>identified several witness statements to support its fraud claim</u>. The Foundation identified in its initial disclosures that <u>Barry Lunney Jr. had personal knowledge of Bielema's statement that he would not pursue the head coaching position at KSU</u>.*"

   \* \* \* \* \*

   "[T]he Foundation has investigated and uncovered evidence of: . . . *a <u>witness statement</u> identifying that Bielema represented that he did not intend to perform his mitigation obligations under the Release Agreement.*" *Id.* at 17–18, 19-20 (emphasis added).

As further explained below, this description of the Foundation's "pre-complaint investigation" is at best misleading and at worst untruthful. What's more, the statements about the anticipated testimony of Coach Lunney are *completely false*. The Foundation's lawyers have never spoken or otherwise communicated with Coach Lunney about this case. If they had, they would have known his testimony will be *the opposite* of what the Foundation attributes to him in the Response.

After reviewing the Foundation's Response, the undersigned counsel interviewed Coach Lunney by phone last Thursday. What follows is a summary of that interview:

3

>Coach Lunney said he had not been contacted or interviewed by the Foundation's lawyers regarding Coach Bielema or anything Coach Bielema might have said to him or in his presence.
>
>Coach Lunney denied that Coach Bielema ever said or even suggested that he wasn't interested in the KSU job or that he wasn't interested in returning to a head coach position in college football. Coach Lunney also said that he had always been under the impression that Coach Bielema wanted to obtain another head coach position at a D1 school and that he was certain that Coach Bielema never said anything to him or in his presence to indicate otherwise.

On Monday, Coach Lunney confirmed the accuracy of that summary via text message. ***Exhibit 2***.

Remarkably, Coach Lunney is not the only Foundation witness who was never contacted by its lawyers about the subjects described in the initial disclosures. Nor is he the only one who says his sworn testimony at trial would be very different from what the Foundation has indicated. ***Exhibit 2*** includes screenshots of similar text messages with named Foundation witnesses Jeff Long, Jon Blake, and Mark Taurasani confirming that they have not been contacted by the Foundation's counsel. Two say their pertinent knowledge would only help Coach Bielema.

In the 646 days since the Foundation first raised a number of false reasons for stopping the buyout payments in its Demand Letter to Coach Bielema, it would appear that the Foundation simply interviewed itself to determine the facts and otherwise relied on rumors, speculation, and wishful thinking. What else could explain the Foundation's representations about Lunney's "witness statement"?[4] Whether characterized as duplicity, boundless exaggeration, or a remarkable lack of candor, the Foundation's response to the Rule 11 motion speaks volumes about

---

[4] Even if the Foundation attempts to explain itself by saying that some other person heard Coach Lunney make the statement attributed to him in, hearsay of that kind is not admissible, and no more helpful to the Foundation than a comment written on a Razorback message board. In any event, crediting secondhand hearsay as the sole evidence of fraud would not qualify as a "*thorough* pre-complaint investigation."

why the Counter-Defendants' lawyers were duty-bound to seek sanctions against the Foundation's counsel.

The blatant misrepresentation about Coach Lunney's anticipated testimony is just the latest example of the Foundation inventing evidence to support its position while ignoring a wealth of evidence that undermines it. For instance, the Foundation contends Coach Bielema's contract with the Patriots is "direct evidence" of fraud because it "put legal handcuffs on his ability to seek and accept a college coaching position . . . for the entire buyout period[.]" № 46 at 14, 17. Having knowledge of so much evidence to the contrary, the Foundation's counsel could not possibly believe that was true.

That contract prohibited moonlighting, not job hunting: a Patriots employee "shall not render services to another or others . . . during the Term of this Agreement, except with the express written permission of the Club". № 35 at 31–32 ¶¶ 6 & 7. Far from having "*no exceptions*" as the Foundation asserts, the employee can provide services to others with "*the express written permission of the Club*[.]" *Id.* at 31 ¶ 6 (emphasis added). In direct conflict with the Foundation's fraud claim, paragraphs 81 through 83 of the Amended Complaint provide specific examples of Coach Bielema and his agent reaching out to universities and headhunters to express his interest in collegiate head coach positions at the same time the Foundation alleges he was conspiring to take a position with the Patriots that didn't even exist. Furthermore, the facts alleged in paragraph 68 of the Amended Complaint established that Coach Belichick has never "handcuffed" a coach who wanted to leave during the term of their contract to accept a DI head coach position. Specifically, the Amended Complaint put the Foundation on notice before it pleaded its Counterclaim that Coach Belichick was fully supportive of two former members of his staff who

5

had left the Patriots for that purpose and had helped them both in transitioning to their new roles as collegiate head coaches.

Consistent with the Foundation's "head in the sand" approach to asserting claims that instantly inflict reputational damage on innocent parties, the Foundation never made any effort before filing its fraud and conspiracy claims to *ask the Patriots* whether that contract conflicted with Coach Bielema's duties under the Final Buyout Agreement or, if so, whether permission had been given as the contract itself allowed. Why? Because it couldn't afford to hear the answer it had every reason to expect. Instead of making the reasonable inquiry required by Rule 11, the Foundation presumed to act as the sole interpreter and preemptive enforcer of terms it knew the Patriots could simply have waived.

There is simply no basis to infer that Coach Bielema didn't want a DI head coach position just because he didn't get one. Indeed, after alleging that Coach Bielema contrived to stay under a salary exemption it would have cost him nothing to exceed, the Foundation ignores that Coach Bielema would have benefited handsomely by taking a DI head coach position regardless of the offset.

Basic math continues to present a major obstacle for the Foundation, which positioned itself to play "heads I win, tails you lose" if any obligation to Coach Bielema remained, no matter what job he took. According to the Foundation's theory, to avoid being called a fraud, Coach Bielema not only had to seek the highest-paying position he could find; he was obligated to immediately obtain a position that would result in the Foundation owing "little, or none, of the

6

buyout amount" consistent with "the Plan."[5] Applying basic math, the only motivating "financial benefit" demonstrated in the filings to date is the undeserved windfall the Foundation has sought from a promise it has reneged on.

## CONCLUSION

The improper pleading of fraud and conspiracy described herein that causes serious harm to reputations – with nothing but a sham "investigation" to back it up – is precisely the kind of overly aggressive lawyering that Rule 11 was intended to deter. Given the egregious nature of the improper pleading and the irreversible reputational damage the Counter-Defendants have suffered from the attendant publicity, we respectfully request that the Court: (a) find that counsel for the Foundation failed to comply with both the "reasonable inquiry" and "improper purpose" prongs of Rule 11(b) in connection with the Foundation's fraudulent conspiracy claim; (b) exercise its discretion to impose appropriate sanctions on opposing counsel; and (c) provide the Counter-Defendants with all other appropriate relief to which they may be entitled.

---

[5] *№ 46* at 11. This is not a sound theory of contract or fraud. Moreover, to be actionable as fraud, a misrepresentation must "relate to a past event or a present circumstance, not a future event." *Rice v. Ragsdale*, 104 Ark. App. 364, 373, 292 S.W.3d 856, 864 (Ark. Ct. App. 2009); *see also Delta Sch. Commerce v. Wood*, 298 Ark. 195, 199, 766 S.W.2d 424, 427 (Ark. 1989).

Respectfully submitted,

By: /s/ Thomas A. Mars             .
    Thomas A. Mars, AR Bar 86115
    MARS LAW FIRM, P.A.
    5500 Pinnacle Point Drive, Suite 202
    Rogers, AR 72758
    Phone: (479) 381-5535
    tom@mars-law.com


    John C. Everett, AR Bar 70022
    EVERETT LAW FIRM
    P.O. Box 1460
    12217 W. Hwy. 62
    Farmington, AR 72730-1460
    Phone: (479) 267-0292
    john@everettfirm.com


    John E. Tull III, AR Bar 84150
    QUATTLEBAUM, GROOMS & TULL PLLC
    111 Center St., Suite 1900
    Little Rock, AR 72201
    Phone: (501) 379-1705
    jtull@qgtlaw.com


    Ryan K. Culpepper, AR Bar 2012093
    CULPEPPER LAW FIRM, PLLC
    P.O. Box 70
    Hot Springs, AR 71902
    Phone: (501) 760-0500
    ryan@theculpepperfirm.com

R. Craig Wood
Benjamin P. Abel
   (*admitted pro hac vice*)

McGUIRE WOODS LLP
Court Square Building
652 Peter Jefferson Parkway, Suite 350
Charlottesville, VA 22911
Phone: (434) 977-2558
cwood@mcguirewoods.com
babel@mcguirewoods.com

***Counsel for Plaintiff/Counter-Defendant***
   ***Bret Bielema***

/s/ Richard N. Watts
Richard N. Watts AR Bar 82174
Watts, Donovan, Tilley & Carson, P.A.
2120 Riverfront Dr., Suite 275
Little Rock, AR 72202
Phone: (501) 372-1406
richard.watts@wdtc.law

***Counsel for Counter-Defendant Neil Cornrich***

9