UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRET A. BIELEMA                                                                    PLAINTIFF

v.

THE RAZORBACK FOUNDATION, INC.                                         DEFENDANT

No. 5:20-CV-05104

THE RAZORBACK FOUNDATION, INC.                         COUNTERPLAINTIFF

v.

BRET A. BIELEMA and NEIL CORNRICH              COUNTERDEFENDANTS

## OPINION AND ORDER

The Razorback Foundation, Inc. ("the Foundation") filed a motion (Doc. 50) to compel

and brief (Doc. 51) in support.  Bret A. Bielema filed a response (Doc. 52) and brief (Doc. 53) in

opposition.  The Foundation filed a reply (Doc. 56) with leave of Court.  The motion will be

granted in part.

**I.      Rules Controlling Discovery**

The Federal Rules of Civil Procedure control the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  A "relevant" matter is "any matter that bears on, or that reasonably could

lead to other matters that could bear on," any party's claim or defense.  *Oppenheimer Fund, Inc.*

*v. Sanders*, 437 U.S. 340, 351 (1978).[1]  The category of matters that are relevant for discovery purposes is broader than the category of matters relevant for admissibility purposes at trial, but discovery is not a fishing expedition and some threshold showing of relevance must be made before a party will be compelled to comply with discovery requests.  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

Federal Rule of Civil Procedure 33 allows some discovery to be conducted by means of interrogatory.  A party may serve a limited number of discrete interrogatories on another party, so long as those interrogatories are within the scope of discovery set out in Rule 26, and answers (or specifically-stated objections) must be served within 30 days of service of the interrogatories.  Fed. R. Civ. P. 33(a), (b).  A party may also serve on another party requests to produce documents, electronically stored information, and tangible things, so long as the items requested are within the scope of discovery set out in Rule 26 and the requested items are described with reasonable particularity.  Fed. R. Civ. P. 34(a), (b).  A response, which may include specifically-stated objections that state whether production is being withheld on the basis of the objections, must be made within 30 days of service of the requests for production.  Fed. R. Civ. P. 34(b)(2).  Production following the response must be made either within the same period, or within a "reasonable time specified in the response."  Fed. R. Civ. P. 34(b)(2)(B).  The deadlines for response may be altered by stipulation of the parties.  Fed. R. Civ. P. 29(b).  Parties have an ongoing duty to supplement their responses to discovery.  Fed. R. Civ. P. 26(e).

---

[1] Rule 26 has been amended since *Oppenheimer Fund, Inc.* issued.  Rule 26 no longer defines scope as "any matter, not privileged, which is relevant to the subject matter involved in the pending action," but more explicitly defines scope only as unprivileged matters "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Additionally, "the scope of discovery is now expressly cabined by proportionality."  STEVEN S. GENSLER, 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY RULE 26, Westlaw (database updated February 2020).

A party who has been served with a discovery request that it believes will subject it to "annoyance, embarrassment, oppression, or undue burden or expense" may, after conferring in good faith with other parties to attempt resolution, move the Court for a protective order addressing the dispute.  Fed. R. Civ. P. 26(c).  The duty to confer in good faith requires, "at minimum, an in-person or telephone conversation with opposing counsel."  (Doc. 40, p. 1).  A party serving discovery who receives no response, an incomplete response, or a response containing only inadequate objections may move for an order to compel a response.  Fed. R. Civ. P. 37.

## II.      The Motion to Compel

This motion to compel comes early in discovery, before much more information than that found in initial disclosures has been exchanged.  The Foundation's motion explains that its first interrogatories and requests for production were served on Bielema in early October, and the parties agreed Bielema's responses would be due in mid-November.  On November 16, the Foundation received Bielema's responses, which included a number of objections and requested a method to produce responsive documents electronically.  The Foundation provided Bielema with a link to electronically provide documents the next day, but as of November 23, the date the Foundation filed its motion, Bielema had produced no documents.  The Foundation identifies this nonproduction as an inadequate response.  The Foundation additionally perceives as incomplete Bielema's responses to its interrogatories no. 1, 7, 11, 13, 14, 16, 17, and 18.  Following written correspondence regarding perceived deficiencies, counsel for the Foundation and counsel for Bielema conferred by telephone and were unable to agree to a date for production of documents or a resolution of the perceived deficiencies in Bielema's responses to interrogatories, and on November 23, the Foundation filed its motion to compel.  The Foundation's reply states Bielema produced some documents on December 2, after the motion to compel was filed, but as of

December 10 Bielema had not yet supplemented those responses to interrogatories the Foundation perceived as deficient nor produced a privilege log for information not disclosed on the basis of a privilege.

This is a breach of contract case. Bielema and the Foundation entered into a buyout agreement. Bielema claims the Foundation breached that contract by stopping its buyout payments to him without cause and by making false accusations about him despite a nondisparagement agreement. Bielema also claims the Foundation is liable to him in tort for false light invasion of privacy. The Foundation denies Bielema's material allegations and argues that by not using best efforts to find other high-paying employment, Bielema breached his obligation to mitigate damages and relieved the Foundation of its obligation to make buyout payments. The Foundation also claims Bielema breached the buyout agreement by failing to report, as required, his efforts to find new employment. The Foundation finally claims that Bielema and Counterdefendant Neil Cornrich, Bielema's agent, fraudulently induced the Foundation into entering into the buyout agreement, which includes terms allowing the Foundation to reduce or offset the amount it owed Bielema by any salary Bielema received from new employment, provided that the new salary was above a specific threshold. The Foundation alleges that Bielema and Cornrich conspired with Bill Belichick and the New England Patriots for the Patriots to hire Bielema for a salary amount under the offset threshold, knowing when Bielema and the Foundation thereafter negotiated and entered the buyout agreement that Bielema would be unable to seek new employment above the offset threshold.

This general description of the claims and defenses serves as the starting point for the Court and parties to determine the permissible scope of discovery. With respect to both interrogatories and requests for production at issue on this motion to compel, the Court does not address or rule

on arguments the parties make to one another in their correspondence but analyzes only the issues as clearly raised for the Court's consideration in the parties' briefing and discovery requests and responses themselves.  The following rulings are perhaps less specific than is ideal, but because the briefing lacks focus on identifying and analyzing the particular issues the parties want the Court to decide, general rulings are the inevitable result.  Should discovery disputes arise again, and should good faith conference fail to resolve them and the need for additional motion practice arise, the parties would better assist the Court to focus on the narrower disagreements that can be resolved on that motion, rather than on airing their grievances against one another.

### A.   Interrogatories

The Foundation's motion to compel argues that Bielema's responses and nonspecific objections to its interrogatories are inadequate, and Bielema should be compelled to fully respond to each interrogatory.  This order will quote each identified interrogatory and response as they appear in Bielema's responses (Doc. 50-3) to the Foundations interrogatories, and rule on each in turn.

> **INTERROGATORY NO. 1**:  Identify by name, home address, telephone number, and employer address and telephone number, all persons known or believed by you to have knowledge of the facts which are alleged in Bielema's Complaint or the Foundation's Answer and Counterclaim, and in your answer, indicate the particular facts of which each person is or may be knowledgeable.
>
> **RESPONSE**:
> (a) Coach Bielema objects to this discovery request to the extent it asks for the "particular facts of which person is or may be knowledgeable."  Such request exceeds that required by Rule 26(b)(1) with regard to a lay witness.
> (b) Regarding people with knowledge of relevant facts and circumstances, Coach Bielema refers the Foundation to the people identified in its Initial Disclosures and the following people who were not named therein but whose names and contact information and the subject matter of their testimony will be provided promptly by amendment:
> a.  Jen Bielema;
> b.  Jerry Kill;
> c.  Barry Lunney

     d.  Kirk Herbsreit;
     e.  Butch Jones;
     f.  Phil Fulmer;
     g.  Brian Daboll;
     h.  Ned Burke

**Ruling**:  The Foundation argues Bielema's response is deficient because it does not provide contact information or subjects about which the identified individuals are knowledgeable.  This interrogatory appears to seek information duplicative of that which Bielema is already required to provide in his Rule 26(a)(1) initial disclosures and his continuing Rule 26(e) supplements, unless Bielema believes some of these people may be individuals whose information is useful only for impeachment.  Bielema's response indicates that he intends to supplement this information.

At the time he served his responses to interrogatories, Bielema must have had some idea (even if it was not yet comprehensive) of the subject matter of the testimony of these identified individuals because he identifies them as people knowledgeable of the facts alleged in the pleadings in this lawsuit.  Furthermore, for at least some of these individuals Bielema surely had some contact information.  Jen Bielema, for example, is Bielema's wife, and it should have been no burden for him to provide contact information in his first response.  It appears Bielema already intends to provide a more complete response to this interrogatory "promptly," and he is familiar with his continuing duty to supplement under Rule 26(e), so no Court order is necessary to compel a full response.  However, Bielema identifies no compelling reason his initial response could not have included responsive information already known to him.  To that extent, he is ordered to supplement his response.

> **INTERROGATORY NO. 7**:  Identify all communications, whether orally or in writing between You and Neil Cornrich from November 1, 2017, through the present, and include in your answer, the date of each communication, the method of each communication (e.g., meeting, telephone, email, text, in person, etc.), the substance of such communication, and the person involved in each communication.

**RESPONSE**: Objection; this interrogatory is overbroad in that it seeks information about all communications between Coach Bielema and Neil Cornrich, without limitation to a particular topic, and therefore exceeds the scope of permissible discovery under the standards set forth in Fed.R.Civ.P. 26(b)(1). Coach Bielema will nonetheless produce all documents reflecting his communications with Neil Cornrich that refer or relate to the claims and defenses in this litigation.

**Ruling**: The Foundation argues Bielema's response is deficient because Bielema fails to identify the requested oral communications. The Foundation's motion to compel assumes oral communications responsive to this interrogatory occurred, and it is likely that they did. To the extent any oral communications occurred between Bielema and Cornrich relevant to claims or counterclaims in this lawsuit, and those were not somehow privileged communications, Bielema is ordered to identify them and their substance to the best of his recollection at the time of his response, and to supplement that response as appropriate.

**INTERROGATORY NO. 11**: Identify all job search activities you have undertaken since December 1, 2017, and in your response include the date of the activity; whether the activity was undertaken by You or by someone else on Your behalf; the nature of the job search activity (e.g., phone call, email, job interview); the job title, the name and address of your employer, the duties and responsibilities, and, the compensation associated with the target position; all persons with knowledge of these facts; and the Bates numbers (from your document production) of documents you believe reflect such facts and circumstances.

**RESPONSE**: Objection; the term "job search activities" is vague and ambiguous and implies incorrectly that only proactive communications and other such affirmative activities qualify as reasonable efforts to seek new employment. Subject to this objection, Coach Bielema and Neil Cornrich used their relationship with college football sportswriters and others to make clear Coach Bielema was very interested in obtaining a suitable collegiate head coach position. For example, during an interview in early 2018 that resulted in a news story, Coach Bielema explained to ESPN sportswriter Andy Staples why he wanted to find another head coach position and resume coaching college football as soon as possible. As evidenced by numerous online sports news stories, podcasts, opinion columns, and other publicly available information that was easily accessible to ADs and search firms, from the date the Final Buyout Agreement was signed until the filing date of this lawsuit, it was common knowledge among ADs and search firms that Coach Bielema wanted to land another head coach position at a DI school and was available to assume such a role. Coach Bielema's efforts to position himself in the most favorable light to enhance his candidacy for a D1 head coach position included

7

the following:

- Attending the American Football Coaches (AFCA) Annual Convention in January 2018 and networking with the other attendees who were among the thousands of people in attendance.

- Three days after Coach Bielema was fired, Mr. Cornrich sent him to e-mails that included media accounts about Nebraska's head coach search which mentioned Coach Bielema's name as a potential candidate. Coach Bielema promptly contacted Tom Osborne, who had been the head football coach at the University of Nebraska for many years and later served as Nebraska's AD. Coach Bielema's specific purpose in reaching out to Mr. Osborne was to express his interest in the vacant head coach position at Nebraska. A few days later, Nebraska announced that Scott Frost would become the new head football coach at his alma mater.

- Within a few days of being fired, Coach Bielema placed a phone call to Jean Boyd, Deputy AD at Arizona State ("ASU") and shared with him his interest in ASU's vacant head coach position. On December 3, 2017, ASU announced that Herm Edwards had been hired as the school's new head football coach.

- Between January 5-8, 2018, Mr. Cornrich corresponded with Glenn Sugiyama of DHR International (a well-known search firm) to make sure that he was aware of Coach Bielema's interest in the vacant head coach position at the University of Arizona. A week after this e-mail exchange, Kevin Sumlin was named as Arizona's new head football coach.

- On April 9, 2018, Mr. Cornrich sent an e-mail to Coach Bielema with a news story about the Kansas State University AD eventually replacing head coach Bill Snyder, which mentioned Coach Bielema as a possible successor. When KSU eventually announced the retirement of Coach Snyder on December 2, 2018, Coach Bielema placed a phone call to Jerry Kill, a friend of his who had been the Associate AD at Kansas State University in 2016 and asked him to convey to his contacts in the KSU Athletics Department Coach Bielema's interest in the position. Jerry Kill agreed to do so. Without seriously considering any other candidates, the KSU AD quickly settled on the head football coach he had worked with at North Dakota and announced his appointment as KSU's new head coach on December 10, 2018 – only eight days after the announcement of Coach Snyder's retirement.

- On April 10, 2018, Mr. Cornrich sent an e-mail to Coach Bielema with a news story about the next coaches to join the Alliance of American Football, mentioning Coach Bielema as one to watch.

- On July 9, 2018, Mr. Cornrich sent an e-mail to Coach Bielema regarding potential head coach openings in the near future at Kansas, Kansas State, Iowa, Illinois, and Colorado.

- On September 17, 2018, Mr. Cornrich forwarded an e-mail to Coach Bielema from a prominent search firm, with whom Mr. Cornrich had spoken about Coach Bielema's interest in potential college head coach openings.

- On November 8, 2018, Mr. Cornrich sent an e-mail to Coach Bielema with a list of potential head coach openings in the NFL.

- On November 11, 2018, Mr. Cornrich sent an e-mail to Coach Bielema with a

news story concerning what Jeff Long, the AD at Kansas, was looking for in head coach candidates. (Subsequent events revealed that Les Miles was the only candidate who was seriously considered for that position.)

- On November 14, 2018, Mr. Cornrich sent an e-mail to Coach Bielema with an attached voice message from Dan Graziano of ESPN, with Mr. Graziano confirming that Mr. Cornrich had mentioned Coach Bielema on the record as a candidate for potential college head coach openings.

Coach Bielema's efforts to improve his marketability paid off during the 2019-20 "coaching carousel." Representatives of several universities contacted him during this time frame about his interest in a head coach position. Coach Bielema promptly and enthusiastically engaged with each and every one of them and expressed his interest in filling their vacant head coach position. Those schools included Florida Atlantic University, Boston College, the University of South Florida, Baylor, Rutgers, Michigan State, and Colorado. Coach Bielema was a finalist for the head coach positions at Rutgers and Colorado and was interviewed by the Athletics Directors at both those schools as part of the selection process. Coach Bielema was one of two or three finalists at both Rutgers and Colorado. At the end of the selection process, both Rutgers and Colorado selected another candidate.[1]

[1] The answer to this Interrogatory is incomplete in that it does not include communications between Coach Bielema and a D1 university that are subject to a confidentiality agreement. Coach Bielema will promptly supplement this answer to include that information as soon as he has obtained permission form the university which sought and obtained his agreement not to disclose their communications.

**Ruling**: The Foundation argues Bielema's response is deficient because Bielema does not provide the names of the individuals at each organization who have knowledge of these communications and because Bielema does not provide any information about the university with which he was in communication at the time of his response. As an initial matter, "job search activities" is neither vague nor ambiguous in the context of this litigation. Bielema is aware of those actions he took before and during this litigation that he believes satisfy his contractual obligation to mitigate damages. Bielema is also aware of any other actions he has taken that he considers to be job search activities.

With respect to the Foundation's perceived deficiencies, to the extent Bielema knows the names of individuals who might have knowledge of the facts disclosed in his response, he must

9

identify those individuals.  For example, the email Cornrich forwarded from September 17, 2018, likely included the name of at least one individual at the "prominent search firm" with which he was communicating.  Bielema gives no reason that he cannot provide that name, or others of which he is aware.

With respect to the footnoted communications with individuals from the undisclosed university, Bielema's unilateral decision not to disclose that information finds no support in the Rules of Civil Procedure.  Rule 26(c) allows Bielema to seek a protective order from this Court if he believes the information should not be disclosed at this time.  Despite Bielema's attorneys' apparent familiarity with the Rules, Bielema did not move for a protective order particular to this information, and therefore has given no legitimate reason on this motion for his failure to disclose that information in discovery.[2]

Apart from the two anemic complaints of deficiency, the Foundation otherwise appears satisfied with the response to this interrogatory.  So is the Court, subject to Bielema's continuing duty to supplement his response should he recall anything further or obtain information not yet disclosed to the Foundation.  Beyond identifying in some fashion those individuals who he recalls communicating with as part of his job search activities or whose names appear on the identified emails Cornrich forwarded to him, Bielema is not obligated to affirmatively and independently discover each individual who might have knowledge of the facts relevant to this case so that he can then respond to the Foundation.  That requirement would be unduly burdensome and disproportionate to the needs of this case.

> **INTERROGATORY NO. 13**:  Identify all communications, whether orally or in writing, between You (or something acting on Your behalf) and the New England Patriots from November 1, 2017, through the present, and include in your answer, the date of each communication, the method of each communication (e.g., meeting,

---

[2] The Court finds good cause to enter a protective order and will do so separately.

telephone, email, text, in person, etc.), the substance of such communication, and the persons involved in each communication.

**RESPONSE**: Objection; this interrogatory is overbroad in that it seeks information about *all* communications between Coach Bielema and the New England Patriots, without limitation to a particular topic, and therefore exceeds the scope of permissible discovery under the standards in <u>Fed.R.Civ.P. 26(b)(1)</u>. Furthermore, as stated, this interrogatory encompass information that the New England Patriots would consider to be highly confidential. Subject to the entry of an appropriate Protective Order, Coach Bielema will produce all documents reflecting his communications with the New England Patriots that refer or relate to the issues in this litigation.

**Ruling**: The Foundation argues Bielema's response is deficient because "[i]n response to Interrogatory No. 13, Bielema fails to identify the requested oral communications." (Doc. 51, p. 7). In its reply brief, the Foundation notes that Bielema initially objected on the basis of breadth, and not burden. This attempt to split hairs over differences between breadth and burden in this context fails. The Foundation asks for copious information concerning all communications, written or oral, with the New England Patriots.[3] This information is unbounded to its relevance to this lawsuit. Fully responding to such an overbroad interrogatory would be so time and resource intensive that it would be unduly burdensome and disproportionate to the needs of this case.

The Foundation's argument in its reply brief that Bielema "also did not propose to narrow the request to something he deems workable" does not save this interrogatory. It is not Bielema's responsibility to draft the Foundation's discovery requests. Furthermore, Bielema's response communicates that he intends to disclose responsive documents subject to an appropriate protective order (though again, Bielema did not ask the Court for a protective order after receiving

---

[3] The Court assumes for purposes of this ruling that the Foundation's interrogatory intended "the New England Patriots" to refer only to the business entity that employed Bielema, and perhaps to encompass those entities controlling officers. If instead the Foundation intended this phrase to encompass the team of players on the roster, coaches on the staff, or any other employees of the Kraft Group, requesting disclosure of all communications with these individuals, written or oral, is even more clearly overbroad.

this interrogatory).  If the Foundation believes after Bielema's supplement that there is additional discoverable information, it may be appropriate to attempt to serve Bielema with another interrogatory that falls within the scope of Rule 26(b).

**INTERROGATORY NO. 14**:  State all facts and circumstances to support your contention in Paragraph 18 of the Complaint that the Foundation declared Bielema was in breach of the Release Agreement as a pretext to stop making monthly payments, and in your response, identify all persons with knowledge of these facts; and the Bates numbers (from your document production) of documents you believe reflect such facts and circumstances.

**RESPONSE**:  Coach Bielema objects to this interrogatory to the extent it is intended to confine Coach Bielema to a complete narrative statement of facts before an opportunity to develop them in discovery under the deadlines set out in the Final Scheduling Order.  Coach Bielema therefore requests that this response be considered tentative, and subject to elaboration, until the discovery deadline. Subject to this objection, Coach Bielema pleaded this contention for substantially these reasons:

For the reasons stated in response to Interrogatory Number 6, which are incorporated herein as if set forth word for word, the Foundation's pre-litigation position with respect to Coach Bielema's alleged breach of the Final Buyout Agreement objectively indicates, to a reasonable person familiar with the elite football coaching industry, that the Foundation has acted either in bad faith or under such a distorted and unsupportable understanding of hiring and compensation practices in the industry that bad faith should be presumed more likely.

As stated in the incorporated response to Interrogatory Number 6, Coach Bielema understood that by taking a position with Patriots head coach Bill Belichick he would maximize his chance of returning quickly to a DI head coach position or obtaining a multi-year NFL head coach contract.  That would have maximized the Foundation's offset under the Final Buyout Agreement.  Coach Bielema, therefore, understood that he was working both in the Foundation's interests and his own interests by taking the Patriots position, and he reasonably assumed the Foundation would agree – an assumption that was validated by Scott Varady's enthusiastic well-wishing in response to learning that Coach Bielema had secured a position with the Patriots.  Further, contrary to the Foundation's assertions, any reasonable person in Coach Bielema's position would have expected a DI head coach contract or NFL head coach contract to further his own financial interests and the interests of the Foundation.

Because there are relatively few DI head coach openings in any given season, and many potential candidates for every opening (including candidates with an inside track), no one in Coach Bielema's position would have been confident he could pass up an opportunity that he was offered with the Patriots and be assured an equivalent or better opportunity would be offered to him soon afterward. Moreover, no one in Coach Bielema's position would have understood the Final

Buyout Agreement required him to *successfully obtain* a head coach position within three years.  After all, even the most attractive head coach candidate on the market can be cut from the short list of candidates by internal politics at an institution, fan or donor pressure, or an AD's preference simply to work with a coach who with whom he had a prior relationship.  The Foundation's decision to allege that Coach Bielema broke the Final Buyout Agreement by doing what anyone in the industry would have understood that Agreement to require, and to call him a fraud for failing to achieve what no one in the industry would have thought he could accomplish – much less guarantee – suggests that its stated reasons for refusing to pay the contractual monthly buyout payments were completely pretextual.

Bolstering the inference of pretext, the Foundation jumped at the opportunity to invoke an expressly waivable provision in Coach Bielema's Patriots contract – a provision that in practice was never applied to prevent a member of the Patriot's coaching staff from leaving to take a DI head coach position – and declare a breach and fraud with no inquiry of the Patriots.  Further, several of the assertions in the Foundation's Demand Letter about Coach Bielema have already proved to be false, including for instance the assertions that Coach Bielema had made statements to others that he had no intention of returning to a collegiate head coach position.  It is now quite clear that the Foundation made no deliberate effort to ascertain and be guided by the truth about Coach Bielema's conduct as it decided whether to continue paying him.  If the Foundation had conducted even basic internet research for example it would have found a December 2016 article by Kevin Duffy reporting that assistant coach salaries with the Patriots were as low as $15,000 yet working for Coach Belichick for relatively low pay was seen in the industry as one of the most desirable and career-enhancing positions in the lucrative business of football.[2]  Without repeating every argument made in other briefing, Coach Bielema also suggests that the Foundation's absurd and illogical interpretation of the Final Buyout Agreement strays far enough from the facts to be fully consistent with a pretextual motive and bad faith.

Persons with knowledge of these facts and practices include every Athletic Director and DI head coach in college football, many of whom are named in the Initial Disclosures.

Subject to this objection, Coach Bielema will produce the documents requested in this interrogatory.

[2] https://www.masslive.com/patriots/2016/12/bill_belichick_patriots_coachi.html

**Ruling**:  The Foundation argues Bielema's response is deficient because after identifying "every Athletic Director and DI head coach in college football" as individuals with knowledge of the circumstances and practices surrounding the hiring of college football coaches, Bielema "fails to identify each person so identified by name and address, as requested in the Foundation's Definitions and Instructions."  (Doc. 51, p. 7).  Bielema has disclosed some of these individuals in

his Rule 26(a) disclosures and should supplement those disclosures with contact information to the extent he has or can obtain that information (particularly if he intends to rely on any of these witnesses for an expert opinion).  To the extent he otherwise had particular individuals in mind when identifying athletic directors and head coaches as a group, he must supplement his response by identifying those particular individuals.  Although it may have been somewhat burdensome to gather information about the remaining athletic directors and head coaches, information equally available to both parties and that likely will have no use in this litigation, Bielema's response brief indicates he has already compiled this information.  Because he chose to name every athletic director and head coach as a person with knowledge of these facts, Bielema is ordered to supplement his interrogatory response.

> **INTERROGATORY NO. 16**:  Identify all communications between You, or anyone acting on your behalf, to any third parties, including members of the press, from November 24, 2017 to present regarding the subject matter of this Action, including but not limited to Your job search efforts, Your interest in a college coaching position, Your compensation, or the Foundation's buyout obligation.

> **RESPONSE**:  Regarding contacts with "the press," Coach Bielema objects to this discovery request to the extent it calls for the production or disclosure of information Coach Bielema further objects to this discovery request to the extent it calls for the production or disclosure of information obtained in anticipation of litigation or which would otherwise be protected from discovery pursuant to the attorney-client privilege and attorney work product doctrine.  Neither Coach Bielema nor his legal counsel have made any public statements about this litigation. Nor have they previewed any pleadings to the media, as publicly alleged by the Foundation's counsel in a statement issued to 40/29 News following the filing of this action.  Regarding any contacts Coach Bielema or his representatives may have had with journalists either before or after this litigation was commenced, we believe this interrogatory is objectionable in that it seeks information that is not discoverable under the standards set forth in <u>Fed.R.Civ.P. 26(b)(1)</u>.

**Ruling**:  The Foundation argues Bielema's response is deficient because "Bielema fails to provide any response and objects on privilege and other grounds."  (Doc. 51, p. 7).  It is not immediately apparent from Bielema's discovery response or response brief why he believes

communication with the press regarding the subject matter of this litigation is outside the scope of discovery.  If Bielema has no responsive communications to identify, he is ordered to supplement his response to state as much.  If Bielema has responsive communications that he is withholding on the basis of privilege, he is ordered to supplement his response to state as much, in a manner that complies with Rule 26(b)(5)(A).  If he has some responsive communications ready for production, but not all, he is ordered to provide what he has and supplement within a reasonable time thereafter.

> **INTERROGATORY NO. 17**:  Separately itemize the damages You seek in this Action.  For each type of damage alleged, state the dollar amount associated with such damage; set forth the methodology or formula used to calculate such damage; identify all persons with knowledge of such damage; and identify the Bates numbers (from your document production) of all documents reflecting such damages.

> **RESPONSE**:
> (a) Compensatory damages for breach of the promise to pay in the Final Buyout Agreement for the balance of the 22 unpaid monthly installments due through the end of the term of the Final Buyout Agreement, a total of $7,058,333.33, plus accumulated statutory interest on each missed payment from the date it became due.
> (b) With respect to the Breach of Non-Disparagement Promise in Final Buyout Agreement and False Light Invasion of Privacy Claims, Coach Bielema claims the following additional damages caused by the publications alleged in the Amended Complaint, in an uncertain amount to be determined by the trier of fact:
> (c) Compensation Coach Bielema would have received under and DI or NFL head coach position in the 2018 or 2019 coaching carousels that Coach Bielema lost because of the publications.
> (d) Compensation for Coach Bielema's lost earning potential in the elite football Coaching industry caused by those publications.
> (e) Punitive damages in an amount to be determined at trial by a jury empaneled to try the issues of fact in this case, but not less than twice the amount of compensatory damages under the tort claims;
> (e) Pre- and post-judgment interest;
> (f) Reasonable attorney fees;
> (g) His costs and expenses in this action, and costs of collection.

**Ruling**: The Foundation argues Bielema's response is inadequate because he "fails to state a dollar amount associated with each category of damages and fails to state persons with

knowledge of such damages as requested." (Doc. 51, p. 7). By implication, the response is otherwise satisfactory to the Foundation. The Court agrees Bielema's response is inadequate insofar as he does not identify persons with knowledge of his damages, and he is ordered to supplement his response with that information. With respect to dollar amounts, because it is still early in discovery Bielema is ordered to supplement his response as damages become clearer during the course of discovery.

> **INTERROGATORY NO. 18**: Identify all reporters or media outlets with whom You verbally discussed Your job search efforts, Your interest in a college coaching position, Your compensation, or the Foundation's buyout obligation (even on an off-the-record background basis), from November 1, 2017, through the present, and include in your answer, the date of each communication, the method of each communication (e.g., meeting, telephone, email, text, in person, etc.), the substance of such communication, the name of the reporter(s)/media outlet(s) involved in each communication, and the work telephone number and address of each reporter(s)/media outlet(s).

> **RESPONSE**: Coach Bielema objects to this interrogatory to the extent it calls for the production or disclosure of information under the standards set forth in Fed.R.Civ.P. 26(b)(1). Coach Bielema further objects to this discovery request to the extent it calls for the production or disclosure of information obtained in anticipation of litigation or which would otherwise be protected from discovery pursuant to the attorney-client privilege and attorney work product doctrine. Neither Coach Bielema nor his legal counsel have made any public statements about this litigation. Nor have they previewed any pleadings to the media, as publicly alleged by the Foundation's counsel in a statement issued to 40/29 News following the filing of this action. Regarding any contacts Coach Bielema's counsel may have had with media representatives either before or after this litigation was commenced, we believe this interrogatory is objectionable in that it seeks information that is not discoverable under the standards set forth in Fed.R.Civ.P. 26(b)(1). Subject to these objections, Coach Bielema does not recall having any verbal conversations about the above-mentioned topics with any reporters, sportswriters, or journalists other than expressing his interest in returning to a head coach position college in football in conversations he had with Andy Staples and Kirk Herbstreit, both of whom work for ESPN. The conversation with Andy Staples was an interview for the story he wrote that is mentioned in response to Interrogatory No. 11. The conversation with Kirk Herbstreit was around the time Coach Bielema's name surfaced as a candidate for several head coach positions. Coach Bielema doesn't recall the specifics of either of these conversations, but he remembers from what they talked about that both Andy Staples and Kirk Herbstreit knew he was very interested in obtaining a head coach position at a Power Five

school.

**Ruling**:  The Foundation argues Bielema's response is deficient because "Bielema fails to provide any response and objects on privilege and other grounds."  (Doc. 51, p. 7).  This claim is inaccurate.  Bielema's response discloses oral communication with Andy Staples and Kirk Herbstreit.  Otherwise, as with the Foundation's interrogatory 16, it is not immediately apparent from Bielema's discovery response or response brief why he believes communication with the press regarding the subject matter of this litigation is outside the scope of discovery.  If Bielema has no other responsive communications to identify, he is ordered to supplement his response to state as much.  If he has responsive communications that he is withholding on the basis of privilege, he is ordered to supplement his response to state as much, in a manner that complies with Rule 26(b)(5)(A).  If he has some additional responsive communications ready for production, but not all, he is ordered to provide what he has and supplement within a reasonable time thereafter.

### B.      Requests for Production

The Foundation's motion to compel argues that as of the filing date of the motion, Bielema had produced no documents, and as of the date of the reply, Bielema had produced 2,590 pages. The Foundation argues that to the extent any documents are withheld on the basis of privilege, Bielema has not complied with Rule 26(b)(5)(A).  The Foundation also argues that Bielema's responses and production remain deficient even despite the eventual production because Bielema has not identified under Rule 34(b)(2)(C) whether he is withholding any documents based on his objections to the Foundation's requests for production (and if so, that Bielema's objections are an insufficient basis for withholding production).  The Court has reviewed the Foundation's requests for production and Bielema's responses.  (Doc. 50-3, pp. 21–35).  This discovery is best addressed in groups, beginning with those that are not at issue on this motion to compel.

### 1.      Requests for Production 37, 44–49, and 51

In response to requests for production 37 and 44, Bielema responded that has no awareness of any responsive documents.  In response to requests for production 45, 46, 47, 48, and 49, which request documents related to Bielema's expert witnesses, Bielema expressed an intent to retain a testifying expert witness and stated that he had not yet done so, then agreed to produce responsive documents on or before the deadlines set forth in the scheduling order.[4]  In response to request for production 51, Bielema identified responsive documents as already having been produced to the Foundation.  The Foundation's briefing identifies no problem with the responses to these requests, and they need not be addressed further.

### 2.      Requests for Production 1–7, 9–10, 12–17, 19–20, 22–24, 28–34, 36, 39, 41, 50, and 52

In response to requests for production 4, 13, 14, 19, 20, 22, 24, 28, 29, 32, 34, 36, 41, 50, and 52, Bielema agreed to produce responsive documents, but did not specify a reasonable date for production as required by Rule 34(b)(2)(B).  In response to requests for production 1, 2, 3, 5, 6, 7, 9, 10, 12, and 39, Bielema agreed to produce any responsive documents that were not protected by the work product doctrine, but did not specify a reasonable date for production as required by Rule 34(b)(2)(B) and did not comply with Rule 26(b)(5)(A) with respect to any documents being withheld on the basis of the work product doctrine.[5]  In response to requests for production 30, 31, and 33, Bielema agreed to produce responsive documents following entry of a

---

[4] These are presumably the expert witness deadlines.

[5] Bielema's briefing on the motion to compel identifies some of these requests for production as overbroad, though he did not object on that basis in his responses to the Foundation. Nor is it clear in his briefing that he is attempting to object to production now.  Presumably Bielema still intends to produce (or has already produced) responsive documents as agreed in his response to the Foundation, though of course when the scope of a request is broad but still within the bounds of Rule 26(b), the reasonable time for production under Rule 34(b)(2)(B) may be longer than it would be for a more narrowly drawn request.

18

protective order, though he did not move the Court for a protective order prior to his deadline to produce documents and did not specify a reasonable date for production as required by Rule 34(b)(2)(B).  In response to requests for production 15, 16, 17, and 23, Bielema objected to the scope of the requests but agreed to produce certain responsive documents following entry of a protective order.  Again, he neither moved for a protective order nor specified a reasonable date for production, though in these responses he indicated he was withholding documents and gave some reason for the withholding: nonparties to this litigation intended those documents to be confidential and likely have a reasonable expectation Bielema will not freely disclose them. Bielema is ordered to supplement his responses to all of these requests for production, identifying where appropriate and in a manner that complies with Rule 26(b)(5)(A) whether he is withholding any documents on the basis of the work product doctrine, and to produce any other responsive documents in his possession or to identify a reasonable date for production of any responsive documents if he has not already produced them or has not yet been able to take possession of documents otherwise under his control.

### 3.   Requests for Production 8, 11, 21, 25–26, and 35

In his response to requests for production 8, 11, 21, 25, 26, and 35, Bielema objected that the requests were overly broad, or ambiguous, or unduly burdensome, or generally outside the scope of discovery defined in Rule 26(b), and for most of these, that the requests appeared to be "contention-type" document requests.  Bielema did not identify whether any responsive documents were being withheld, as required by Rule 34(b)(2)(C).  It is possible that some responsive documents may be so far from relevant to this lawsuit that requesting them would be outside of the scope of discovery.  For example, if Bielema kept a journal during this period of his attempts to pick up a new hobby, or if he maintained a planner for a family vacation, or similar, it is difficult

to say that document would be relevant to matters that bear on a party's claims or defenses, even though it would be responsive to request for production 8.  And Bielema is correct that requests for production should be reasonably particular—that is, that requests should be clear enough that a party should not have to contemplate or speculate whether documents in his possession are responsive.  But Bielema also made several allegations of fact in his complaint, and discovery is the means by which the Foundation may request from Bielema any evidence he has that will demonstrate those facts.  The parties have elsewhere briefed the Court on the requirements of Rule 11 (that dispute will be addressed by separate order), and each is aware that Rule 11 requires it to make reasonable inquiry into whether the factual contentions it makes have evidentiary support (or are likely to have support following discovery).

If nothing else, it should be clear to Bielema that the Foundation is requesting the results of Bielema's reasonable inquiry into the factual contentions in his complaint, identified by paragraph by the Foundation in its requests for production.  Bielema need not speculate or contemplate whether those documents could support his claims or the Foundation's defenses—he need only produce the documents.  Without a more particular objection to each request, or production of some documents by Bielema that would enable the Foundation to refine its complaint about the response, or a statement that particular documents are withheld, the Court cannot otherwise readily rule on objections pertaining to scope.  Bielema is ordered to supplement his responses to these requests for production and to produce any other responsive documents or identify a reasonable date for production of any responsive documents if he has not already produced them.

### 4.    Requests for Production 27, 38, 40, and 42

In response to requests for production 27 and 40, Bielema objected to the scope of the

request and raised attorney-client privilege and the work product doctrine.  Bielema also denied

that he or his attorney made public statements about this litigation or reviewed pleadings to the

media.  Bielema further denied recollection of verbal conversations about matters at issue in this

litigation with members of the media, other than expressing his interest in returning to a head coach

position to Andy Staples and Kirk Herbstreit.  The Foundation correctly points out that Bielema's

response does not state whether Bielema is withholding responsive documents, as required by Rule

34(b)(2)(C), and does not identify any communications withheld on the basis of attorney-client

privilege or work product doctrine, as required by Rule 26(b)(5)(A).  Furthermore, Bielema's

response focuses on "verbal conversations" and "public statements."  Unless they are protected by

some legally-recognized privilege, private statements are subject to discovery no less than public

statements, and whether those conversations are verbal, written, or electronic makes no difference.

Bielema is ordered to supplement his response to cure these deficiencies.[6]

In response to request for production 38, Bielema objects to scope.  The objection is

appropriate.  Aspects of Bielema's relationship with Cornrich are certainly going to bear on claims

or defenses in this lawsuit, but it is not apparent from the Foundation's pleadings that every single

communication between the two parties is relevant.  However, the Foundation's contention is that

Bielema and Cornrich essentially conspired to fraudulently induce the Foundation into this

contract, and inquiry into the fundamental nature of Bielema's business relationship with Cornrich,

and the manner in which the two made agreements and in which Cornrich was paid for services to

---

[6] Bielema's response brief indicates that he has conducted a search of his electronic documents for responsive documents, and that it has been somewhat burdensome.  It is unclear at this point whether the fruits of that search were part of Bielema's post-motion production to the Foundation, or whether responsive documents continue to be withheld.  Without a supplemental response, the Court cannot address Bielema's concern that discovery into his communication with the media is a tactical effort by the Foundation to convert Bielema's attorney into a necessary witness in this litigation.

Bielema appears relevant.  Though it asks generally for all communications, this request for production specifically identifies letters of engagement, contracts, agreements, and invoices. Bielema is ordered to supplement his response either by producing these categories of documents (and documents of a similar kind) or identifying those documents he is withholding pursuant to Rules 34(b)(2)(C) or 26(b)(5)(A), as appropriate.

In response to request for production 42, Bielema objects on the basis of undue burden. The request reads, in full: "Produce copies of any posts or communications through any social media accounts or online message boards related to your employment, your compensation, your job search activities, or your coaching aspirations and interests (or lack thereof) in any coaching position or other career opportunity from November 24, 2017 through the present."  (Doc. 50-3, p. 32).  Bielema's scope objection notes that, as phrased, this would require him to produce any responsive posts and comments by any commenter on the Internet.  That would, indeed, be an undue burden.  Bielema must instead produce only those responsive posts or communications authored, approved, or authorized by him, and is ordered to supplement his response accordingly.

### 5.    Requests for Production 18 and 43

In response to request for production 18, Bielema objected to the scope of the request but agreed to produce responsive documents referring or relating to the claims and defenses in this lawsuit.  Bielema's scope objection here may be appropriate.  Cornrich acted as Bielema's agent, and it is certainly possible that they had many communications regarding matters outside the scope of discovery in this lawsuit.  However, Bielema did not state whether he was withholding otherwise responsive documents on the basis of his scope objection, as required by Rule 34(b)(2)(C), and he is ordered to supplement his response.

In response to request for production 43, Bielema's scope objection is also appropriate.

22

The Foundation asks for production of documents related to any civil lawsuit or administrative appeal in which Bielema has been a named party.  While many of the Foundation's requests for production, as written, are indeed broad, the relevance of at least some subcategory of responsive documents is apparent.  Bielema's responses in which he objects but agrees to produce some documents make this clear, and it is in part his failure to state whether he is withholding responsive documents that precludes the Court from fully addressing his scope objections to those requests.  For this request, however, the Foundation entirely fails to meet its threshold burden to show the request has any relevance to the claims or defenses in this lawsuit.  No response will be compelled.

### C.      Attorney's Fees

Although Rules 26 and 37 allow sanctions, including attorney's fees, to be assessed against parties responsible for noncompliance with the Rules, the Court will not sanction either party on this motion.  Rather, all parties to this litigation and their counsel are reminded to heed Rule 1's admonishment that the Rules be "construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added).  Litigation is not a game, but the deficiencies in discovery requests and responses, and even the briefing on this motion, seem due in part to the parties' treatment of discovery as an opportunity for gamesmanship instead of as a means to prepare this case for fair trial on what appear to be relatively straightforward legal claims.

## III.   Conclusion

IT IS THEREFORE ORDERED that the motion to compel (Doc. 50) is GRANTED IN PART as stated herein.

IT IS SO ORDERED this 6th day of January, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE