**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

BRET A. BIELEMA                                                        PLAINTIFF

v.                                        **5:20-cv-05104-PKH**

THE RAZORBACK FOUNDATION, INC.                              DEFENDANT

---

THE RAZORBACK FOUNDATION, INC.                     COUNTER-PLAINTIFF

V.

BRET A. BIELEMA and NEIL CORNRICH              COUNTER-DEFENDANTS

### DEFENDANT/COUNTER-PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL

Defendant/Counter-Plaintiff, The Razorback Foundation, Inc. (the "**Foundation**"), by its attorneys, submits the following Brief in Support of its Motion to Compel Compliance with the Subpoenas *Duces Tecum* it served on Dennis Dodd.

## I.    FACTUAL BACKGROUND

### A.  The Underlying Litigation

The Foundation and Bielema entered into the Release and Waiver Agreement (the "Release Agreement") on January 30, 2018, under which the Foundation agreed to provide buyout payments to Bielema and Bielema agreed to mitigate the Foundation's liability by using his best efforts to find other employment where he would maximize his earning potential.  When Bielema failed to satisfy his mitigation obligations, the Foundation was relieved of its obligations under the Release Agreement and ceased making the buyout payments.

On June 12, 2020, Bielema filed this lawsuit, asserting that the Foundation had breached the Release Agreement.  On September 3, 2020, the Foundation filed a Counterclaim against

FEC/44844.0001/8163728.1-1/15/21

Bielema and Cornrich claiming that Bielema breached his mitigation obligations under the Release Agreement and that Bielema and Cornrich fraudulently induced the Foundation to enter into the Release Agreement by falsely representing that the "plan" was to rehabilitate Bielema with the New England Patriots for a short time and then get him a major coaching position that would reduce or eliminate the Foundation's buyout obligations.

Bielema's contemporaneous representations to third parties about his mitigation efforts (or lack thereof) is critical to proving the Foundation's breach-of-contract and fraud claims. Additionally, the manner in which Bielema, and his prospects and intentions of returning to college football, were portrayed in the press prior to October and November 2019 articles that are the subject of Bielema's false light claim against the Foundation are relevant to the Foundation's defenses and Bielema's claim for damages. *See* Doc. No. 19 at ¶¶ 107-111 & 144-148.

Dennis Dodd is a sportswriter who authored a CBS Sports article in July 2018 entitled, "Bret Bielema is enjoying the NFL so much, he may never go back to college football." In the article, Dodd wrote that Bielema "might not be returning to college football" and the chances of Bielema "go[ing] back to college football at all appears to be a long shot[.]"[1] Bielema references Dodd's article in his Amended Complaint and states that "Coach Bielema said nothing to Mr. Dodd – on or off the record – to suggest he 'had no intention of returning to college football.' All Coach Bielema said to Mr. Dodd was that he was enjoying coaching in the NFL." Doc. No. 19 ¶ 134. Bielema also identifies Dodd in his initial disclosures as a person with knowledge. The documents requested in the Subpoena will show Bielema's interest (if any) in obtaining a college coaching position, whether he made any representations to third parties about returning to college

---

[1]     Dennis Dodd, CBS Sports, *Bret Bielema is enjoying the NFL so much, he may never go back to college football*, available at https://www.cbssports.com/college-football/news/bret-bielema-is-enjoying-the-nfl-so-much-he-may-never-go-back-to-college-football/, attached hereto as Exhibit G.

FEC/44844.0001/8163728.1-1/15/21

coaching. And whether he made any representation to third parties about the steps he was taking to pursue such a position.

## B. The Subpoena and Efforts to Meet and Confer

A true and accurate copy of the Subpoena is attached hereto as Exhibit A. The Subpoena requests documents and communications with Bret Bielema or anyone acting on his behalf, documents and communications regarding Bret Bielema, and documents and communications regarding Dodd's July 3, 2018 article about Bielema. *See* Ex. A. The Subpoena was personally served on Dennis Dodd on November 13, 2020. *See* Affidavit of Service, attached hereto as Exhibit B. The Subpoena required production of the requested documents on or before November 30, 2020. *See* Ex. A.

On November 25, 2020, Dodd's counsel served objections. *See* Ex. C. The objections consisted almost entirely of boilerplate general objections, and Dodd appeared to primarily object on the basis of news reporting or reporter's privileges. The Foundation responded by letter dated December 7, 2020, asserting that the Subpoena was proper, Dodd was properly served, and Dodd's blanket objections were improper. The Foundation also requested a privilege log for any documents being withheld on the basis of any privilege. *See* Ex. D. On December 15, 2020, Dodd's counsel responded standing on his previous objections and refusing to provide a privilege log. *See* Ex. E.

On December 18, 2020, counsel for the Foundation and counsel for Dodd conferred by telephone. On that call, Dodd's counsel again asserted that Dodd had not been properly served and stood on his previously asserted objections, including reporter's privilege. Notwithstanding his objections, Dodd's counsel stated that Dodd did not have any documents that he believed were relevant to the lawsuit. Notably, however, he did not state that he did not have any documents that

were responsive to the Subpoena. In response, the Foundation offered to agree to suspend Mr. Dodd's compliance with the Subpoena in exchange for a signed declaration agreeing that if Dodd decided in the future to voluntarily participate in the case, he would provide all documents responsive to the Subpoena. On December 21, 2020, counsel for the Foundation emailed Dodd's counsel a draft declaration for his consideration. The Foundation also provided a revised affidavit of service, confirming that Dodd was properly served. The Foundation requested a response by January 6, 2021.

As of the date of this filing (and more than two months after the Subpoena was served on Dodd), Mr. Dodd's counsel has not responded to the Foundation's latest email and has failed to produce documents in response to the Subpoena. Pursuant to Local Rule 7.2(g) and the Court's Final Scheduling Order (Doc. No. 40), counsel for the Foundation certifies that they have conferred by telephone and email with Dodd's counsel in a good-faith effort to resolve the issues raised in the instant motion and were unable to resolve the disagreement without the intervention of the Court.

## II.    **LAW & ARGUMENT**

### A.  **Legal Standard**

Pursuant to Rule 45, the serving party may move for an order compelling production or inspection. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Two Rivers Fin. Grp., Inc. v. Ralston*, No. 311CV00152CRWCFB, 2012 WL 13018842, at \*3 (S.D. Iowa July 9, 2012) (granting motion to compel where third party refused to answer subpoena and explaining that third-party "waived any objections to the subpoena duces tecum by failing to timely file a Motion to Quash" or and not moving for entry of protective order); *SPV-LS, LLC v. Transamerica Life Ins. Co.*, No. 4:14-CV-04092-LLP, 2016 WL 4257337, at \*4-5 (D.S.D. Aug. 11, 2016) (ordering third party to either

produce subpoenaed documents or submit a privilege log where third party refused to comply with subpoena by simply claiming attorney-client privilege).  Indeed, courts have announced that third parties "may not simply ignore a valid subpoena duces tecum." *Two Rivers Fin. Grp., Inc*., 2012 WL 13018842, at *3.

The burden is on the party resisting a subpoena to show that the subpoena is oppressive, and the burden is a heavy one. *See Plant Genetic Sys., N.V. v. Northrup King Co.*, 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998) (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986)); *see also StoneEagle Services, Inc. v. UMB Bank, N.A.*, No. 4:15-mc-0904-NKL, 2015 WL 2452926, at *6 (W.D. Mo. May 22, 2015) ("Given that the Federal Rules of Civil Procedure allow for broad discovery, the burden is typically on the party resisting discovery to explain why discovery should be limited." (citations omitted)).   Dodd has failed to meet that burden here.

### B.  This Court May Decide This Dispute

As a threshold matter, this Court may decide the Motion to Compel.  Many courts have held that the place of compliance may be more than 100 miles away if the documents are requested to be produced by email or mail, as they are here.  *See, e.g.*, *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (enforcing subpoena and explaining that "the 100 mile limit applies to travel by a subpoenaed person, but a person commanded to produce documents need not appear in person at the place of production or inspection"); *Pearson v. Morrell*, No. 4:18CV843 SNLJ, 2020 WL 223932, at *1 (E.D. Mo. Jan. 15, 2020) ("The Court is skeptical, however, that the geographical limitation applies where, as here, the person or entity responding to the subpoena need not appear in person at the place of production."); *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016); *U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 19 (D. Me. 2010) ("a

majority of the courts that have dealt directly with the 100-mile issue have held that such a subpoena should be enforced"). Thus, the place of compliance in the Subpoena is proper.

Because the place of compliance is properly in Rogers, Arkansas, this Court may hear and decide the motion to compel. *See, e.g.*, *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017) ("[F]or purposes of a Rule 45(d)(2) or 45(d)(3) motion, the court or district 'where compliance is required' is determined by the location or 'place' for compliance identified on the subpoena as required by Rule 45(a)(1)(A)(iii)."); *see also Adams v. Symetra Life Ins. Co.*, No. 19-MC-401-EFM-ADM, 2020 WL 489523, at *2 (D. Kan. Jan. 28, 2020) (collecting cases).

### C. Dodd's Blanket Objections Are Improper

Dodd asserts numerous general objections. These boilerplate objections are "not only improper, but also are tantamount to no objection at all." *Kirby v. United Am. Ins. Co.*, No. 4:08CV00338 JLH, 2009 WL 10675166, at *3 (E.D. Ark. Feb. 13, 2009); *see also Paisley Park Enterprises, Inc. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 2019 WL 1036059, at *4 (D. Minn. Mar. 5, 2019) (holding boilerplate objections to subpoena "are insufficient to preserve the objecting party's rights"); *c.f.* Local Civil Rule 33.1(b) ("A blanket objection to a set of interrogatories, requests for admissions, or requests for production will not be recognized."). While resting solely on blanket objections, Dodd has failed to file a motion to quash and has not sought a protective order and therefore has waived any such objections. *See Two Rivers Fin. Grp., Inc.*, 2012 WL 13018842, at *3. Moreover, to the extent any issue as to service were properly raised, the objection falls flat because Dodd was properly served. The Affidavit of Service reflects that he was personally served at his home on November 13, 2020. *See* Ex. B.

FEC/44844.0001/8163728.1-1/15/21

### D. Dodd Has Not Made a Prima Facie Showing To Invoke the Reporter's Privilege

Dodd's primary objection, as stated in his written objections and confirmed by telephone conference with his counsel, is reporter's privilege and shield laws.[2] Setting aside for the moment that it is an open question as to whether the Eighth Circuit recognizes a qualified reporter's privilege (*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 n.8 (8th Cir. 1997)), it is well established that "the first amendment does not render news reporters and other members of the media immune from the obligation of all citizens to provide relevant testimony in civil cases." *Cont'l Cablevision, Inc. v. Storer Broad. Co.*, 583 F. Supp. 427, 434 (E.D. Mo. 1984) (denying motion to quash subpoena on basis of reporter's privilege). In other words, "a reporter is not entitled to completely ignore discovery requests in civil cases" on the basis of such privilege. *Id*. at 435.

For the reporter's privilege to be properly invoked, a reporter must make "a prima facie showing that responding to the discovery or testimonial requests will impinge on First Amendment interest." *Richardson v. Sugg*, 220 F.R.D. 343, 347 (E.D. Ark. 2004) (adopting magistrate's recommendation to deny motion to quash subpoena based on reporter's privilege). The reporter has "the burden of establishing need for preserving confidentiality." *Cont'l Cablevision, Inc.*, 583 F. Supp. at 435. Only then must the party seeking the privileged materials show that the information sought is "(1) critical to the maintenance or the heart of the claim, (2) highly material and relevant, and (3) not obtainable from other sources." *Richardson*, 220 F.R.D. at 347. And where a party seeks nonconfidential information from a reporter, the party "is entitled to the

---

[2]      The Arkansas Shield Statute only applies to the "source of information" and therefore does not apply in this case. Ark. Code Ann. § 16-85-510; *see also Williams v. Am. Broad. Companies, Inc.*, 96 F.R.D. 658, 665 (W.D. Ark. 1983).

FEC/44844.0001/8163728.1-1/15/21

requested discovery notwithstanding a valid assertion of the reporter's privilege if he can show that the materials at issue are of likely relevance to a significant issue in the case and are not reasonably obtainable from other available sources." *Id.*

### 1. *Dodd must make a showing as to why the privilege is being invoked*

Here, Dodd refuses to provide a privilege log, or any other information in order for the Foundation (and now the Court) to assess whether and to what extent the Subpoena impinges on Dodd's First Amendment interests. Rather, Dodd is improperly using the reporter's privilege to completely ignore the Foundation's requests. As a result, Dodd has not made a prima facie showing that responding to the Subpoena will encroach on his First Amendment interests, nor has he met his burden of showing a need for confidentiality.

Courts have explained that a reporter must provide enough information so that the court can assess the claim of privilege. For example, a court in the Eastern District of Missouri held that "a reporter must, in addition to claiming the privilege in response to specific requests or questions, provide a court with particularized allegations or facts that support his/her claim of privilege." *Cont'l Cablevision, Inc.*, 583 F. Supp. at 436. That court explained that "[a] contrary rule would give reporters an unfettered license to evade their duty to provide relevant evidence in a court of law. The status of reporter does not *per se* justify such a release from that civic duty. It is only when compliance with that duty unnecessarily impinges on first amendment interests that a reporter is relieved of that duty." *Id.* That court relied on a numerous other cases in which courts have concluded that courts may compel reporters to provide "a description which does not reveal information which is claimed to be privileged of the various documents and a description of the witnesses interviewed sufficient to permit the court to carry out" the balancing analysis of the reporter's claim. *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977); *Gilbert v.*

*Allied Chemical Corp.,* 411 F. Supp. 505, 511 (E.D. Va. 1976) ("Vague allegations of potential indication of confidential sources will not suffice.").

Here, Dodd simply is avoiding his obligations under Rule 45 of the Federal Rules of Civil Procedure under the guise of reporter's privilege. By failing to provide any information to the Foundation, Dodd has failed to meet his burden to show that there is a need for confidentiality. Indeed, Dodd may have waived the right to invoke the reporter's privilege by failing to provide a privilege log. *See Mosley v. City of Chicago*, 252 F.R.D. 445, 448-49 (N.D. Ill. 2008) (holding that reporter waived privilege in section 1983 action through noncompliance with Rule 45's requirement that a non-party raising a claim of privilege must provide a privilege log and explaining that "Rule 45(d)(2)(A)'s requirement of a privilege log is mandatory").

Even if Dodd had met his initial burden, the Foundation satisfies the three-factor test set forth by the Eastern District of Arkansas in the *Richardso*n case.

*First*, the documents that the Foundation has requested from Dodd go to the heart of the Foundation's claims and defenses. Bielema's intentions in the summer of 2018 of seeking a college coaching position is the key inquiry in this lawsuit. Bielema's representations to Dodd about his desires and the steps he was taking to seek a college coaching position are critical to this inquiry. Additionally, the manner in which Bielema, and his prospects and intentions of returning to college football, were portrayed in the press prior to October and November 2019 articles that are the subject of Bielema's false light claim against the Foundation are relevant to the Foundation's defenses and Bielema's claim for damages.

*Second*, for the reasons set forth above, the requested documents are highly material and relevant to the claims and defenses at issue. Bielema put his statements to Dodd at issue by alleging that he "said nothing to Mr. Dodd – on or off the record – to suggest he 'had no intention

of returning to college football.' All Coach Bielema said to Mr. Dodd was that he was enjoying coaching in the NFL." Doc. No. 19 ¶ 134. The Foundation is entitled to test the veracity of those statements.

*Third*, the requested documents are not available from other sources. Some subset of requested documents is only in Dodd's possession, such as interview notes and working drafts of the article. Moreover, the Foundation has requested all of Bielema's communications with the press and has not received any communications between Bielema, or anyone acting on his behalf, and Dodd regarding the July 2018 article. Bielema stated in response to the Foundation's written discovery that his attorney, Mr. Mars, has spoken with Dodd on Bielema's behalf on several occasions both before the litigation commenced and recently after Dodd received the Subpoena. *See* Ex. H. However, no documents or information related to Dodd's July 2018 has been provided.

Finally, and perhaps most importantly, the confidentiality of the source is not at issue here. The Foundation knows that Dodd's source is Bielema. Bielema admits as much in his Complaint. Indeed, that is why the Foundation served the Subpoena on Dodd; the Foundation is interested in the information provided by Bielema to Dodd.

## 2. *Dodd cannot use privilege as a sword and a shield*

Numerous courts have explained that a reporter cannot use the reporter's privilege as both a sword and a shield and may waive such privilege by attempting to do so. *Ayala v. Ayers*, 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009) ("a journalist/author should not be permitted to disclose information to advance the interests of one litigant and then invoke the journalist's privilege to prevent discovery of this same information by another litigant."); *see also Driscoll v. Morris*, 111 F.R.D. 459, 463 (D. Conn. 1986) (the reporter cannot "use the shield of privilege as a sword to undermine the" opposing side's case). For example, in *Pinkard v. Johnson*, 118 F.R.D. 517 (M.D.

FEC/44844.0001/8163728.1-1/15/21

Ala. 1987), the court held that a newspaper reporter waived his qualified reporter's privilege with respect to a certain conversation he had with the defendant because he had already provided a signed affidavit about the conversation to plaintiff's counsel. "A reporter is not free to give a sworn statement to a litigant, and later invoke the qualified reporter privilege to keep this information from the Court." *Id*. at 523. It appears that Dodd has come close to waiving the reporter's privilege already by assisting Bielema's counsel and verifying certain statements for the benefit of Bielema's counsel. *See* Ex. H.

Therefore, should the Court decide not to enforce the Subpoena, the Foundation requests, in the alternative, that Dodd not be allowed to participate in this matter for either side either through the production of documents or the provision of sworn testimony.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Foundation requests that the Court compel production of all documents responsive to the Subpoenas *Duces Tecum* served on Dennis Dodd and for any and all other relief the Court deems just and proper.

Respectfully submitted,

Marshall S. Ney, AR91108
Robert W. George, AR98134
Katherine C. Campbell, AR2013241
Blake Z. Brizzolara, AR2017229
FRIDAY, ELDREDGE & CLARK, LLP
3350 S. Pinnacle Hills Parkway, Suite 301
Rogers, AR  72758
Office:        (479) 695-6049
Facsimile:     (501) 244-5389
mney@fridayfirm.com

By:    <u>*/s/ Marshall S. Ney*</u>
          Marshall S. Ney, AR Bar 91108

<u>**CERTIFICATE OF SERVICE**</u>

I, Marshall S. Ney, do hereby certify that the foregoing is being electronically filed with the Court and that the below listed persons will receive a copy of the foregoing via the Court's electronic notification system (ECF), on or about this 15th day of January, 2021:

Thomas A. Mars
tom@mars-law.com

R. Craig Wood
cwood@mcguirewoods.com

Benjamin P. Abel
babel@mcguirewoods.com

John C. Everett
john@everettfirm.com

John E. Tull, III
jtull@qgtlaw.com

Ryan K. Culpepper
ryan@theculpepperfirm.com

Richard N. Watts
Richard.watts@wdtc.law

Additionally, I, Marshall S. Ney, do hereby certify that the below listed persons will receive a copy of the foregoing via e-mail and U.S. Mail, postage prepaid, on or about this 15th day of January, 2021:

Andrew Nieh
Vice President & Assistant General Counsel
ViacomCBS Inc.
51 W. 52nd Street
New York, New York 10019
andrew.nieh@cbs.com

*/s/ Marshall S. Ney*
Marshall S. Ney

FEC/44844.0001/8163728.1-1/15/21