# Exhibit J

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**BRET A. BIELEMA**                                                                                                **PLAINTIFF**

**v.**                                  **5:20-cv-05104-PKH**

**THE RAZORBACK FOUNDATION, INC.**                             **DEFENDANT**

---

**THE RAZORBACK FOUNDATION, INC.**                         **COUNTER-PLAINTIFF**

**V.**

**BRET A. BIELEMA and NEIL CORNRICH**                **COUNTER-DEFENDANTS**

### DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM

Defendant/Counter-Plaintiff, The Razorback Foundation, Inc. (the "Foundation"), by and through its attorneys, Friday, Eldredge & Clark, LLP, for its Brief in Support of its Motion for Leave to File an Amended Counterclaim, states as follows:

### I. INTRODUCTION

In January 2018, Bielema and the Foundation entered into a Release Agreement, under which the Foundation agreed to make buyout payments to Bielema, and in exchange, Bielema agreed to diligently seek and to obtain other employment and to use his best efforts to maximize his earning potential during the buy-out period (from November 2017- December 2020). Under the Release Agreement, the buyout payments to Bielema were to be offset by amounts Bielema received from other employment, subject to certain excluded threshold amounts.

On June 12, 2020, Bielema filed the instant lawsuit, asserting that the Foundation had breached the Release Agreement by failing to make the buyout payments. On September 3, 2020,

the Foundation filed a Counterclaim against Bielema and Cornrich, claiming that Bielema breached his mitigation obligations under the Release Agreement and the Foundation therefore was excused from its obligation to pay the buyout amounts. The Foundation also asserted that Bielema and Cornrich fraudulently induced the Foundation to enter into the Release Agreement by falsely representing that the "plan" was to rehabilitate Bielema with the New England Patriots for a short time and then get him a major coaching position that would reduce or eliminate the Foundation's buyout obligations. In fact, Bielema and his agent, Neil Cornrich, had worked together to place Bielema with the Patriots in a low-paying position that prohibited Bielema from seeking other employment potentially through January 2020, significantly restricting his ability to seek and to obtain other employment through the final year of the buyout period.

In October 2020, the Foundation served a subpoena *duces tecum* on the New England Patriots. The Patriots produced documents in response to the subpoena on December 18, 2020. These documents demonstrate that the New England Patriots provided Bielema a low-paying position until his obligations under the Release Agreement expired. Additionally, since filing its Counterclaim and only two weeks before Bielema's obligations under the Release Agreement were set to end, Coach Bielema obtained a new, high-paying position as head football coach at the University of Illinois, which bears directly on whether Bielema used his best efforts to seek other employment during the term of the Release Agreement. Bielema's compensation package with the University of Illinois also must be offset against the damages he seeks from the Foundation under the Release Agreement. As a result of these recent events and newly discovered evidence, the Foundation seeks leave to amend its Counterclaim.

## II. LAW & ARGUMENT

### A. Legal Standard

Rule 15 of the Federal Rules of Civil Procedure allows for the amendment of pleadings and declares that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Eighth Circuit has explained, "[g]iven the courts' liberal viewpoint towards leave to amend, it should normally be granted absent good reason for a denial." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000). "[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated." *Villarreal v. DeWitt*, No. 1:16-cv-00163, 2017 WL 5659824, at *2 (E.D. Ark. Aug. 28, 2017) (citing *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001)).

The basis of the proposed amendment did not become known to the Foundation until recently. Additionally, the Final Scheduling Order allows the parties to seek to amend pleadings on or before February 1, 2021, and discovery is ongoing. Doc. No. 40 at 2. Moreover, as set forth below, the University of Illinois' hiring of Bielema presents a new issue related to the Foundation's offset rights, and the recently produced documents confirm that the "plan," as represented by Cornrich and Bielema to the Foundation, was false in support of the Foundation's fraud claim. As a result, there is no reason to deny the Foundation's Motion.

### B. Recently Produced Documents Confirm that Bielema ████████ ████████████████████████████████████████████

Documents recently produced by the Patriots confirm that those at the highest levels of the New England Patriots organization knew about Bielema's obligations under the Release Agreement. The documents also reflect that the Patriots ████████████ ████████████████████████████████████████████

3

███████████████████████████████████████████████████ As a result, Bielema received well below what he could have earned in the short-term and was positioned to increase his earning potential after the buyout period had ended. Thus, the Patriots helped Bielema maximize his benefit to the Foundation's detriment under the Release Agreement.

*First*, the emails confirm that the Patriots were intimately familiar with the terms of the Release Agreement. ███████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████

*Second*, the emails demonstrate that the Patriots paid Bielema less than what he could or should have earned.



---

[1] The documents produced by the Patriots have been designated as Confidential under the Protective Order. Therefore, with the Court's permission, this Brief in Support and the accompanying exhibits are being filed under seal. *See* Doc. No. 68. The emails were produced to the Foundation by the Patriots with certain redactions. As a result, those redactions appear on these documents filed under seal.

4

FEC/44844.0001/8254783.1-1/25/21

[REDACTED]

When confronted with these emails, Bielema did not dispute the authenticity of the emails, nor did he deny that Belichick and Kraft had knowledge of the Release Agreement.[2] Instead, Bielema strained to explain away the emails. *See* Exs. G & H. He says that he did not understand at that time that the Release Agreement's offset provision applied to his positions with the New England Patriots. Instead, according to him, he thought all money he earned with the Patriots would be remitted to the Foundation. Of course, that is not what the contract says. And even if that were the case, the documents nevertheless confirm that the Patriots worked with Bielema to [REDACTED] -- a direct violation of Bielema's mitigation obligations under the Release Agreement. Indeed, Bielema's counsel represented that the Patriots paid him "not a penny more than the 'minimum' it would take to keep Arkansas from getting upset." Ex. H at 5. But the test of whether it would upset Arkansas is not the standard set forth in the Release Agreement.

The only evidence Bielema identifies to counter the Patriots' emails is a single text message from Bielema to Cornrich on May 1, 2018, that simply says in reference to his Patriots paycheck,

---

[2] These documents also directly contradict allegations in Bielema's Amended Complaint. *See* Am. Compl. ¶ 70. ("Neither Coach Bielema nor anyone acting on his behalf has ever disclosed to Coach Belichick or anyone else in the Patriots organization that the first $150,000 of income he earned in 2018 was exempt from repayment to the Foundation or that, for income he earned in 2019, the first $125,000 would be exempt. Nor has Coach Bielema or anyone acting on his behalf ever given any hints about those contractual exemptions or attempted to convey that information to the Patriots organization surreptitiously.").

5

"Do I need to do anything more with this?" This text message hardly exonerates Bielema from liability. If anything, these text messages only raise more questions, as the text messages allegedly were discovered on December 23, 2020, three months after the Foundation requested such text messages, and exactly one month after the Foundation filed a motion to compel regarding such text messages. *See* Ex. I.

Based on these emails,  As such, the Foundation seeks leave to amend its Counterclaim to add allegations related to Bielema's compensation with the Patriots to support its fraud claim.

### C. Bielema Obtains a High-Paying Position Just Two Weeks Before the Buyout Period Ended

Since the time the Foundation filed its Counterclaim, Bielema has obtained a new position as head football coach at the University of Illinois. The position was announced on December 19, 2020—just twelve days before the Release Agreement expired. According to press reports, Bielema's initial contract with the University of Illinois is for six years beginning with an annual salary of $4.2 million, and he began his duties immediately on December 19.[3] The amounts that

---

[3] *See* https://www.si.com/college/illinois/football/bret-bielema-hired-as-illini-head-football-coach-dec-19-2020. The Foundation has requested information related to Bielema's new position from the University of Illinois and from the parties, but as of the date of this filing, it has not received any information.

Bielema earns under this new contract are subject to the offset provision of the Release Agreement. Moreover, given that Bielema obtained his new multi-million-dollar position just two weeks before his obligations under the Release Agreement expired, it also directly relates to whether he performed his obligations under the Release Agreement in good faith.  As such, the Foundation seeks to amend its Counterclaim to include facts about Bielema's new position and to amend its request for declaratory relief to include an offset under the Release Agreement for the average annual compensation that Bielema is to be paid by the University of Illinois.

### III.   CONCLUSION

Based on recent events and newly discovered evidence, the Foundation seeks to amend its Counterclaim to add allegations related to Bielema's compensation with the Patriots and to add allegations related to Bielema's new head coaching position at the University of Illinois.  This is the first instance in which the Foundation has sought to amend its pleading, and the Foundation has not delayed in seeking to amend its Counterclaim.  Moreover, the amendment will not prejudice the other parties.

WHEREFORE, the Foundation prays that its Motion for Leave to File an Amended Counterclaim be granted and that the Court grant it any other relief to which it is entitled.

Respectfully submitted,

Marshall S. Ney, AR91108
Robert W. George, AR98134
Katherine C. Campbell, AR2013241
Blake Z. Brizzolara, AR2017229
FRIDAY, ELDREDGE & CLARK, LLP
3350 S. Pinnacle Hills Parkway, Suite 301
Rogers, AR  72758
Office:         (479) 695-6049
Facsimile:    (501) 244-5389
mney@fridayfirm.com

By:     */s/ Marshall S. Ney*
          Marshall S. Ney, AR Bar 91108

8

# CERTIFICATE OF SERVICE

I, Marshall S. Ney, do hereby certify that the foregoing is being electronically filed with the Court and that the below listed persons will receive a copy of the foregoing via the Court's electronic notification system (ECF), on or about this 25th day of January, 2021:

Thomas A. Mars
tom@mars-law.com

R. Craig Wood
cwood@mcguirewoods.com

Benjamin P. Abel
babel@mcguirewoods.com

John C. Everett
john@everettfirm.com

John E. Tull, III
jtull@qgtlaw.com

Ryan K. Culpepper
ryan@theculpepperfirm.com

Richard N. Watts
Richard.watts@wdtc.law

Additionally, I, Marshall S. Ney, do hereby certify that the below listed persons will receive a copy of the foregoing Brief in Support of Motion for Leave to File an Amended Counterclaim and a copy of the Court's Order dated January 22, 2021 (Doc. 68) via e-mail and U.S. Mail, postage prepaid, on or about this 25th day of January, 2021:

Dallin R. Wilson
Caleb Schillinger
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210-2028
(617) 946-4976
drwilson@seyfarth.com
cschillinger@seyfarth.com

                                                  */s/ Marshall S. Ney*
                                                  Marshall S. Ney

FEC/44844.0001/8254783.1-1/25/21