# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

BRET A. BIELEMA                                                                             PLAINTIFF

v.

THE RAZORBACK FOUNDATION, INC.                                                 DEFENDANT

5:20-cv-05104-PKH

THE RAZORBACK FOUNDATION, INC.                                       COUNTER-PLAINTIFF

v.

BRET A. BIELEMA and NEIL CORNRICH                              COUNTER-DEFENDANTS

## NEW ENGLAND PATRIOTS LLC'S RESPONSE
## TO THE COURT'S FEBRUARY 5, 2021 ORDER

The Razorback Foundation, Inc. (the "Foundation") has filed a motion to amend its counterclaims against Bret Bielema and Neil Cornrich and has attached as exhibits to that motion four documents produced by nonparty New England Patriots LLC ("NEP") and designated by NEP as "Confidential" under the terms of the Protective Order (Doc. 62) in this case. Portions of the Foundation's amended pleading also quote these documents. The Court in its February 5, 2021 Order (Doc. 77) directed the parties and NEP to "show[] cause why documents produced to the Foundation by [NEP], or specifically identified portions thereof, should or should not remain subject to the protective order entered in this case." The NEP documents filed by the Foundation contain competitively sensitive and personal information—including compensation paid to another member of the team's coaching staff—that falls squarely within the definition of confidential material under the Protective Order. Here, the public's "generalized interest in access" to the Foundation's amended counterclaim does not overcome the particularized interest of NEP in protecting this sensitive information.

# BACKGROUND

### A. NEP Produces Documents In Response To The Foundation's Subpoena And Designates Documents As Subject To The Court's Protective Order.

On December 18, 2020, NEP made a production of documents responsive to a subpoena served on it by the Foundation. (Feb. 23, 2021 Declaration of Robyn Glaser ("Glaser Decl."), ¶ 2, Exs. A (subpoena) & B (production emails)). Because these documents are kept confidential by NEP and contain competitively and personally sensitive information, NEP requested, and the parties agreed, to treat the documents as "attorneys' eyes only" until the Court could enter a protective order governing the confidentiality of information disclosed during discovery. (*Id.*, ¶ 3, Ex. C (AEO agreements)).[1]

On January 14, 2021, the Court entered the Protective Order (Doc. 62). The next morning, NEP designated certain of its documents as "Confidential" and subject to the Protective Order. (Glaser Decl., ¶ 5, Ex. D (designation)). Consistent with the order, NEP identified the following "category or categories [listed on page 2 of the order] in which the designated information is included":

- financial or tax records typically kept confidential;

- personnel files and other employee or independent contractor information typically kept confidential;

- information or communications revealing information concerning the status of intimate family relationships with spouses, partners, children, or extended family, if that information is typically kept confidential;

---

[1] NEP also redacted certain personal identifiers (*e.g.*, Mr. Bielema's birth date, SSN, and driver's license and financial account numbers) and competitively and personally sensitive information concerning other NEP players, coaches, and prospects unrelated to this litigation. NEP documented each of these redactions in a log provided to the parties with the document production. (*Id.*, ¶ 4).

- trade secrets protected under the laws of Arkansas or a jurisdiction in which the disclosing or producing party or nonparty maintains citizenship;

- confidential research, development, or commercial information the unprotected disclosure of which is likely to result in commercial or competitive harm; and

- playbooks, game tape, roster or recruiting information, or other similar information typically not publicly disclosed by professional or collegiate football teams.

(*Id.*; Protective Order at 2). The documents designated as "Confidential" all contain information included in one or more of these categories. (Glaser Decl., ¶ 6). No party has challenged these designations despite now having had more than two months in which to do so. (*Id.*)

### B. The NEP Documents Filed Under Seal With The Court Are Confidential And Contain Competitively Sensitive Information.

On January 25, 2021, the Foundation moved to amend its counterclaims against Messrs. Bielema and Cornrich. (Doc. 69). The Foundation's amended pleading does not add any new parties, claims, or defenses, and is limited to additional evidentiary allegations based on the Foundation's characterization of certain documents NEP produced, Mr. Bielema's subsequent employment as coach at the University of Illinois, and an additional form of declaratory relief as to Mr. Bielema. (Doc. 70, Ex. K (redline showing proposed changes)).

With its motion, the Foundation filed under seal four documents produced by NEP and designated as subject to the Protective Order. (*Id.*, Exs. C-F (NEP_216, 241, 298-99, 300)). The Foundation also filed under seal two letters exchanged between its counsel and Mr. Bielema's counsel that discuss and quote those four documents. (*Id.*, Exs. G, H). Neither the documents nor the letters are attached as exhibits to the amended pleading, but because the pleading and the Foundation's brief quote these materials, the Foundation filed unredacted copies of the pleading and brief under seal as well. (*Id.*, Exs. A, K; Doc. 71). The NEP documents, the letters, and the

portions of the Foundation's pleading and brief that discuss or quote these materials are collectively referenced herein as "the Sealed Information."

The four NEP documents are internal emails between NEP's owner, Robert Kraft, and the team's head coach, Bill Belichick. These communications are confidential, and NEP takes careful and broad precautions to maintain their confidentiality. The computers and email accounts of both Mr. Kraft and Coach Belichick are protected by usernames and passwords and cannot be accessed without these unique log-in credentials. NEP does not share these credentials with persons outside the organization, or even with other NEP personnel. Even NEP's IT administrators do not possess these unique log-in credentials for the computers and email accounts of NEP employees, and no NEP employee is authorized to disclose their unique credentials to IT administrators; when an IT administrator needs access to a particular user's machine and/or email account, as a matter of policy, the user must be present and must log in to allow the IT administrator to perform any needed maintenance or service. (Glaser Decl., ¶¶ 7-9).

The four emails at issue have not been made publicly available; stored in any other location on NEP's network; or disclosed to third parties (other than in this litigation and expressly subject to the Protective Order). These emails contain competitively sensitive information. They reveal NEP's decisionmaking process, at different points in time, for how much to compensate one of the team's coaches (Mr. Bielema), based on his experience and prospects and what other coaches were being paid; how to structure his contract with NEP; and how best to utilize him as part of the coaching staff. They also reveal information concerning individuals other than Mr. Bielema, including, in one instance, compensation information, that is completely unrelated to the dispute between Mr. Bielema and the Foundation. While Mr. Bielema is no longer with the team, the information remains competitively sensitive because it can be used as a benchmark both for the

4

coaches currently fulfilling the roles formerly performed by Mr. Bielema and for NEP's other coaches. Revelation of another coach's compensation information, in particular, would unfairly invade that coach's privacy and would compromise NEP's proprietary interest in that information. (*Id*., ¶¶ 10-12).

NEP would suffer competitive and commercial harm if this information is made publicly available. NEP and the other 31 teams in the NFL compete aggressively with one another to attract and retain the best coaches. NEP's competitors could take advantage of the Sealed Information to lure current or prospective coaches away from NEP by using that information to offer a level of compensation or other terms of employment that, absent such information, they otherwise might not provide. Those coaches (and their agents) also could leverage this information in future negotiations with NEP. (*Id*., ¶ 13).[2] Moreover, there is considerable public curiosity about the internal workings of a professional sports team like NEP, and the revelation of these internal communications is sure to distract the team from the difficult business of competing in the NFL to respond to queries about litigation in which NEP is not even a party.

## **ARGUMENT**

Pursuant to the Protective Order, designated information submitted in connection with "the resolution of a motion or other issue pending before the Court" must be filed electronically under seal, and "the Clerk will maintain that filing with access restricted to the Court and parties." (Doc. 62 at 5). The four NEP documents at issue were promptly and properly designated as subject

---

[2] As noted above, NEP redacted compensation and other employment-related information concerning other NEP coaches unrelated to this litigation from the emails at issue before producing the emails to the Foundation. If that redacted information was publicly disclosed it would further exacerbate the competitive and commercial harm to NEP and would constitute an unwarranted invasion of those other individuals' privacy and potentially subject them to annoyance or embarrassment.

to the Protective Order. The documents contain "employee or independent contractor information typically kept confidential" and "confidential . . . commercial information the unprotected disclosure of which is likely to result in commercial or competitive harm." (*Id*. at 2). Accordingly, consistent with the Protective Order, the Sealed Information should remain filed under seal and protected from public disclosure.

The Court understandably is solicitous of the common-law right of access to judicial records, but "the right to inspect and copy judicial records is not absolute." *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978)). Rather, the Court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access, and balance that interference against the interests served by maintaining confidentiality of the information sought to be sealed. *IDT Corp.*, 709 F.3d at 1223; *see also United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (judicial records generally will "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance"). In weighing these competing interests, "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." *Amodeo*, 71 F.3d at 1049; *see also In re Boston Herald, Inc.*, 321 F.3d 174, 198 (1st Cir. 2003).

The "generalized interest in access" to the amended counterclaim in this case is minimal compared to the potential harm to NEP (and others) if the Court were to unseal the redacted portions of the amended counterclaim and the four NEP documents attached to the Foundation's motion to amend. *See, e.g.*, *IDT Corp.*, 709 F.3d at 1224. The public has ready access to a redacted copy of the amended counterclaim filed by the Foundation (Doc. 69-1) that adequately discloses

the counterclaims being asserted by the Foundation against Messrs. Bielema and Cornrich. The inclusion of allegations in the amended counterclaim quoting from NEP documents does nothing to enhance those claims, and the attachment of these documents to the Foundation's motion to amend was superfluous given the lenient pleading requirements under the Federal Rules of Civil Procedure. In short, disclosure of the four NEP emails gratuitously filed by the Foundation as exhibits to its motion to amend, the letters incorporating statements from those emails, and the allegations of the amended counterclaim referencing those emails, will do nothing to enhance the public interest in a well-administered judiciary.

The disclosure of this gratuitously filed material, however, will work a very substantial harm to judicial efficiency. NEP, a nonparty to this litigation, cooperated with the subpoena issued by the Foundation in reliance on its ability to designate materials as "Confidential" under the Protective Order, and reasonably believed that the parties would not use the documents in gratuitous ways. The spat between the parties concerning Mr. Bielema's motion for sanctions against the Foundation and the Foundation's motion to amend has led the parties to treat NEP's documents loosely, and having seen how the parties have conducted themselves in this case, NEP will need to consider carefully how best to protect its rights in responding to future nonparty discovery requests. Being able to rely on the courts to protect nonparties from gratuitous disclosures of confidential information weighs heavily in the calculus used by nonparties in deciding how to respond to subpoenas. *See Amodeo*, 71 F.3d at 1050 ("Although courts have compulsory process available to compel . . . the production of documents, cooperation is also often essential to judicial efficiency. If release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access.").

The disclosure of this gratuitously filed material also will work a very substantial harm to the privacy rights of NEP and the individual coach (not Mr. Bielema) whose compensation information is disclosed in one of the four NEP emails. NEP, Mr. Kraft, Coach Belichick, and this other individual coach are not parties to this litigation, and they have a legitimate expectation of privacy in their communications (and in the case of the individual coach, in his compensation information). The "privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Amodeo*, 71 F.3d at 1051 (citation omitted). The disclosure of emails exchanged between Mr. Kraft and Coach Belichick without any context and without any ability of NEP (because of its status as a nonparty) to respond to the gloss attached to them by the parties is unfair to NEP, will attract media attention that has absolutely nothing to do with the public interest in monitoring the performance of Article III courts, and will compromise the privacy rights of non-litigants. These privacy interests "are a venerable common law exception to the presumption of access," *id*. at 1051 (citation omitted), and "courts have the power to insure that their records are not 'used to gratify private spite or promote public scandal,' and have 'refused to permit their files to serve as reservoirs of libelous statements for press consumption.'" *Id*. (quoting *Nixon*, 435 U.S. at 598).

## CONCLUSION

For all of the foregoing reasons, NEP respectfully requests that the Court find that NEP's interest in protecting competitively and personally sensitive information from public disclosure outweighs any "generalized interest in access" to that information, and order that the Sealed Information filed by the Foundation with its motion to amend (Doc. 70-71) will remain under seal. NEP requests the opportunity to be heard on this matter before the Court takes any action with respect to its documents.

Respectfully submitted,

**NEW ENGLAND PATRIOTS LLC,**

By its attorneys,

*/s/ Caleb J. Schillinger*
Brandon L. Bigelow
Caleb J. Schillinger
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210
(617) 946-4800
bbigelow@seyfarth.com
cschillinger@seyfarth.com

Dated: February 23, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 23, 2021.

*/s/ Caleb J. Schillinger*
Caleb J. Schillinger