## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

BRET A. BIELEMA                                                                                        PLAINTIFF

v.

THE RAZORBACK FOUNDATION, INC.                                              DEFENDANT

5:20-cv-05104-PKH

THE RAZORBACK FOUNDATION, INC.                                 COUNTER-PLAINTIFF

v.

BRET A. BIELEMA and NEIL CORNRICH                       COUNTER-DEFENDANTS

## DECLARATION OF ROBYN GLASER

Robyn Glaser hereby declares as follows:

1. My name is Robyn Glaser. I am the Senior Vice President, Business Affairs for the Kraft Group and function as club counsel for New England Patriots LLC ("NEP"). I have been with the Kraft Group since September 2007. I have personal knowledge of the matters set forth herein.

2. On December 18, 2020, NEP made a production of documents responsive to a subpoena served on it by The Razorback Foundation, Inc. (the "Foundation"). True and correct copies of the Foundation's subpoena, and the production transmittals from NEP's counsel (Seyfarth Shaw LLP) to counsel for all parties, are attached hereto as Exhibit A and Exhibit B, respectively.

3. Because these documents are kept confidential by NEP and contain competitively and personally sensitive information, NEP requested, and the parties agreed, to treat the documents as "attorneys' eyes only" ("AEO") until the Court could enter a protective order governing the

confidentiality of information disclosed during discovery. True and correct copies of emails from the parties' counsel, confirming the parties' AEO agreements, are attached hereto as Exhibit C.

4. NEP also redacted certain personal identifiers (*e.g.*, Mr. Bielema's birth date, SSN, and driver's license and financial account numbers) and competitively and personally sensitive information concerning other NEP players, coaches, and prospects unrelated to this litigation. NEP documented each of these redactions in a log provided to the parties with the document production.

5. On January 14, 2021, the Court entered a Protective Order (Doc. 62), and the next morning, NEP designated certain documents as "Confidential" and subject to the Protective Order. A true and correct copy of the email from NEP's counsel to the parties' counsel, in which NEP made these designations, is attached hereto as Exhibit D. Consistent with the Protective Order, NEP identified the following "category or categories in which the designated information is included":

- financial or tax records typically kept confidential;

- personnel files and other employee or independent contractor information typically kept confidential;

- information or communications revealing information concerning the status of intimate family relationships with spouses, partners, children, or extended family, if that information is typically kept confidential;

- trade secrets protected under the laws of Arkansas or a jurisdiction in which the disclosing or producing party or nonparty maintains citizenship;

- confidential research, development, or commercial information the unprotected disclosure of which is likely to result in commercial or competitive harm; and

- playbooks, game tape, roster or recruiting information, or other similar information typically not publicly disclosed by professional or collegiate football teams.

6. The documents designated by NEP as "Confidential" all contain information included in one or more of these categories. No party has challenged these designations despite now having had more than two months in which to do so.

7. The Foundation has filed with its motion to amend its counterclaim four emails between Robert Kraft, the owner of NEP, and Bill Belichick, the team's head coach. The Foundation also quotes from these documents in its proposed amended counterclaim. I have reviewed these documents, and each of them contains competitively and personally sensitive information that could harm NEP and others if publicly disclosed.

8. NEP takes careful and broad precautions to maintain the confidentiality of internal communications, including the four emails at issue. The computers and email accounts of both Mr. Kraft and Coach Belichick are protected by usernames and passwords and cannot be accessed without these unique log-in credentials. NEP does not share these credentials with persons outside the organization, or even with other NEP personnel.

9. Even NEP's IT administrators do not possess these unique log-in credentials, and no NEP employee is authorized to disclose their unique credentials to IT administrators; when an IT administrator needs access to a particular user's machine and/or email account, as a matter of policy, the user must be present and must log in to allow the IT administrator to perform any need maintenance or service.

10. The four emails at issue have not been made publicly available; stored in any other location on NEP's network; or disclosed to third parties (other than in this litigation and expressly subject to the Protective Order).

11. The four emails at issue contain competitively sensitive information. They reveal NEP's decisionmaking process, at different points in time, for how much to compensate one of the

team's coaches (Mr. Bielema), based on his experience and prospects and what other coaches were being paid; how to structure his contract with NEP; and how best to utilize him as part of the coaching staff. They also reveal information concerning individuals other than Mr. Bielema, including, in one instance, compensation information, that is completely unrelated to the dispute between Mr. Bielema and the Foundation.

12. While Mr. Bielema is no longer with the team, the information about his compensation and the information about another coach's compensation remains competitively sensitive because it can be used as a benchmark both for the coaches currently fulfilling the roles formerly performed by Mr. Bielema and for NEP's other coaches. Revelation of another coach's compensation information, in particular, would unfairly invade that coach's privacy and would compromise NEP's proprietary interest in that information.

13. NEP would suffer competitive and commercial harm if this information is made publicly available. NEP and the other 31 teams in the NFL compete aggressively with one another to attract and retain the best coaches. NEP's competitors could take advantage of the information contained in these emails to lure current or prospective coaches away from NEP by using that information to offer a level of compensation or other terms of employment that, absent such information, they otherwise might not provide. Those coaches (and their agents) also could leverage this information in future negotiations with NEP.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 23, 2021.

                                                          */s/ Robyn Glaser*
                                                         Robyn Glaser

## **CERTIFICATE OF SERVICE**

       I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 23, 2021.

                                      */s/ Caleb J. Schillinger*
                                      Caleb J. Schillinger